## **LIST OF EXHIBITS**

A.   Declaration of Diane Easter, Warden of Federal Correctional Institution at Danbury

B.   *United States v. Cassidy*, No. 1:17-CR-00116-WMS-MJR (W.D.N.Y.) docket sheet

C.   *United States v. Collier*, No. 6:12-CR-06003-CJS (W.D.N.Y.) docket sheet

D.   Attorney General Memorandum dated March 26, 2020

E.   Attorney General Memorandum dated April 3, 2020

F.   U.S. Attorney's Office for the District of Connecticut Spreadsheet Tracking Motions for Compassionate Release and Decisions Rendered

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DIANTHE MARTINEZ-BROOKS, REJEANNE COLLIER, JACKIE MADORE, and KENNETH CASSIDY, individually and on behalf of all others similarly situated,<br> Petitioners,<br><br>                              v.<br><br>D. EASTER, Warden of Federal Correctional Institution at Danbury, and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons, in their official capacities,<br> Respondents. | No. 3:20-cv-00569 (MPS)<br><br><br><br>**DECLARATION OF DIANE EASTER** |

I, DIANE EASTER, hereby make the following declaration:

### A. Personal Background

1. I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice, as Warden of the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). I assumed this position in February 2020.

2. I began my career with the BOP in December 1990 as an Administrative Assistant in the BOP's Montgomery (AL) Community Corrections Office. Since then I have been selected to serve in positions of increasing responsibility within BOP to include Case Manager in the BOP's Residential Reentry Office in Atlanta, Georgia in August, 1994; Case Manager at both the Federal Prison Camp and U.S. Penitentiary in Atlanta, Georgia in June 2001; Case Manager in the BOP's Southeast Regional Office in March, 2006; Community Corrections Specialist in the BOP's Southeast Regional Office in October, 2010; Assistant Sector Administrator in the BOP's Central Office in Washington, D.C. in (June/2013), physical location North Central Regional Office; Associate Warden at FCI Milan (MI) in March 2016; and Associate Warden at USP Big Sandy (KY) in April 2018.

**B.  Structure of FCC Danbury Currently**

3.  Activated in 1940, FCI Danbury is a comprised of three separate and distinct federal correctional institutions.   FCI Danbury only houses sentenced offenders.

4.  There are currently 264 staff employed at FCI Danbury.

5.  The Federal Correctional Institution ("FCI" or "Main Complex") is a low security facility with a double-fenced perimeter, mostly dormitory or cubicle housing, with strong work and program components. The FCI has seven units that are open dorm style, two television rooms, one area for TRULINCS (email) stations, and two rooms that can house ten to twelve inmates each.   The showers and bathrooms are communal.   Two units have two-man cells with a toilet and sink in the cell, they have communal showers, an area for television and an area for phones.   One unit has two-man cells, has communal showers and bathrooms, an area for television, area for telephones, and an area for groups.   The main complex, the Camp, and the FSL are separate facilities, and the inmate populations do not interact.   The staff-to-inmate ratio in an FCI is higher than in minimum security facilities. As of May 4, 2020, FCI Danbury houses 719 male offenders. The rated capacity of FCI Danbury is 554. The "rated capacity" is not a figure which represents the maximum number of inmates that can be designated to FCI Danbury.

6.  The Federal Prison Camp ("FPC" or "Camp") is a minimum security institution which has dormitory housing, a relatively low staff-to-inmate ratio, and no perimeter fencing. As of May 4, 2020, FPC Danbury houses 134 female offenders. The rated capacity of the FPC is 146. The "rated capacity" is not a figure which represents the maximum number of inmates that can be designated to FPC Danbury. The Camp is a large building divided into four dormitories, each consisting of cubicles and bunk beds.   Each dormitory has its own shower and bathroom area.   There are two areas for watching television, one area for Skype visiting and an area for phones.   The recreation facilities are down a hill at the rear of the FPC, and consists of a walking track and a building with exercise equipment.

7. The Federal Satellite-Low ("FSL") is a low security facility with a single-fenced perimeter, cubicle housing, and strong work and program components. The FSL is a large dormitory that is divided into sections with double bunks inside cubicles. There are two areas that have communal showers and bathrooms. There are tables in the front of the dormitory for watching television. There is also an area in front of the dormitory that has exercise equipment, law and leisure library, and offices. Food services, psychology services, medical, education and visiting is in a separate building. As of May 4, 2020, the FSL houses 131 female offenders. The rated capacity of the FSL is set at 198 inmates. The "rated capacity" is not a figure which represents the maximum number of inmates that can be designated to FSL Danbury.

### C. BOP's Response to the COVID-19 Pandemic

8. Before discussing the steps being taken at FCI Danbury, I will first discuss the phases of the BOP's national response to the COVID-19 pandemic, which apply generally across all BOP institutions. As set forth below, the Bureau has taken—and is continuing to take— significant measures in response to the COVID-19 pandemic in order to protect the safety and security of all staff and inmates, as well as members of the public.

9. In January 2020, BOP became aware of the first identified COVID-19 cases in the United States and took steps to prevent its introduction and spread in BOP institutions, including FCI Danbury.

10. To date, BOP's response to COVID-19 has occurred over six distinct phases.

### D. Action Plan for COVID-19, Phase One

11. In January 2020, the Bureau began Phase One of its Action Plan for COVID-19. Phase One activities included, among other things, seeking guidance from the BOP's Health Services Division regarding the COVID-19 disease and its symptoms, where in the United States infections were occurring, and the best practices to mitigate its transmission. See https://www.bop.gov/resources/news/20200313_covid-19.jsp. In addition, an agency task force was established to begin strategic planning for COVID-19 Bureau-wide. This

strategic planning included building on the Bureau's existing procedures for pandemics, such as implementing its pre-approved Pandemic Influenza Plan. From January 2020 through the present, the Bureau has been coordinating its COVID-19 efforts with subject-matter experts both internal and external to the agency, including implementing guidance and directives from the World Health Organization (WHO), the Centers for Disease Control and Prevention (CDC), the Office of Personnel Management (OPM), the Department of Justice (DOJ), and the Office of the Vice President. See https://www.bop.gov/resources/news/20200313_covid-19.jsp.

### E. Action Plan for COVID-19, Phase Two

12. On March 13, 2020, the Bureau implemented Phase Two of its Action Plan.  Phase Two put into place a number of restrictions across all Bureau facilities over a 30-day period, to be re-evaluated upon the conclusion of that time period.  Specifically, the Bureau suspended the following activities for an initial period of 30 days, with certain limited exceptions: social visits; legal visits; inmate facility transfers; official staff travel; staff training; contractor access; Volunteer visits; and tours.

13. During Phase Two, inmates were subjected to new screening requirements.  Specifically, all newly arriving Bureau inmates were screened for COVID-19 symptoms and "exposure risk factors," including, for example, if the inmate had traveled from or through any high-risk COVID-19 locations (as determined by the CDC), or had had close contact with anyone testing positive for COVID-19.  Asymptomatic inmates with exposure risk factors were quarantined, and symptomatic inmates with exposure risk factors were isolated and evaluated for possible COVID-19 testing by local Bureau medical providers.

14. Staff were also subjected to enhanced health screening in areas of "sustained community transmission," as determined by the CDC, and at medical referral centers.  On March 25th, 2020, FCI Danbury implemented this enhanced screening for staff and contractors.  The enhanced screening measures required all staff to self-report any symptoms consistent

with COVID-19, as well as any known or suspected COVID-19 exposure, and further required all staff to have their temperature taken upon entry into any Bureau facility.

15. Finally, in addition to the measures listed above, the Bureau implemented national "modified operations" in order to maximize social distancing within Bureau facilities. These modifications included staggered meal and recreation times in order to limit congregate gatherings.  Additionally, the Bureau established a set of quarantine and isolation procedures for known or potential cases of COVID-19.

### F.  Action Plan for COVID-19, Phase Three

16. On March 18, 2020, the Bureau implemented Phase Three of the COVID-19 Action Plan for Bureau locations that perform administrative services (i.e., non-prison locations), which followed DOJ, Office of Management and Budget, and OPM guidance for maximizing telework. In this phase, individuals who had the ability to telework and whose job functions did not require them to be physically present were directed to begin teleworking.

17. Additionally, as part of this phase, and in accordance with the Pandemic Influenza contingency plan, all cleaning, sanitation, and medical supplies were inventoried.

### G.  Action Plan for COVID-19, Phase Four

18. On March 26, 2020, the Bureau implemented Phase Four of its Action Plan. In Phase Four, the Bureau revised its preventative measures for all institutions. Specifically, the agency updated its quarantine and isolation procedures to require all newly admitted inmates to the Bureau, whether in areas of sustained community transmission or not, to be assessed using a screening tool and temperature check (further explained below). This screening tool and temperature check applied to all new intakes, detainees, commitments, prisoners returned on writ from judicial proceedings, and parole violators, regardless of their method of arrival. Thus, all new arrivals to any Bureau institution—even those who were asymptomatic—were placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates were placed in isolation until they tested negative

for COVID-19 or were cleared by medical staff as meeting CDC criteria for release from isolation.

### H.  Action Plan for COVID-19, Phase Five

19. On March 31, 2020, the Director of the Bureau ordered the implementation of Phase 5 of its COVID-19 Action Plan, which took effect on April 1, 2020.  Specifically, the Director ordered the following steps to be taken:

   a. For a 14-day period, inmates in every institution will be secured in their assigned cells/quarters to decrease the spread of the virus.

   b. During this time, to the extent practicable, inmates should still have access to programs and services offered under normal operating procedures, such as mental health treatment and education.

   c. In addition, the Bureau is coordinating with the United States Marshals Service (USMS) to significantly decrease incoming movement during this time.

   d. After 14 days, this decision will be re-evaluated and a decision made as to whether or not to return to modified operations.

   e. Limited group gathering will be afforded to the extent practical to facilitate commissary, laundry, showers, telephone, and Trust Fund Limited Computer System (TRULINCS ) access.

   f. Provided inmates access to programs and services offered under normal operating procedures, such as mental health treatment and education.

   g. In addition, the Bureau coordinated with the United States Marshals Service (USMS) to significantly decrease incoming movement during this time.

   h. See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.

20. At FCI Danbury, during Phase Five, meals, commissary items, laundry, recreation materials, education materials, medical services and psychology services were delivered directly to inmates' housing units.  Further, inmates were released from their cells in small groups to engage in activities such as showers, exercise, phone calls, and email access.

During these time periods, inmates have been directed to maintain appropriate physical distancing.

## I.   Action Plan for COVID-19, Phase Six

21. On April 13, 2020, the Director of the Bureau ordered the implementation of Phase 6 of its COVID-19 Action Plan.   Specifically, the Director ordered an extension of the nationwide action in Phase 5, which applies to medical screening, limited inmate gathering, daily rounds, limited external movement, and fit testing, until May 18, 2020. Phase Six has been implemented at FCI Danbury.

## J.   Adjustments to Institutional Operations in Order to Implement the COVID-19 Action Plan

22. FCI Danbury has implemented BOP's national action plan, in compliance with BOP's national directives.

23. The implementation of the BOP's COVID-19 Action Plans at FCI Danbury can best be described as a "slowing down" of institutional operations, designed to limit the size of groups inmates can form and also the ability of these smaller groups to interact with each other at FCI Danbury. This minimizes the opportunity for inmates to come into contact with infected persons, and if they do, minimizes the possibility that any infection will spread beyond the smaller group.

24. In general, the smaller inmate groups at FCI Danbury were formed by dividing inmates by housing unit, and if applicable floor, so they can 'shelter in place' with the fewest number of fellow inmates. In order to reduce idle time and provide programs and activities, these groups are rotated through the recreation facility by themselves, and disinfection of the recreation facility is performed before the next group is rotated through it. Programs are delivered on the units, to include Education, Psychology, and Religious Services (especially in consideration of the Ramadan observance). All meals are delivered on the units, inmates are still receiving at least one hot meal per day, and meal delivery to

the units is performed by staff (instead of inmate food service workers) in order to maintain the integrity of the inmate group quarantine. When inmates need to report to Health Services for activities which cannot be performed on the unit (medication administration, etc.), they report to the clinic only with other inmates from their group. Once at the clinic they move throughout the space in accordance with markings on the floor to direct one-way travel, and wait in areas designed to facilitate social distancing.

25. In addition, separate housing spaces have been established for "Isolation" (for inmates demonstrating symptoms) and "Quarantine" (asymptomatic) inmates. These areas are distinct from the aforementioned housing unit groups and identified with signs prior to entering the unit. Staff are required to utilize proper personal protective equipment ("PPE") prior to entering these units to minimize to potential for cross-contamination between units.

26. Finally, certain units have been set up to quarantine inmates who, in light of guidance regarding eligibility for release to home confinement under the expanded consideration authority granted to the Attorney General under the CARES Act, may soon be releasing to the community. In order to protect against the risk of transferring inmates to the community that will contribute to the spread of COVID-19, any inmate granted home confinement is placed in a 14-day quarantine prior to discharge from the BOP facility. These "home confinement quarantine" units are intended to minimize the amount of time an inmate might be required to stay in a pre-release quarantine should they become eligible for this benefit.

27. The FPC was placed on modified operations on March 19, 2020. This involved dividing the FPC into four separate dormitory groups, each of which moves throughout the facility by itself so there is no opportunity to have contact with the other dormitory groups. Each dormitory group has a designated shared bathroom and shower facility, eats in their assigned dormitory, and is allowed to use the recreation facilities only with inmates from their dormitory group. Due to the fact there have not been COVID infections at the FPC,

isolation and quarantine procedures have not been utilized at the FPC. Nonetheless, space in the Unicor warehouse and FCI has been designated to perform these functions should the need to isolate or quarantine FPC inmates arise.

28. The FSL was placed into modified operations on March 19, 2020. Housing at the FSL is a large dormitory that is divided into sections, with inmates assigned to live in cubicles containing bunks. Areas of the FSL not ordinarily used as housing have been repurposed in order to accommodate isolation and quarantine procedures; furthermore, recent COVID infections at the FSL have created a need to utilize the kitchen as a separate quarantine space. The visiting room at the FCI has also been used as a quarantine space for at-risk female inmates who were tested at the beginning of the emergency and are awaiting return to the FSL. The number of temporary quarantine spaces needed should be reduced as the different groups of inmates complete their quarantine periods (each established by the date the quarantine began) and can be reintroduced to the main living space at the FSL dormitory.

29. The FCI was placed into modified operations on March 19, 2020. This facility has standalone housing units for isolation, quarantine (such as for newly-committed inmates; these inmates do not go straight into the general population), and "home confinement quarantine". Any FCI inmate that requires isolation is placed in a single-occupancy cell with a solid door that locks. The auditorium has been set up for quarantine for home confinement inmates. The FCI also has a unit dedicated to those that are released from isolation to continue to recover before they are returned to a general population unit.

30. Should the need arise, each facility retains the ability to create new isolation/quarantine space. For example, the FCI has been able to repurpose auditorium space into a pre-release quarantine for inmates transferring to home confinement, and has preplanned turning the dormant Unicor (Federal Prison Industries) factory into temporary housing. The FPC has already converted space in the Unicor warehouse into cubicle housing, and two temporary buildings on loan from the United States Penitentiary in Lewisburg (PA) have been raised

should additional isolation/quarantine space be needed. Finally, the FSL has been able to repurpose classroom and activity space inside the facility into temporary living quarters in order to isolate/quarantine inmates. Additional temporary measures that have been taken include using the FCI visiting room as a quarantine facility for FSL inmates, and creating isolation cells inside the FCI for inmates from the FSL. I am not concerned that we will run out of appropriate space to isolate/quarantine inmates at FCI Danbury.

### K. Hygiene and Safety Practices at FCI Danbury

31. Maintaining institutional and personal hygiene is always a priority in a correctional setting. Since the COVID-19 pandemic however, institutional and personal hygiene has been elevated to the utmost importance, especially since inmates have been largely restricted to their housing units since implementing Phase Five of the COVID-19 Action Plan. Maintaining the highest standards of institutional and personal hygiene during modified operations is not only important for purposes of infection control, but also to minimize the possibility of disturbances or other events which might compromise the security and good order of the institution.

32. The Safety Department at FCI Danbury is responsible for distributing cleaning supplies throughout the institutions. These include but are not limited to cleaning chemicals, spray bottles, cleaning rags and applicators, and the equipment necessary to perform cleaning tasks. The chemicals used for cleaning at FCI Danbury are distributed to all areas of the institution on a regular schedule, and if any particular area requires additional cleaning supplies, staff assigned to that area can make arrangements with Safety to receive more. I am not aware of Safety ever having run out of cleaning supplies since the COVID-19 crisis began at FCI Danbury.

33. Currently, four specific cleaners are being used at FCI Danbury. TriBase 17 Multi-Purpose Cleaner, hdqC2 disinfectant cleaner, and Formula 66 air freshener have been the ordinarily employed cleaning chemicals at FCI Danbury. Since the beginning of the COVID emergency however, a broad spectrum disinfectant ("Virex II/256") has been

added to specifically address the coronavirus threat. Virex II/256 is now used throughout the institution.

34. Prior to this pandemic, chemicals used for cleaning at FCI Danbury were distributed throughout the institutions on a regular weekly and monthly schedule. In between the regularly-scheduled distribution, staff were always able to request additional cleaning supplies if they were needed.

35. Since the current emergency however, FCI Danbury has gone to a daily distribution of cleaning supplies. On weekdays an institution-wide announcement is made for staff to place their cleaning bottles outside the doors of their housing units, and Safety Department staff refill or replace needed supplies. While prior to the pandemic inmate orderlies would report to Safety to retrieve these supplies, in order to maintain the integrity to the group quarantine, staff now perform these functions. Of course, if additional supplies are needed during the day, staff can coordinate the delivery of these items with the Safety Department.

36. Once in the housing units, cleaning supplies are maintained in small caddies or bins kept in staff offices or closets. Inmates can then ask for a bin of cleaning supplies to bring back to their living areas.

37. Large area disinfection is being performed at both the FSL and FCI through use of backpack cleaning chemical sprayers. This work is performed by inmate orderlies or staff, depending on the location (inmates cannot perform this work in an area where they might come into contact with inmates not in their quarantine group). At this time five additional backpack sprayers are being routed to FCI Danbury from the BOP's Command Center, and this will greatly expand the ability to perform this task. Whether by backpack unit or spray bottles, inmate orderlies (working only within their unit, to maintain the integrity of the group quarantine) are cleaning all high-touch areas such as doorknobs, railings, knobs, and handles multiple times per day.

38. As a final measure intended to ensure all inmate living and activity areas are maintained in the cleanest possible condition, I have made each member of my Executive Staff individually responsible for overseeing the condition of specific housing units.

### L.   The Availability of Soap and other Personal Hygiene Products

39. Inmates at FCI Danbury are provided with basic soap and personal hygiene products (razors, toothbrushes, toothpaste, etc.) by the institution. These toiletries are maintained by staff whose offices are located in the housing units, so there is never a reason an inmate should not have access to soap at FCI Danbury.

40. FCI Danbury also operates a centralized laundry, and inmates in this facility have their clothes (institution issued as well as personal articles purchased from commissary) washed for them by the laundry department. Inmates at both the FPC and FSL are provided with no-cost washers/dryers/laundry soap which they can use to clean clothes and linens.

41. Beyond that, the commissary at FCI Danbury allows inmates to purchase toiletries, medication, food, and other items not issued regularly as part of the institution administration. Similar to the offerings at any convenience store, the commissary at FCI Danbury offers a selection of up to 13 different soaps, to include familiar national brands such as Irish Spring, Dove, Pure Antibacterial, Noxzema, and Neutrogena. Inmates can also buy Ajax dish detergent and laundry detergent from the commissary. A complete list of items FCI Danbury inmates can buy is available on the BOP's public website and can be seen at https://www.bop.gov/locations/institutions/dan/dan_comlist.pdf.

42. My review of commissary records show that all four plaintiffs have had regular access to the commissary throughout this time, and all four regularly purchase soap and other personal hygiene products.

43. Since the beginning of the year inmate Martinez-Brooks has spent $391.10 at the commissary, to include purchasing Pure Antibacterial soap on three occasions (last purchased Pure Antibacterial Soap on April 2, 2020).

44. Since the beginning of the year inmate Cassidy has spent $567.20 at the commissary, to include purchasing various brands of soap on five occasions (last purchased Irish Spring Icy Blast on April 1, 2020).

45. Since the beginning of the year inmate Collier has spent $921.90 at the commissary, to include purchasing various brands of soap on ten occasions (last purchased Dove Soap on April 27, 2020).

46. Since the beginning of the year inmate Madore has spent $1187.65 at the commissary, to include twice purchasing bar soap (last purchased three bars of Pure Antibacterial soap on March 24, 2020).

**M. Status of Personal Protective Equipment**

47. Staff and inmates at FCI Danbury have, and will continue to have, access to appropriate personal protective equipment ("PPE").

48. Upon reporting to work each day, staff at FCI Danbury are provided with new surgical masks at the staff screening site to wear throughout their shift. Staff are required to wear these masks, and failure to do so may be cause for employee discipline under terms of Program Statement 3420.11 Standards of Employee Conduct.

49. There are areas of the institution where staff might require additional PPE to perform their duties. These areas include but are not limited to Health Services, Receiving & Discharge, and isolation housing units. In these areas kits have been assembled which contain the enhanced PPE to be used in that area (for example, gown, gloves, N-95 particulate respirators, face shields) and are always available. When the number of kits gets low, staff contact Health Services and additional kits are provided. In addition, kits are maintained in other areas of the institution (Control Center, Lieutenant's Office) to ensure availability during all hours of the day.

50. Throughout the institution and while working posts at the outside hospital, Correctional Officers are provided with PPE appropriate for their assigned post.

51. Staff are instructed as to the proper use of PPE through various memoranda detailing the type of PPE required at a given post or for a specific duty. Memoranda have also been circulated to instruct staff as to the proper donning/doffing of PPE, and video instruction is also available on the computer desktop of every FCI Danbury employee.

52. Inmates at FCI Danbury were initially provided with two of the same surgical masks provided to staff. Once FCI Danbury was able to procure cloth masks, two of these masks were issued to every inmate. Upon request, inmates will still be provided with the same surgical masks provided to staff. Inmates are required to wear these masks at all times except when they are eating or sleeping, and failure to do so may make the inmate subject to discipline under Program Statement 5270.09 Inmate Discipline Program.

53. Inmates performing cleaning or orderly duties have always, and will continue, to have access to gloves or other PPE as may be necessary for them to perform their assigned duties.

### N.  Staffing

54. FCI Danbury staff work and live in an area of the country where there has been widespread community transmission of COVID-19. Through communications from Bureau leadership, local Executive Staffs, and individual supervisors, staff have been informed how to perform regular self-monitoring for symptoms, practice social distancing and to disinfect and clean their work spaces. Anyone who develops signs or symptoms of illness is sent home.

55. Beginning on or about March 25, 2020 staff at FCI Danbury were subjected to enhanced health screening prior to the start of their shift. These enhanced screening measures involve every staff member reporting to a screening site prior to the start of their shift, where they are required to self-report any symptoms consistent with COVID-19 as well as any known or suspected COVID-19 exposure, and further required to have their temperature taken. Staff are not permitted to report to their post without first reporting to the staff screening site.

56.   If a staff member reports symptoms consistent with COVID-19 or a known or suspected COVID-19 exposure, or registers a temperature of 100.4 degrees or higher, they are sent home. A BOP medical officer will then contact them and determine when it would be safe and appropriate for them to return to the institution.

57.   If a staff member has been determined to be positive for COVID-19 following a laboratory test, the following criteria is used to assess their suitability for returning to work:

    a.   At least 3 days (72 hours) need to have passed since recovery (defined as resolution of fever without the use of fever-reducing medications); and,

    b.   Improvement in respiratory symptoms (e.g., cough, shortness of breath); and,

    c.   At least 7 days have passed since symptoms first appeared.

58.   If a staff member has been identified as a prolonged close contact of a COVID-19 positive case, and did not have the appropriate PPE or had a breach in their PPE, as long as the staff member remains asymptomatic, they:

    a.   Return to work for their regular shift,

    b.   Are required to undergo temperature monitoring and symptom checks upon arrival to work, and are also instructed to perform self-monitoring at home; and,

    c.   Are instructed to immediately stop work, notify their supervisor, and isolate at home if symptoms consistent with COVID-19 (e.g., fever, cough, or shortness of breath) develop; and,

    d.   Are directed to quarantine themselves when not at work for a period of 14 days

59.   If a staff member at FCI Danbury is symptomatic or becomes symptomatic, they:

    a.   Are not allowed to report to work; and

    b.   Are required to give notice to their Supervisor; and

    c.   Are directed to notify their local Health Department or their personal healthcare provider.

**O.  The BOP's Authority to Place Inmates on Home Confinement**

60. The BOP's statutory authority to transfer prisoners to home confinement rests in 18 U.S.C.

§ 3624(c) (2) and 34 U.S.C. § 60541.  The BOP's policy and procedures regarding home

confinement are outlined in BOP Program Statement 7320.01, Home Confinement and

BOP Operations Memorandum, Home Confinement under the First Step Act, both of

which are available on www.bop.gov via the Resources tab.  Both statutes set forth certain

limitations with respect to the BOP's transfer authority.  See 18 U.S.C. § 3624(c) (2) and

34 U.S.C. § 60541.  However, pursuant to the Attorney General's directives in light of the

COVID-19 pandemic, dated March 26, 2020, and April 3, 2020, infra, and given the surge

in positive cases at select sites, the BOP began immediately reviewing all inmates who

have COVID-19 risk factors, as described by the Centers for Disease Control and

Prevention (CDC), to determine which inmates are suitable for home confinement.  Since

the release of the Attorney General's original memorandum dated March 26, 2020, the

BOP is prioritizing transfers to home confinement of all suitable inmates as an appropriate

response to the COVID-19 pandemic. FCI Danbury is following this guidance.

**P.  The Attorney General's Memorandum for the Director of the Bureau of Prisons, dated March 26, 2020**

61. On March 26, 2020, the Attorney General issued a Memorandum for the Director of the

Bureau of Prisons (the March 26, 2020, Memorandum) to ensure that, in light of the

COVID-19 pandemic, BOP utilizes home confinement, where appropriate, to protect the

health and safety of BOP personnel and people in BOP's custody.  Pursuant to the March

26, 2020, Memorandum, BOP is prioritizing the use of its statutory authorities to grant

home confinement for inmates seeking transfer in connection with the ongoing COVID-

19 pandemic.  It was noted in the March 26, 2020, Memorandum that many inmates will

be safer in BOP facilities where the population is controlled and there is ready access to

doctors and medical care.  But for some eligible inmates, home confinement might be more effective in protecting their health.

62. In assessing whether home confinement should be granted pursuant to the March 26, 2020, Memorandum, BOP considers the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

   a. The age and vulnerability of the inmate to COVID-19, in accordance with the CDC guidelines;

   b. The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

   c. The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

   d. The inmate's score under PATTERN (the Prisoner Assessment Tool Targeting Estimated Risk and Need),  with inmates who have anything above a minimum score not receiving priority treatment;

   e. Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

   f. The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.  Some offenses, such as sex offenses, will render an inmate ineligible for home confinement.  Other serious offenses weigh heavily against consideration for home confinement.

63. In addition to setting forth these factors, the March 26, 2020, Memorandum stated that before granting any inmate discretionary release, the BOP Medical Director, or someone

he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the location in which the inmate seeks home confinement.  The BOP will not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19.  The BOP will grant home confinement only when it has determined -- based on the totality of circumstances for each individual inmate -- that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

64. Moreover, the March 26, 2020, Memorandum noted that for the protection of the public, any inmate to whom BOP grants home confinement is to be placed in a mandatory 14-day quarantine before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process are also subject to location monitoring devices and, where a court order is entered, are subject to supervised release.

### Q.  The CARES Act and the Attorney General's Memorandum for the Director of the Bureau of Prisons, dated April 3, 2020

65. The Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public Law No. 116-236 (enacted March 27, 2020), authorizes the Attorney General to expand the cohort of inmates who can be considered for home confinement upon his finding of emergency conditions which are materially affecting the function of the BOP.  On April 3, 2020, the Attorney General made that finding, and in a Memorandum for the Director of the Bureau of Prisons (April 3, 2020, Memorandum), authorized the Director to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where the Director determines that COVID-19 is materially affecting operations.

66. The April 3, 2020, Memorandum specifically stated that the BOP must move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of FCI Oakdale, FCI Danbury, and FCI Elkton, and to give priority to those institutions, and others similarly affected, as the BOP continues to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards.

67. The April 3, 2020, Memorandum directed that the BOP give priority in implementing the new standards to the most vulnerable inmates at the most affected facilities and was explicit that the BOP should begin implementing this directive immediately at the identified facilities and any other facilities at risk of similar problems.  The April 3, 2020, Memorandum stated that the review should include a much broader pool of at-risk inmates—not only those who were eligible for transfer prior to the Attorney General exercising his authority under the CARES Act.

68. For inmates deemed suitable candidates for home confinement, the April 3, 2020, Memorandum directed the BOP to immediately process these inmates for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility.  The April 3, 2020, Memorandum further authorized BOP to, in appropriate cases, require that the inmate being transferred undergo his or her 14-day quarantine in the residence to which the inmate is being transferred rather than in the BOP facility from which the inmate is being transferred.  The assessment of all inmates remain guided by the factors in the March 26, 2020, Memorandum.

69. The April 3, 2020, Memorandum also recognized the BOP has limited resources to monitor inmates on home confinement and the U.S. Probation Office is unable to monitor large number of inmates in the community, and authorized the BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as it determines in every instance doing so is appropriate and consistent with the obligation to protect public safety.

70. Lastly, the April 3, 2020, Memorandum stated it is essential for the BOP to continue making determinations for home confinement in a careful and individualized way that remains faithful to the duty of protecting the public and law enforcement officers.

### R. The BOP's Implementation of the March 26, 2020 and the April 3, 2020 Memoranda

71. The BOP is devoting all available resources to executing the Attorney General's directives, with such resources tailored and prioritized according to the needs of individual institutions across the country. The BOP is assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program. The BOP is then processing those inmates for transfer as expeditiously as possible.

72. The BOP is also frequently updating its public website to provide information and responses to frequently asked questions regarding its response to the COVID-19 pandemic, including providing information regarding its implementation of the Attorney General's directives.

73. The BOP has increased home confinement by over 69.1% since March 2020, and is continuing to aggressively screen inmates for home confinement. Since the March 26, 2020, Memorandum instructing the BOP to prioritize home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed an additional 1972 inmates on home confinement.

74. Inmates do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. While all inmates are being reviewed for suitability for home confinement, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager.

75. It should be noted for public safety reasons, in accordance with the March 26, 2020, Memorandum and to ensure BOP is deploying its limited resources in the most effective manner, the BOP is currently assessing a number of factors to ensure an inmate is suitable for home confinement including, but not limited to, reviewing the inmate's institutional discipline history for the last twelve months; ensuring the inmate has a verifiable release plan; verifying the inmate's primary offense is not violent, a sex offense, or terrorism related; and confirming the inmate does not have a current detainer.

76. In addition, and in order to prioritize its limited resources, BOP has generally prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences.  While these priority factors are subject to deviation in BOP's discretion in certain circumstances and are subject to revision as the situation progresses, BOP is at this time prioritizing for consideration those inmates who either (1) have served 50% or more of their sentence, or (2) have 18 months or less remaining in their sentence and have served 25% or more of their sentence.  As BOP processes the inmates eligible for home confinement under these criteria and learns more about the COVID-19 pandemic and its effect on BOP facilities, it is assessing whether and how to otherwise prioritize consideration.

77. If the incarcerated individual does not qualify for home confinement under BOP criteria, an inmate may be reviewed for placement in a Residential Reentry Center and home confinement at a later stage in accordance with applicable laws and BOP policies.

78. Staff at FCI Danbury have been reviewing inmates for home confinement since the Attorney General's March 26 guidance was issued. Because this guidance has changed several times (in some cases causing inmates to be reviewed more than once), an exact number of inmates that have been reviewed is impossible to arrive at. However, with the assistance of my Case Management Coordinator I can estimate that approximately 159 FCI Danbury inmates have been reviewed for home confinement since March 26. These reviews have led to 21 FCI Danbury inmates having been released to home confinement,

with another 2 having been released on furlough until the beginning of a previously-established home confinement date.

### S.  Testing

79. FCI Danbury is conducting COVID-19 testing in accordance with CDC guidelines. The CDC has explained that not everyone needs to be tested for COVID-19, and decisions about testing are at the discretion of state and local health departments. See www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/testing.html (last visited on Apr. 30, 2020).

80. This petition alleges "FCI Danbury has further willfully refused to take temperatures or test for fever in order to avoid identifying cases of possible COVID infection." Pet. at ¶132. This could not be further from the truth. In fact, beginning on April 9, 2020, FCI Danbury instituted daily temperature checks for all inmates. The Lieutenants at FCI Danbury have been provided with infra-red no-touch thermometers to perform this task, and every day they visit each housing unit to take the temperature of all inmates assigned to that unit. If in the course of performing these checks any inmate is found to have a temperature of 99 degrees or higher, Health Services staff are contacted and the inmate is sent for a follow-up assessment to be performed by a licensed health care provider.

81. Any inmate at FCI Danbury presenting with symptoms consistent with COVID-19 is immediately evaluated by a medical provider to determine whether testing and/or isolation is appropriate. Furthermore, the symptomatic inmate's circumstances are reviewed to determine whether contact tracing might be necessary, and whether inmates with whom the symptomatic inmate had contact might need to be quarantined.

82. At FCI Danbury the decision whether to test an inmate for COVID-19 is made by BOP medical providers based on a number of criteria, including but not limited to: (1) the nature and severity of the symptoms; (2) the inmate's potential exposure to COVID-19; (3) whether the inmate is considered "high-risk." On April 14, 2020, FCC Danbury received an Abbott "ID NOW" machine that can deliver positive or negative test results for

COVID-19 infection in approximately 15 minutes. As of this date, FCI Danbury has 150 COVID-19 testing kits in stock. Danbury also has the ability to order and quickly receive additional kits from a designated vendor if needed.

83. Since the advent of the emergency, 205 inmates have been tested for COVID-19.  Sixty-nine inmates and 56 staff have tested positive for COVID-19.

84. Since BOP entered Phase One of its COVID-19 Action Plan, inmates at FCC Danbury have continued to have access to "sick call", which is a means by which inmates can request to be seen by a BOP health care provider. There has been no change in the "sick call" policy since the COVID-19 pandemic began.

85. During the week of April 25, 2020, the office of Senator Christopher Murphy reached out to FCI Danbury to discuss testing of inmates at FCI Danbury. Between May 2-3, 2020, every FSL inmate was tested using the Abbott "ID NOW" machine.  During this period, 143 tests were performed, and 20 inmates tested positive for COVID-19.

## T.    Medical Services at FCI Danbury

86. The Health Services department at FCI Danbury is staffed with both civilian health care providers and uniformed officers from the Commissioned Corps of the United States Public Health Service ("USPHS"). In total, the Health Services department at FCI Danbury consists of one Health Services Administrator, two physicians, one part-time Mid-Level Provider, one pharmacist, one IOP/ID Registered Nurse, one Registered Nurse, three Emergency Medical Technician-Paramedics, one dentist, one dental hygienist, one licensed clinical social worker, one medical records technician, one health services administrative assistant, three contract medical assistants, one contract phlebotomist, and one contract x-ray technician.

87.  Since the COVID-19 emergency began, three BOP and two contract Health Services staff were placed on leave due to testing positive for COVID-19. Prior to the COVID-19 emergency two staff members were on medical leave status and one had been granted paternity leave. Due to these absences, the BOP's Northeast Regional Office ("NERO")

sent a Medical Asset Support Team ("MAST") to assist FCI Danbury with its COVID-19 response. This MAST includes an Associate Warden, two Physician Assistants, and one pharmacist.

88. In order to take 100% of staff temperatures every day, a screening site has been set up in the front lobby of the institution. When staff report to work they are asked a series of screening questions regarding their health and their temperature is taken. Only staff whose temperatures are 100.3 degrees or less are allowed to proceed to their duty station.

89. The Lieutenants at FCI Danbury have been provided with infra-red no-touch thermometers to ensure the entire inmate population has their temperature taken every day. This task is accomplished by having the Lieutenants daily visit each housing unit to take the temperature of all inmates assigned to that unit. If in the course of performing these checks any inmate is found to have a temperature of 99 degrees or higher, Health Services staff are contacted and the inmate is sent for a follow-up assessment to be performed by a licensed health care provider.

90. As noted previously, inmates have always had access to Health Services throughout the period of modified operations. In order to maintain the integrity of the group quarantines, Health Services staff (which have included the social worker and/or the dental hygienist) go to the individual housing units to pass out and collect "sick call forms", which are written requests to Health Services staff. The staff distributing and receiving these forms do not perform assessments at that time. The "sick call" forms are triaged by a Registered Nurse and/or a Physician Assistant for appropriate action. If it is determined an inmate needs to be seen in the clinic, they are set for an appointment at a time they can move to the clinic with other members of their quarantine group. For emergent medical needs, an inmate can always be specifically called up to the clinic outside the pre-planned "move" or scheduled quarantine group visits.

91. All inmates who present with COVID-19 symptoms are isolated and tested the same day, provided testing supplies are available. Under no circumstances are inmates that have been

placed in isolation released to the general population prior to meeting the CDC's symptom-based criteria for appropriateness, which includes (1) being fever-free for greater or equal to 72 hours without the use of fever-reducing medication, and (2) respiratory symptoms have improved, and (3) at least 7 days have passed since the first symptoms appeared. When an FCI Danbury inmate is receiving treatment for COVID-19 at the outside hospital, Health Services staff engage in daily contact and consultation with the community based infectious disease specialists providing the treatment.

92. The pharmacy at FCI Danbury has remained functioning throughout this period of modified operations. Whenever possible, inmates "self-carry" their medications, meaning they are allowed to maintain their prescription medications in their property and are responsible for taking the medication themselves. Otherwise, there are two scheduled "moves" per day when inmates can, within their quarantine group, proceed to the clinic for "pill line" or staff-assisted medication administration.

### U.    Compassionate Release / Reduction in Sentence Procedures

93. The First Step Act specifies an inmate may file a Motion for Reduction of Sentence ("RIS") directly in the sentencing court after exhaustion of administrative remedies, or 30 days from the date the warden receives such a request from the inmate, whichever is earlier.  See 18 U.S.C. § 3582(c) (1) (A).

94. Staff at FCI Danbury are receiving and processing requests for a Reduction in Sentence/Compassionate Release as quickly as possible. Indeed, since this emergency began the RIS Coordinator at FCI Danbury has received 241 requests for this benefit. As of May 4, 2020, 136 completed requests have been processed and denied, 18 have been returned to the inmate seeking further information, 70 are processing through the various staff who need to review the application, and 17 are awaiting my review.

95. As to plaintiffs, my review of records shows inmate Martinez-Brooks made an incomplete request for RIS on March 26, 2020, and only submitted a complete request on April 24, 2020. This request has not yet been reviewed. Inmate Collier made an initial request on

April 15, 2020, although it was returned to her on April 24th to perform corrections necessary for it to be reviewed. Inmate Cassidy filed a RIS request on April 4, 2020, and this request was denied on April 22, 2020. As of this date, inmate Madore has not filed a request for RIS with my office.

V.      Inmate Access to the Administrative Remedy Process

96. Plaintiffs allege staff at FCI Danbury are refusing to allow inmates to access to the administrative remedy process, set forth at 28 C.F.R. §542 Subpart B, since the COVID-19 emergency began. I specifically deny this allegation. In fact, my review of SENTRY (the BOP's computerized inmate management program which contains, among other things, a record of every grievance filed by any inmate throughout the agency) shows that inmates have filed 48 formal written Administrative Remedy Requests with my office between the dates March 1, 2020, - May 2, 2020. Thirteen of these Administrative Remedy Requests were requesting compassionate release or home confinement. As a matter of comparison, SENTRY shows the Warden's office received 61 formal written Administrative Remedy Requests during this same time period in 2019, 37 formal written Administrative Remedy Requests during this same time period in 2018, and 33 formal written Administrative Remedy Requests during this same time period in 2017.

# Left Blank Intentionally

97. As to plaintiffs, my review of SENTRY shows none of them have filed grievances since the COVID emergency began. Inmate Collier's most recent grievance was a filing made with BOP's Northeast Regional Office on March 9, 2020, appealing an "access to exercise equipment" complaint she filed with the Warden on January 10, 2020 (prior to modified operations). Inmate Martinez-Brooks' most recent grievance was filed in August 2019, at which time she was appealing the denial of a lower bunk pass. Inmate Cassidy's most recent grievance was filed during a prior term of incarceration, in September, 2007 while incarcerated at FCI Fort Dix (NJ), he requested an institutional transfer. Inmate Madore has never filed a grievance regarding any matter whatsoever while in BOP custody.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this ____5____ day of May, 2020.

D. Easter
Digitally signed by D. Easter
Date: 2020.05.05 15:14:07
-04'00'

Diane Easter
Warden
FCI Danbury, CT

# EXHIBIT B

# US District Court Criminal Docket

### U.S. District - New York Western
### (Buffalo)

## 1:17cr116

## USA v. Cassidy

This case was retrieved from the court on Tuesday, May 5, 2020

| | |
|---|---|
| **Date Filed:** 06/13/2017 | **Class Code: CLOSED** |
| **Other** **Magistrate judge case number:** **Docket:** 1:16mj05073 | **Closed: yes** |

## Defendants

| Name | Attorneys |
|---|---|
| Kenneth Cassidy(1)<br>[Term: 12/20/2018] | Barry Nelson Covert<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Lipsitz Green Scime Cambria LLP<br>42 Delaware Avenue Suite 120 716-849-1333, ext. 365<br>Buffalo, NY 14202<br>USA<br>Fax: 716-855-1580<br>Designation: Retained<br>Email: bcovert@lglaw.com<br><br>Jeffrey T. Bagley<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Federal Public Defender<br>300 Pearl Street Suite 200<br>Buffalo, NY 14202<br>USA<br>716-551-3341<br>Email: jeffrey_bagley@fd.org<br><br>Terence Brian Newcomb<br>[Term: 09/05/2017]<br>P.O. Box 78<br>Buffalo, NY 14205-0078<br>USA<br>716-867-1627<br>Fax: 716-677-6766<br>Designation: CJA Appointment<br>Email: newcattack@aol.com |

## Charges

| | Charges | Disposition |
|---|---|---|
| **Complaints:** | 18:1343.F Fraud by Wire, Radio, or Television | |
| **Pending:** | 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT MAIL FRAUD(1s) | The Defendant is sentenced to the custody of the BOP for a term of 60 months to run concurrent to the sentence of imprisonment imposed on Count 2 and a 3 year term of Supervised Release to run concurrent to the term of supervised release imposed on Count 2. Conditions of Supervised release are as detailed in minute entry of 12/18/2018. $100.00 Special |

|  |  | Assessment imposed. Restitution in the amount of $2,649,169.17 imposed. |
|---|---|---|
|  | 26:7203D.M WILLFUL FAILURE TO FILE RETURN, SUPPLY INFORMATION, OR PAY TAX(2s) **Offense Level (Opening): Felony** | he Defendant is sentenced to the custody of the BOP for a term of 12 months to run concurrent to the sentence of imprisonment imposed on Count 1 and a 1 year term of Supervised Release to run concurrent to the term of supervised release imposed on Count 2. Conditions of Supervised release are as detailed in minute entry of 12/18/2018. $25.00 Special Assessment imposed. Restitution in the amount of $2,649,169.17 imposed. |
| **Terminated:** | 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT MAIL FRAUD(1) | Dismissed. |
|  | 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION(2-5) **Offense Level (Terminated): Felony** | Dismissed. |

**Case Assigned to:** Honorable William M. Skretny
**Case Referred to:** Honorable Michael J. Roemer

### U. S. Attorneys

Aaron J. Mango
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
U.S. Attorney's Office Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
USA
716-843-5882
Fax: 716-551-3146
Designation: government attorney
Email: aaron.mango@usdoj.gov

| Date | # | Proceeding Text |
|---|---|---|
| 06/27/2016 | 1 | COMPLAINT as to Kenneth Cassidy (1). (RAZ) [1:16-mj-05073-MJR] (Entered: 08/25/2016) |
| 01/11/2017 |  | SCHEDULING NOTICE as to Kenneth Cassidy. Initial Appearance set for 1/13/2017 10:30 AM before Hon. Michael J. Roemer. (RAZ) [1:16-mj-05073-MJR] (Entered: 01/11/2017) |
| 01/13/2017 |  | Case unsealed as to Kenneth Cassidy. (RAZ) [1:16-mj-05073-MJR] (Entered: 01/13/2017) |
| 01/13/2017 | 2 | Arrest Warrant Returned Executed on 12/27/2016 in case as to Kenneth Cassidy. (RAZ) [1:16-mj-05073-MJR] (Entered: 01/13/2017) |
| 01/13/2017 | 3 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Initial Appearance as to Kenneth Cassidy held on 1/13/2017. Deft had appeared for an initial appearance in the EDNY before USMJ Marilyn D.Go on 12/28/2016. The deft was remanded to the custody of the USMS and ordered removed to the WDNY for further proceedings.Court advised deft of his rights, including the right to counsel. Deft requested assigned counsel and is sworn, questioned and found eligible. Terrence B. Newcomb, Esq. accepted CJA assignment.Govt moved for detention. Detention Hearing set for 1/18/2017 11:30 AM before Hon. Michael J. Roemer where at that time parties will report back regarding a preliminary hearing. Time excluded as from 1/13/2017 to 1/18/2017 for purposes of the STA as stated on the record. Defendant remanded to the custody of the USMS. Appearances: AUSA Aaron J. Mango; Terrence B. Newcomb, Esq. w/deft; USPOA Ashley McNeal. (Court Reporter FTR Gold.)(RAZ) [1:16-mj-05073-MJR] (Entered: 01/13/2017) |
| 01/13/2017 | 4 | CJA 23 Financial Affidavit by Kenneth Cassidy. (RAZ) [1:16-mj-05073-MJR] (Entered: 01/13/2017) |
| 01/18/2017 | 5 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Detention Hearing as to Kenneth Cassidy held on 1/18/2017.Parties proceeded by proffer. Court found by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance as required and found by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.Deft waived preliminary hearing. Status Conference (Rule 48(b)) set for 4/18/2017 10:30 AM before Hon. Michael J. Roemer. Time excluded as from 1/18/2017 to 4/18/2017 for purposes of the STA as stated on the record. Deft is remanded to the custody of the USMS. Appearances: AUSA Aaron J. Mango; Terence B. Newcomb, Esq. w/deft; USPOA Ashley McNeal. (Court Reporter FTR Gold.)(RAZ) [1:16-mj-05073-MJR] (Entered: 01/19/2017) |

| 01/18/2017 | 6 | ORDER OF DETENTION as to Kenneth Cassidy. Signed by Hon. Michael J. Roemer on 1/18/2017. (RAZ) [1:16-mj-05073-MJR] (Entered: 01/19/2017) |
| 04/18/2017 | 7 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Status Conference as to Kenneth Cassidy held on 4/18/2017. Govt reported that parties are proceeding toward a pretrial disposition of this case. Status Conference (Rule 48(b)) set for 6/20/2017 11:00 AM before Hon. Michael J. Roemer.Time excluded as from 4/18/2017 to 6/20/2017 for purposes of the STA as stated on the record. Appearances: AUSA Aaron J. Mango; deft Kenneth Cassidy. No appearance by deft counsel Terence B. Newcomb. (Court Reporter FTR Gold.)(RAZ) [1:16-mj-05073-MJR] (Entered: 04/18/2017) |
| 06/13/2017 | 8 | INDICTMENT as to Kenneth Cassidy (1) count(s) 1, 2-5. (KLH) (Entered: 06/14/2017) |
| 06/13/2017 | 9 | TEXT ORDER OF REFERRAL Hon. Michael J. Roemer, United States Magistrate Judge, is hereby designated to act in this case as follows:All pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B).All procedural aspects of matters properly before the Magistrate Judge under this Order, including scheduling and the filing of briefs or other supporting material, shall be determined by the Magistrate Judge.All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. IT IS SO ORDERED. Signed by Hon. William M. Skretny on 6/13/2017.(KLH) (Entered: 06/14/2017) |
| 06/15/2017 | | SCHEDULING NOTICE as to Kenneth Cassidy. Arraignment set for 6/20/2017 11:00 AM before Hon. Michael J. Roemer. (RAZ) (Entered: 06/15/2017) |
| 06/20/2017 | 10 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Arraignment as to Kenneth Cassidy (1) Count 1,2-5 held on 6/20/2017.Govt summarized charges in the Indictment and possible penalties. Deft waived reading of Indictment and entered a plea of not guilty to charges therein. Scheduling Order to issue. Time excluded from 6/20/2017 to 9/13/2017 for purposes of STA as stated on the record. No changed circumstances exist that would warrant the Court's reconsideration of its prior order of detention. Defendant shall remain detained. Appearances: AUSA Stephanie Lamarque and Law Student Alexandria Rowen; Terence B. Newcomb, Esq. w/deft. (Court Reporter FTR Gold.)(RAZ) (Entered: 06/23/2017) |
| 06/20/2017 | 11 | SCHEDULING ORDER as to Kenneth Cassidy. (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)Discovery completed by 7/20/2017. Motions due by 9/13/2017. Responses due by 9/27/2017. Replies due by 10/11/2017. Oral Argument set for 10/18/2017 10:30 AM before Hon. Michael J. Roemer. Signed by Hon. Michael J. Roemer on 6/20/2017.(RAZ) (Entered: 06/23/2017) |
| 08/24/2017 | 12 | NOTICE OF ATTORNEY APPEARANCE: Barry Nelson Covert appearing for Kenneth Cassidy (Covert, Barry) (Entered: 08/24/2017) |
| 08/28/2017 | | SCHEDULING NOTICE as to Kenneth Cassidy. Status Conference set for 9/5/2017 11:00 AM before Hon. Michael J. Roemer to discuss scheduling as deft has retained counsel.(RAZ) (Entered: 08/28/2017) |
| 09/05/2017 | 13 | Minute Entry for proceedings held before Hon. Michael J. Roemer. Status Conference re discovery and motion deadlines as to Kenneth Cassidy held on 9/5/2017. An amended scheduling order to be issued. STA exclusion. Appearances: AUSA Aaron J. Mango; Barry N. Covert, Esq. w/deft. (Court Reporter FTR Gold.)(RAZ) (Entered: 09/05/2017) |
| 09/05/2017 | | Attorney update in case as to Kenneth Cassidy. Attorney Terence Brian Newcomb terminated. (RAZ) (Entered: 09/05/2017) |
| 09/05/2017 | 14 | AMENDED SCHEDULING ORDER as to Kenneth Cassidy (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)Motions due by 10/16/2017. Responses due by 10/30/2017. Replies due by 11/6/2017. Oral Argument set for 11/13/2017 11:00 AM before Hon. Michael J. Roemer. Signed by Hon. Michael J. Roemer on 9/5/2017.(RAZ) (Entered: 09/05/2017) |
| 10/14/2017 | 15 | MOTION for Extension of Time to File Motions by Kenneth Cassidy. (Covert, Barry) (Entered: 10/14/2017) |
| 10/16/2017 | 16 | TEXT ORDER granting 15 Motion for Extension of Time to File Pretrial Motions as to Kenneth Cassidy (1). An amended scheduling order to be issued. SO ORDERED. Issued by Hon. Michael J. Roemer on 10/16/2017.(RAZ) (Entered: 10/16/2017) |
| 10/16/2017 | 17 | SECOND AMENDED SCHEDULING ORDER as to Kenneth Cassidy. (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)Motions due by 11/30/2017. Responses due by 12/14/2017. Replies due by |

|  |  |  |
|---|---|---|
|  |  | 12/21/2017. Oral Argument set for 1/9/2018 10:30 AM before Hon. Michael J. Roemer. Signed by Hon. Michael J. Roemer on 10/16/2017.(RAZ) (Entered: 10/16/2017) |
| 11/29/2017 | 18 | MOTION for Extension of Time to File Pretrial Motions by Kenneth Cassidy. (Covert, Barry) (Entered: 11/29/2017) |
| 11/30/2017 | 19 | TEXT ORDER granting 18 Motion for Extension of Time to File Pretrial Motions as to Kenneth Cassidy (1). An amended scheduling order to be issued. SO ORDERED. Issued by Hon. Michael J. Roemer on 11/30/2017.(RAZ) (Entered: 11/30/2017) |
| 11/30/2017 | 20 | THIRD AMENDED SCHEDULING ORDER as to Kenneth Cassidy. (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.)Motions due by 1/31/2018. Responses due by 2/12/2018. Replies due by 2/26/2018. Oral Argument set for 3/6/2018 11:00 AM before Hon. Michael J. Roemer. Signed by Hon. Michael J. Roemer on 11/30/2017.(RAZ) (Entered: 11/30/2017) |
| 12/15/2017 | 21 | SCHEDULING NOTICE as to Kenneth Cassidy. A Wavier of Indictment and Plea is scheduled for 1/2/2018 at 9:30 AM before the Hon. William M. Skretny. (MEAL) (Entered: 12/15/2017) |
| 12/22/2017 | 22 | ADJOURNMENT NOTICE as to Kenneth Cassidy. The Waiver of Indictment and Plea scheduled for 1/2/2018 at 9:30 AM before the Hon. William M. Skretny is ADJOURNED to 1/8/2018 at 10:00 AM. (MEAL) (Entered: 12/22/2017) |
| 01/08/2018 | 23 | WAIVER OF INDICTMENT by Kenneth Cassidy. (KM) (Entered: 01/10/2018) |
| 01/08/2018 | 24 | SUSPERCEDING INFORMATION as to Kenneth Cassidy (1) count(s) 1s, 2s. (KM) (Entered: 01/10/2018) |
| 01/08/2018 | 25 | PLEA AGREEMENT as to Kenneth Cassidy. (KM) (Entered: 01/10/2018) |
| 01/08/2018 | 26 | Minute Entry for proceedings held before the Hon. William M. Skretny:Waiver of Indictment and Plea as to Kenneth Cassidy held on 1/8/20187. Waiver of Indictment and Plea Agreement entered into and accepted by the Court. Defendant pled guilty to a Two Count Felony Superseding Information. Guilty plea accepted by the Court. Sentencing set for 4/18/2018 at 9:00 AM before the Hon. William M. Skretny. Presentence Report to Parties due by 3/5/2018. Sentencing Factors Statements/Sentencing Motions due by 3/28/2018. Motions to Adjourn due by 4/9/2018. Character Letters due by 4/9/2018. Objections/Responses to Sentencing Factors/Motions due by 4/9/2018., Presentence Report to the Court due by 4/9/2018. Court strongly urges the USMS to keep the defendant housed in Northeastern Ohio facility where he has been receiving medical treatment pending sentencing. Defendant remanded. For the govt. - Aaron Mango. For the deft. - Barry Covert. (Court Reporter Megan Pelka.) (MEAL) - PROBATION NOTIFIED OF PLEA - (Entered: 01/10/2018) |
| 03/05/2018 | 27 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Kenneth Cassidy. (Schrack, Joette) (Entered: 03/05/2018) |
| 03/28/2018 | 28 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Kenneth Cassidy (Mango, Aaron) (Entered: 03/28/2018) |
| 03/28/2018 | 29 | MOTION by USA as to Kenneth Cassidy. (Mango, Aaron) (Entered: 03/28/2018) |
| 03/28/2018 | 30 | MOTION to Adjourn Sentencing Date by Kenneth Cassidy. (Covert, Barry) (Entered: 03/28/2018) |
| 03/29/2018 | 31 | Sealed Document as to Kenneth Cassidy. (KM) (Entered: 03/29/2018) |
| 03/30/2018 | 32 | TEXT ORDER as to Kenneth Cassidy. IT HEREBY IS ORDERED THAT, the Defendant's 30 Motion to Adjourn Sentencing is GRANTED. Sentencing currently scheduled for 4/18/2018 at 9:00 AM before William M. Skretny, United States District Judge is ADJOURNED to 6/27/2018 at 11:00 AM. All sentencing submissions are due no later than 6/13/2018. SO ORDERED. Issued by William M. Skretny, United States District Judge on 3/30/2018. (MEAL) (Entered: 03/30/2018) |
| 04/11/2018 | 33 | RECOMMENDATION (Sealed) as to Kenneth Cassidy. (Hartman, Justine) (Entered: 04/11/2018) |
| 06/07/2018 | 34 | SCHEDULING CHANGE NOTICE as to Kenneth Cassidy. The TIME of the Sentencing scheduled for 6/27/2018 before William M. Skretny, United States District Judge has been CHANGED to 9:30 AM. (MEAL) (Entered: 06/07/2018) |
| 06/08/2018 | 35 | MOTION to Adjourn Sentencing by Kenneth Cassidy. (Covert, Barry) (Entered: 06/08/2018) |
| 06/11/2018 | 36 | TEXT ORDER as to Kenneth Cassidy. IT HEREBY IS ORDERED that the Defendant's Motion to Adjourn Sentencing 35 is GRANTED. Sentencing currently scheduled 6/27/2018 is ADJOURNED to 8/22/2018 at 9:00 AM, before the Hon. William M. Skretny. Sentencing Factors Statements/Sentencing Motions are due by 8/1/2018. Objections/Responses are due by 8/8/2018. Character Letters are due by 8/15/2018. Issued by United States District Judge William M. Skretny on 6/11/2018.(JCM) (Entered: 06/11/2018) |
| 08/01/2018 | 37 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by Kenneth Cassidy (Covert, Barry) (Entered: 08/01/2018) |
| 08/10/2018 | 38 | MOTION to Adjourn Sentencing by Kenneth Cassidy. (Covert, Barry) (Entered: 08/10/2018) |

| | | |
|---|---|---|
| 08/14/2018 | 39 | TEXT ORDER as to Kenneth Cassidy. IT HEREBY IS ORDERED that the Defendant's Motion to Adjourn Sentencing 38 is GRANTED. Sentencing currently scheduled 8/22/2018 is ADJOURNED to 10/3/2018 at 9:00 AM, before the Hon. William M. Skretny. Sentencing Factors Statements/Sentencing Motions are due by 9/12/2018. Objections/Responses are due by 9/19/2018. Character Letters are due by 9/26/2018. Issued by United States District Judge William M. Skretny on 8/14/2018.(JCM) (Entered: 08/14/2018) |
| 09/25/2018 | 40 | MOTION to Adjourn Defendant's Sentencing by Kenneth Cassidy. (Covert, Barry) (Entered: 09/25/2018) |
| 09/27/2018 | 41 | TEXT ORDER as to Kenneth Cassidy.IT HEREBY IS ORDERED that the Defendants Motion to Adjourn Sentencing 40 is GRANTED. Sentencing currently scheduled October 3, 2018 at 10/3/2018 at 9:00 AM, is CONVERTED TO A STATUS CONFERENCE, before the Hon. William M. Skretny.Issued by United States District Judge William M. Skretny on 9/27/2018.(JCM) (Entered: 09/27/2018) |
| 10/03/2018 | 42 | Minute Entry for proceedings held before the Hon. William M. Skretny: Status Conference re: sentencing as to Kenneth Cassidy held on 10/3/2018. Parties request additional time to resolve outstanding matters relating to sentencing. Court grants same. Sentencing is now scheduled for 11/28/2018 at 10:00 AM before the Hon. William M. Skretny. Defendant present and remanded. For the govt. - Aaron Mango. For the deft. - Barry Covert. For prob. - Susan Murray. (Court Reporter Jane Kellogg - FTR.) (MEAL) (Entered: 10/04/2018) |
| 11/15/2018 | 43 | SENTENCING MEMORANDUM by Kenneth Cassidy (Attachments: # 1 Exhibit A)(Covert, Barry) (Entered: 11/15/2018) |
| 11/19/2018 | 44 | REVISED PRESENTENCE INVESTIGATION REPORT (Sealed) as to Kenneth Cassidy. (JMH) (Entered: 11/19/2018) |
| 11/26/2018 | 45 | MOTION to Seal by Kenneth Cassidy. (Attachments: # 1 Text of Proposed Order)(Covert, Barry) (Entered: 11/26/2018) |
| 11/26/2018 | 46 | MOTION to Adjourn Sentencing by Kenneth Cassidy. (Covert, Barry) (Entered: 11/26/2018) |
| 11/27/2018 | 47 | TEXT ORDER as to Kenneth Cassidy.IT HEREBY IS ORDERED that the Defendant's Motion to Adjourn Sentencing 46 is GRANTED. Sentencing currently scheduled 11/28/2018 is ADJOURNED to 12/18/2018 at 11:00 AM, before the Hon. William M. Skretny.FURTHER, the parties are advised that this is the final adjournment in this matter.SO ORDERED. Issued by United States District Judge William M. Skretny on 11/27/2018.(JCM) (Entered: 11/27/2018) |
| 11/28/2018 | 48 | TEXT ORDER as to Kenneth Cassidy GRANTING 45 Defendant's Motion to Seal. Issued by United States District Judge William M. Skretny on 11/27/2018.(JCM)-CLERK TO FOLLOW UP- (Entered: 11/28/2018) |
| 11/29/2018 | 49 | Sealed Document as to Kenneth Cassidy. (KM) (Entered: 11/29/2018) |
| 12/17/2018 | 51 | Sealed Document as to Kenneth Cassidy. (KM) (Entered: 12/18/2018) |
| 12/18/2018 | 50 | Minute Entry for proceedings held before William M. Skretny, United States District Judge. Sentencing held on 12/18/2018 for Kenneth Cassidy on Two Count Superseding Information. The Court accepts the plea agreement/guilty plea (11(c)(1)(C)). Presentence report to be sealed - will be made available to counsel for appeal purposes only. The probation department's recommendation section which is a part of said presentence report will be kept under separate seal and will not be accessible to counsel. Court grants the government's application for an additional 1-level departure for acceptance of responsibility pursuant to USSG § 3E1.1(b) and the government's motion for a downward departure of 3 levels pursuant to USSG § 5K1.1 and 18 U.S.C. § 3553(e). Total Offense Level: 19. Criminal History Category V. The Defendant is sentenced to the custody of the BOP for a term of 60 months on Count 1 and 12 months on Count 2 to run concurrent. Upon release from imprisonment the defendant is placed on supervised release for a term of 3 years on Count 1 and 1 year on Count 2 to run concurrent. While on supervised release the defendant shall abide by the following conditions: The defendant shall abide by the standard conditions of supervised release as promulgated in the WDNY. The defendant shall not commit any crimes, federal, state or local. The defendant shall be prohibited from possessing a firearm or other dangerous device. The defendant shall not possess a controlled substance. The defendant shall complete a drug/alcohol evaluation and enter into treatment as directed by the probation office. The defendant is not to leave treatment until discharge is agreed to by the probation office and the treating agency. Mandatory drug testing imposed. Search condition imposed. Defendant shall cooperate in the collection of a DNA sample as required by the Justice For All Act of 2004. The defendant shall make restitution in the amount of $2,649,169.17 to Lowes. Restitution is due immediately. Interest on the restitution is waived. Payments to be made pursuant to UNICOR designation while incarcerated. While on supervision, the defendant shall make monthly payments at the rate of 10% of monthly gross income. Financial disclosure and restrictions imposed. The defendant shall participate in a program for gambling addiction, including an evaluation and any treatment by the evaluation - details to be supervised by probation. The defendant shall refrain from participating in any gambling functions/activities. If residing in the Southern District of New York, the defendant shall complete self-exclusion forms for any casinos in that jurisdiction. The defendant shall not enter Lowes, Home Depot, Enterprise Rent- |

A-Car, or any other business establishment that has applications that can be filed for escrowed business accounts. The defendant is prohibited from any self-employment. No fines, fees or costs imposed. The defendant shall pay a SPA in the amount of $100.00 on Count 1 and $25.00 on Count 2, due immediately. All parties are in agreement that the currency previously seized from the defendant by law enforcement should turned over and applied as credit to the restitution. The Court recommends that the defendant participate in the RDAP Program while incarcerated. In the event that there is a change in policy or procedure to allow for the serving of the defendant's last year of incarceration in a halfway house setting, the Court will recommend that defendant be considered for inclusion. The Court imposes sentence as stated. Government moves for dismissal of the indictment. Court directs preparation of judgment of conviction. Defendant remanded. For the govt. - Aaron Mango For the deft. - Barry Covert. For prob. - Susan Murray. (Court Reporter Jane Kellogg - FTR.) (MEAL) (Entered: 12/18/2018)

| | | |
|---|---|---|
| 12/20/2018 | 52 | JUDGMENT as to Kenneth Cassidy (1), Additional certified copies forwarded to USPO, USM, US Attorney, Debt Collection, Financial Department. Signed by Hon. William M. Skretny on 12/20/2018. (KM) (Entered: 12/26/2018) |
| 12/20/2018 | 53 | Sealed Document (Statement of Reasons) as to Kenneth Cassidy. (KM) (Entered: 12/26/2018) |
| 04/10/2020 | 54 | NOTICE OF ATTORNEY APPEARANCE: Jeffrey T. Bagley appearing for Kenneth Cassidy (Bagley, Jeffrey) (Entered: 04/10/2020) |
| 04/10/2020 | 55 | MOTION to Reduce Sentence by Kenneth Cassidy. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Bagley, Jeffrey) (Entered: 04/10/2020) |
| 04/14/2020 | 56 | SCHEDULING NOTICE on Defendant's 55 Motion to Reduce Sentence. Government's Response due by 4/17/2020. Defendant's Reply due by 4/20/20. Oral Argument will be scheduled by the Court if necessary. (JCM) (Entered: 04/14/2020) |
| 04/15/2020 | 57 | RESPONSE in Opposition by USA as to Kenneth Cassidy re 55 MOTION to Reduce Sentence (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Mango, Aaron) (Entered: 04/15/2020) |
| 04/20/2020 | 58 | REPLY TO RESPONSE to Motion by Kenneth Cassidy re 55 MOTION to Reduce Sentence (Attachments: # 1 Affirmation of Karen Francati, # 2 Sampling of more than 40 release cases, # 3 BOP OSHA Complaint)(Bagley, Jeffrey) (Entered: 04/20/2020) |
| 04/21/2020 | 59 | AFFIRMATION by Kenneth Cassidy (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bagley, Jeffrey) (Entered: 04/21/2020) |
| 04/22/2020 | 60 | AFFIRMATION by Kenneth Cassidy (Attachments: # 1 United States v. Bess -- Decision and Order) (Bagley, Jeffrey) (Entered: 04/22/2020) |
| 04/24/2020 | 61 | DECISION AND ORDER as to Kenneth Cassidy. IT HEREBY IS ORDERED, that Cassidy's Motion for Release or Sentence Reduction (Docket No. 55) is DENIED without prejudice. SO ORDERED. Signed by William M. Skretny, United States District Judge on 4/24/2020.(JCM) (Entered: 04/24/2020) |
| 05/04/2020 | 62 | MOTION to Reduce Sentence by Kenneth Cassidy. (Bagley, Jeffrey) (Entered: 05/04/2020) |
| 05/04/2020 | 63 | SCHEDULING NOTICE on Defendant's 62 Motion to Reduce Sentence. The government's response is due by 5/6/2020. The defendant's reply is due by 5/7/2020. Oral Argument will be scheduled by the Court if necessary. (JCM) (Entered: 05/04/2020) |

Copyright © 2020 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# EXHIBIT C

# US District Court Criminal Docket

## U.S. District - New York Western
## (Rochester)

## 6:12cr6003

## USA v. Collier

### This case was retrieved from the court on Tuesday, May 5, 2020

**Date Filed: 01/13/2012**
Other **Related  Case: 6:13cv06576**
Docket: **Magistrate judge case number:**
**6:11mj00676**

**Class Code: CLOSED**
**Closed: yes**

| Defendants |
|---|

## Name

Rejeanne Collier(1)
[Term: 09/17/2015]

## Attorneys

Rejeanne Collier
PRO SE
ALDERSON
21263-055 FEDERAL PRISON CAMP Inmate Mail/Parcels
GLEN RAY RD. BOX A
ALDERSON, WV 24910
USA

Peter J. Pullano
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Tully Rinckey PLLC
16 West Main Street Suite 740
Rochester, NY 14614
USA
585-492-4700
Fax: 585-331-8899
Email: PJPullano@gmail.com

Steven G. Slawinski
ATTORNEY TO BE NOTICED
Federal Public Defender
28 East Main Street Suite 400
Rochester, NY 14614
USA
585-263-6201
Fax: 585-263-5871
Designation: Public Defender Appointment
Email: steven_slawinski@fd.org

## Charges

Complaints: 21:846=CD.F, 21:841A=CD.F, 18:2 - an offense
described as follows: knowingly and unlawfully
conspiring to possess with intent to distribute one
kilogram or more of heroin and attempting to
possess with intent to distribute 100 grams or more
of heroin; and knowingly and unlawfully aiding and
abetting the commission of an offense

## Disposition

| | |
|---|---|
| **Pending:** 21:846=ND.F CONSPIRACY TO DISTRIBUTE NARCOTICS(1)<br>**Offense Level (Opening): Felony** | Sentence reduced from Two Hundred Twenty-Eight (228) months to 186 months effective 11/1/15; fine of $1,700 (interest waived); $100 special assessment; supervised release upon release from imprisonment for a term of Ten (10) years; and other conditions as set forth. |

**Terminated:** none

**Case Assigned to:** Honorable Charles J. Siragusa

## U. S. Attorneys

Kevin D. Robinson
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
U.S. Attorney's Office Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
USA
716-843-5804
Fax: 716-551-3196
Email: kevin.d.robinson@usdoj.gov

Robert Marangola
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
U.S. Attorney's Office
100 State Street Room 620
Rochester, NY 14614
USA
585-263-6760
Fax: 585-263-6226
Email: robert.marangola@usdoj.gov

| Date | # | Proceeding Text |
|---|---|---|
| 11/22/2011 | 1 | COMPLAINT as to Robert Wilson (1), Rejeanne Collier (2). (CAM) [6:11-mj-00676-JWF] (Entered: 11/22/2011) |
| 11/23/2011 | 2 | Arrest Warrant Returned Executed on 11/22/2011 in case as to Rejeanne Collier. (BK) [6:11-mj-00676-JWF] (Entered: 11/23/2011) |
| 11/23/2011 | | Attorney update in case as to Robert Wilson, Rejeanne Collier. Attorney Lawrence L. Kasperek for Robert Wilson, Steven G. Slawinski for Rejeanne Collier added. (LMD) [6:11-mj-00676-JWF] (Entered: 11/30/2011) |
| 11/23/2011 | 4 | Minute Entry for proceedings held before Hon. Jonathan W. Feldman: Def. Wilson w/Donald Thompson, Esq. for Larry Kasperek, Esq.; Def. Collier w/Steven Slawinski, AFPD, Robert Marangola, AUSA and Jeffrey Mileham, USPO. Initial Appearance as to Robert Wilson, Rejeanne Collier held on 11/23/2011, Defendants advised of rights. Defendants request court appointed counsel. Court provisionally appoints Larry Kasperek as counsel for Robert Wilson subject to the approval of a financial affidavit. Court appoints the Federal Defender's Office for Rejeanne Collier. Govt. moves for detention based on risk of flight and danger.I Detention Hearing set for 12/8/2011 11:00 AM before Hon. Marian W. Payson. Time Excluded as to Robert Wilson, Rejeanne Collier from: 11/23/2011 to 12/8/2011 in the interest of justice. (digital recording.)(LMD) [6:11-mj-00676-JWF] (Entered: 11/30/2011) |
| 11/23/2011 | 5 | CJA 23 Financial Affidavit by Rejeanne Collier. (LMD) [6:11-mj-00676-JWF] (Entered: 11/30/2011) |
| 12/08/2011 | 6 | Sealed Document as to Rejeanne Collier. (CAM) [6:11-mj-00676-JWF] (Entered: 12/08/2011) |
| 12/15/2011 | 8 | Minute Entry for proceedings held before Hon. Marian W. Payson:Status Conference as to Rejeanne Collier held on 12/15/2011. Defendant makes requests to adjourn the detention hearing - request granted. Status Conference/Set PH Date/Set Detention Hearing Date: 1/3/12 @ 9:30 a.m.before Judge Feldman.Appearances: Robert Marangola, AUSA; Defendant with Steven Slawinski, AFPD(Digital Recording)(CAM) [6:11-mj-00676-JWF] (Entered: 12/27/2011) |
| 01/03/2012 | 9 | ORDER TO CONTINUE - Ends of Justice as to Rejeanne Collier Time excluded from 1/3/2012 until 2/3/2012., Status Conference reset from 1/3/2012 to 2/3/2012 09:30 AM before Hon. Jonathan W. Feldman. Signed by Hon. Jonathan W. Feldman on 1/3/2012.(LMD) [6:11-mj-00676-JWF] (Entered: 01/03/2012) |
| 01/06/2012 | | The Honorable Charles J. Siragusa assigned to case 12-CR-6003 for possible plea. (BK) [6:11-mj-00676-JWF] (Entered: 01/06/2012) |

| 01/06/2012 | | NOTICE OF HEARING as to Rejeanne Collier. Plea Agreement Hearing set for 1/13/2012 10:00 AM before Hon. Charles J. Siragusa. (KJA) Modified on 1/6/2012 (KJA). [6:11-mj-00676-JWF] (Entered: 01/06/2012) |
| --- | --- | --- |
| 01/06/2012 | | E-Filing Notification: NOTICE OF HEARING as to Rejeanne Collier amended to reflect correct time of 10:00 a.m. for Plea Hearing. (KJA) [6:11-mj-00676-JWF] (Entered: 01/06/2012) |
| 01/06/2012 | 10 | MOTION to Seal Notice of Motion by USA as to Rejeanne Collier. (Marangola, Robert) [6:11-mj-00676-JWF] (Entered: 01/06/2012) |
| 01/13/2012 | 11 | WAIVER OF INDICTMENT by Rejeanne Collier (TO) (Entered: 01/17/2012) |
| 01/13/2012 | 12 | INFORMATION as to Rejeanne Collier (2) count(s) 1. (TO) (Entered: 01/17/2012) |
| 01/13/2012 | 13 | PLEA AGREEMENT as to Rejeanne Collier (TO) (Entered: 01/17/2012) |
| 01/13/2012 | 14 | Sealed Document (TO) (Entered: 01/17/2012) |
| 01/13/2012 | 15 | Sealed Document (TO) (Entered: 01/17/2012) |
| 01/13/2012 | 16 | Sealed Document (TO) (Entered: 01/17/2012) |
| 01/13/2012 | 17 | ORDER Setting Conditions of Release. Signed by Hon. Charles J. Siragusa on 1/13/2012.(TO) (Entered: 01/17/2012) |
| 01/13/2012 | 18 | Minute Entry for proceedings held before Hon. Charles J. Siragusa: Robert Marangola appearing on behalf of government. Steven Slawinski appearing with defendant. Jillian Trahms appearing for probation. Plea Hearing as to Rejeanne Collier held on 1/13/2012. Plea entered by Rejeanne Collier (2) Guilty Count 1. Court releases defendant on conditions as set forth. Sentencing set for 4/20/2012 03:15 PM before Hon. Charles J. Siragusa. (KJA) (Entered: 01/17/2012) |
| 01/17/2012 | 19 | SENTENCING GUIDELINE ORDER as to Rejeanne Collier. Sentencing set for 4/20/2012 at 3:15 PM before Hon. Charles J. Siragusa. Signed by Hon. Charles J. Siragusa on 1/13/12. (KJA) (Entered: 01/17/2012) |
| 01/23/2012 | 20 | ORDER modifying conditions of release to curfew as to Rejeanne Collier. Signed by Hon. Charles J. Siragusa on 1/20/2012.(TO) (Entered: 01/24/2012) |
| 04/16/2012 | 21 | TEXT ORDER as to Rejeanne Collier granting government's request for adjournment. ( Sentencing set for 7/25/2012 10:00 AM before Hon. Charles J. Siragusa.). Signed by Hon. Charles J. Siragusa on 4/16/12.(KAP) (Entered: 04/16/2012) |
| 04/16/2012 | | Terminate Deadlines and Hearings as to Rejeanne Collier: (KAP) (Entered: 04/16/2012) |
| 07/03/2012 | | NOTICE OF HEARING as to Rejeanne Collier Status Conference for violation set for 7/10/2012 03:30 PM before Hon. Charles J. Siragusa. (KAP) (Entered: 07/03/2012) |
| 07/03/2012 | 23 | MOTION to Revoke Government's Motion to Revoke Defendant's Release Order by USA as to Rejeanne Collier. (Marangola, Robert) (Entered: 07/03/2012) |
| 07/03/2012 | | Arrest of Rejeanne Collier (LMD) (Entered: 07/05/2012) |
| 07/03/2012 | 24 | Minute Entry for proceedings held before Hon. Jonathan W. Feldman: Appearances: Def. w/Steve Slawinski, Esq.; Robert Marangola, AUSA. Initial Appearance on violation of pretrial release as to Rejeanne Collier held on 7/3/2012. Govt. moves to revoke bail. Written motion to be filed by close of business today. Adjourned to 7/10/2012 at 3:30 PM before Judge Siragusa. (digital recording.)(LMD) (Entered: 07/05/2012) |
| 07/10/2012 | 25 | Minute Entry for proceedings held before Hon. Charles J. Siragusa: Jennifer Noto appearing on behalf of government. Steven Slawinski appearing with defendant. Nathan Bradley appearing for probation. Status Conference re violation of pre-trial release as to Rejeanne Collier held on 7/10/2012. Court grants 23 Government's Motion to Revoke Defendant's Release Order. Defendant to remain in custody. (Court Reporter Karen Bush.)(KJA) (Entered: 07/12/2012) |
| 07/17/2012 | 26 | TEXT ORDER as to Rejeanne Collier granting defendant's request for adjournment. Sentencing set for 8/27/2012 10:45 AM before Hon. Charles J. Siragusa. Copy of text order forwarded to U.S. Probation Office. Signed by Hon. Charles J. Siragusa on 7/13/12.(KJA) (Entered: 07/17/2012) |
| 08/15/2012 | 27 | TEXT ORDER as to Rejeanne Collier granting defendant's request for adjournment. Sentencing set for 10/15/2012 04:00 PM before Hon. Charles J. Siragusa. Copy of text order forwarded to U.S. Probation Office. Signed by Hon. Charles J. Siragusa on 8/14/12.(KJA) (Entered: 08/15/2012) |
| 08/21/2012 | 28 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Rejeanne Collier (Marangola, Robert) (Entered: 08/21/2012) |
| 08/21/2012 | 29 | MOTION for Downward Departure Government's Motion for Downward Departure by USA as to Rejeanne Collier. (Marangola, Robert) (Entered: 08/21/2012) |
| 08/22/2012 | 30 | TEXT ORDER as to Rejeanne Collier granting government's request for adjournment. Sentencing reset for 9/11/2012 03:00 PM before Hon. Charles J. Siragusa. Copy of text order forwarded to U.S. Probation Office. Signed by Hon. Charles J. Siragusa on 8/21/12.(KJA) (Entered: 08/22/2012) |

| 09/05/2012 | 31 | TEXT ORDER as to Rejeanne Collier adjourning Sentencing pursuant to defendant's letter request for new counsel. Status Conference set for 9/11/2012 03:00 PM before Hon. Charles J. Siragusa. Sentencing to be rescheduled at Status Conference. Signed by Hon. Charles J. Siragusa on 9/5/12. (KJA) (Entered: 09/05/2012) |
|---|---|---|
| 09/11/2012 | 32 | Minute Entry for proceedings held before Hon. Charles J. Siragusa: Robert Marangola appearing on behalf of government. Steven Slawinski appearing with defendant. Status Conference as to Rejeanne Collier held on 9/11/2012. Defendant requests assignment of new counsel. Court denies. Sentencing set for 10/12/2012 02:00 PM before Hon. Charles J. Siragusa. (Court Reporter Karen Bush.)(KJA) (Entered: 09/12/2012) |
| 10/12/2012 | 34 | Minute Entry for proceedings held before Hon. Charles J. Siragusa: Robert Marangola appearing on behalf of government. Steven Slawinski appearing with defendant. Sarah Whitcomb appearing for probation. Sentencing held on 10/12/2012 for Rejeanne Collier (2), Count 1. Defendant is sentenced to the custody of the Bureau of Prisons for a term of Two Hundred Twenty-Eight (228) months (cost of incarceration fee waived); fine of $1,700 (interest waived); $100 special assessment; supervised release upon release from imprisonment for a term of Ten (10) years; and other conditions as set forth. Complaint dismissed. (Court Reporter Karen Bush.)(KJA) (Entered: 10/16/2012) |
| 10/15/2012 | 33 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Rejeanne Collier (TO) (Entered: 10/16/2012) |
| 10/18/2012 | 35 | JUDGMENT as to Rejeanne Collier (2), Count(s) 1, Defendant is sentenced to the custody of the Bureau of Prisons for a term of Two Hundred Twenty-Eight (228) months (cost of incarceration fee waived); fine of $1,700 (interest waived); $100 special assessment; supervised release upon release from imprisonment for a term of Ten (10) years; and other conditions as set forth.. Additional certified copies forwarded to USPO, USM, US Attorney, Debt Collection, Financial Department.. Signed by Hon. Charles J. Siragusa on 10/16/2012.(TO) (Entered: 10/18/2012) |
| 10/29/2012 | 36 | NOTICE OF APPEAL 35 Judgment. (FPD appointment, no fee required) (TA) (Entered: 10/29/2012) |
| 11/01/2012 | 37 | CLERKS CERTIFICATE/INDEX as to Rejeanne Collier filed and electronically sent to Court of Appeals (Attachments: # 1 Index)(TA) (Entered: 11/01/2012) |
| 12/06/2012 | 38 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rejeanne Collier held on 10/12/2012 before Judge Charles J. Siragusa. Court Reporter/Transcriber Karen Bush, Telephone number 585-613-4312. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/27/2012. Redacted Transcript Deadline set for 1/7/2013. Release of Transcript Restriction set for 3/6/2013. (TA) (Entered: 12/07/2012) |
| 12/06/2012 | 39 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Rejeanne Collier held on 1/13/2012 before Judge Charles J. Siragusa. Court Reporter/Transcriber Karen Bush, Telephone number 585-613-4312. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/27/2012. Redacted Transcript Deadline set for 1/7/2013. Release of Transcript Restriction set for 3/6/2013. (TA) (Entered: 12/07/2012) |
| 09/25/2013 | 40 | MANDATE of USCA (certified copy) as to Rejeanne Collier re 37 Clerks Certificate, 36 Notice of Appeal (TA) (Entered: 09/25/2013) |
| 10/21/2013 | 41 | MOTION to Reduce Sentence by Rejeanne Collier. (TA) (Entered: 10/22/2013) |
| 10/21/2013 | 42 | MOTION for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense 18 USC 3582 for Rejeanne Collier (2) re Count 1 filed by Rejeanne Collier. (TA) (Entered: 10/22/2013) |
| 10/21/2013 | 43 | MOTION to Vacate under 28 U.S.C. 2255 by Rejeanne Collier. (TA) Civil case 6:13-cv-06576 opened. (Entered: 10/22/2013) |
| 10/30/2013 | 44 | ORDER as to Rejeanne Collier re 43 MOTION to Vacate under 28 U.S.C. 2255 filed by Rejeanne Collier, (Answer/Response with memo of law due by 12/11/2013). Signed by Hon. Charles J. Siragusa on 10/28/13.(TA) (Entered: 10/30/2013) |
| 11/05/2013 | 45 | EXHIBIT by Rejeanne Collier in support of 43 MOTION to Vacate under 28 U.S.C. 2255 (TA) (Entered: 11/06/2013) |
| 11/06/2013 | 46 | ORDER denying 42 Motion to Reduce Sentence re Crack Cocaine Offense - 18:3582 for Rejeanne Collier. Signed by Hon. Charles J. Siragusa on 11/4/2013.(TA) (Entered: 11/07/2013) |
| 11/18/2013 | 47 | MOTION to Dismiss Government's Motion to Dismiss the Petitioner's Motion Pursuant to 28 U.S.C. § 2255 by USA as to Rejeanne Collier. (Attachments: # 1 Exhibit 1-3)(Marangola, Robert) (Entered: 11/18/2013) |
| 12/17/2013 | 48 | ORDER denying 41 Motion to Reduce Sentence as to Rejeanne Collier (2); denying 43 Motion to Vacate (2255) as to Rejeanne Collier (2). Signed by Hon. Charles J. Siragusa on 12/16/13.(TA) Civil Case 6:13-cv-06576-CJS closed. (Entered: 12/17/2013) |

| | | |
|---|---|---|
| 12/30/2013 | 49 | MOTION FOR AN EXTENSION OF TIME AND NOTICE OF APPEAL as to 48 Order on Motion to Reduce Sentence, Order on Motion to Vacate (2255)(Fee due) (TA) (Entered: 12/30/2013) |
| 01/10/2014 | 50 | DECISION AND ORDER as to Rejeanne Collier denying defendant's motion for extension of time to appeal re 49 Notice of Appeal filed by Rejeanne Collier. Signed by Hon. Charles J. Siragusa on 1/9/14.(KAP) (Entered: 01/10/2014) |
| 02/11/2014 | 51 | LETTER ORDER as to Rejeanne Collier denying defendant's request to revise decision. Court has attached copies of defendant's letter and attachments to this order. Signed by Hon. Charles J. Siragusa on 2/11/14.(KAP) (Entered: 02/11/2014) |
| 08/05/2014 | 52 | MANDATE of USCA (certified copy) as to Rejeanne Collier re 49 Notice of Appeal; ORDERED that the appeal from the denial of the Federal Rule of Criminal Procedure 35(b) motion is DISMISSED for lack of jurisdiction; Accordingly, Appellants IFP motion is DENIED as moot. (TA) (Entered: 08/05/2014) |
| 06/04/2015 | 53 | NOTICE OF ATTORNEY APPEARANCE: Peter J. Pullano appearing for Rejeanne Collier (Pullano, Peter) (Entered: 06/04/2015) |
| 06/04/2015 | 54 | MOTION to Reduce Sentence - USSC Amendment by Rejeanne Collier. (Attachments: # 1 Certificate of Service Peter J. Pullano, Esq.)(Pullano, Peter) Modified on 6/7/2015 (LB). (Entered: 06/04/2015) |
| 06/05/2015 | | E-Filing Notification re 54 MOTION: Incorrect event used to electronically file document. For future reference, use Motion to Reduce Sentence - USSC Amendment event. No action required, court will correct entry description. (LB) (Entered: 06/07/2015) |
| 06/05/2015 | 55 | USSC TEXT ORDER as to Rejeanne Collier. The defendant has filed a Motion to Reduce Sentence under 18 U.S.C. Section 3582(c)(2).IT IS HEREBY ORDERED, that pursuant to the District Procedures for Retroactive Application of the 2014 Drug Guidelines Amendment, the United States Probation Office for the Western District of New York shall distribute an Abbreviated Supplemental Pre-Sentence Report to the Court, the United States Attorney's Office, and the Federal Public Defender's Office within 30 days of the entry date of the defendant's motion.FURTHER, that the United States Attorney's Office shall file a response to the defendant's motion within 30 days of its receipt of the Abbreviated Supplemental Pre-Sentence Report, either in opposition to the motion or indicating that it does not oppose the motion.FURTHER, that if the United States Attorney's Office files a submission in opposition to the defendant's motion, the Federal Public Defender's Office may file a reply within 30 days of the entry date of the United States Attorney's Office's submission.FURTHER, that oral argument will be scheduled by the court, if necessary, by separate order.SO ORDERED. Signed by Hon. Charles J. Siragusa on 6/5/2015. (LB) (Entered: 06/07/2015) |
| 07/16/2015 | 56 | TEXT ORDER as to Rejeanne Collier re 54 MOTION to Reduce Sentence - USSC Amendment filed by Rejeanne Collier granting government's request for extension of time. ( Responses due by 7/28/2015.). Signed by Hon. Charles J. Siragusa on 7/16/15.(KAP) (Entered: 07/16/2015) |
| 07/28/2015 | 57 | RESPONSE to Motion by USA as to Rejeanne Collier re 54 MOTION to Reduce Sentence - USSC Amendment Government's Opposition to Motion Pursuant to 18 U.S.C. § 3582(c)(2) (Attachments: # 1 Exhibit A-C)(Marangola, Robert) (Entered: 07/28/2015) |
| 09/14/2015 | 58 | ORDER REDUCING SENTENCE - USSC Amendment as to Rejeanne Collier (2), Count(s) 1, Sentence reduced from Two Hundred Twenty-Eight (228) months to 186 months effective 11/1/15; fine of $1,700 (interest waived); $100 special assessment; supervised release upon release from imprisonment for a term of Ten (10) years; and other conditions as set forth.. Signed by Hon. Charles J. Siragusa on 9/14/15. (TF) (Entered: 09/17/2015) |
| 01/13/2016 | 59 | MOTION GOVERNMENT'S MOTION TO AUTHORIZE PAYMENT FROM INMATE TRUST ACCOUNT by USA as to Rejeanne Collier. (Attachments: # 1 Certificate of Service)(Robinson, Kevin) (Entered: 01/13/2016) |
| 01/14/2016 | 60 | ORDER granting 59 Motion authorizing payment as to Rejeanne Collier (2). Signed by Hon. Charles J. Siragusa on 1/14/16.(KAP) (Entered: 01/14/2016) |
| 02/26/2016 | 61 | SATISFACTION OF JUDGMENT as to Rejeanne Collier by USA (Robinson, Kevin) (Entered: 02/26/2016) |
| 09/25/2017 | 62 | MOTION to Reduce Sentence - USSC Amendment by Rejeanne Collier (Attachments: # 1 envelope) (TF) (Entered: 09/28/2017) |
| 10/30/2017 | 63 | ORDER denying 62 Motion to Reduce Sentence - USSC Amendment as to Rejeanne Collier (1). Signed by Hon. Charles J. Siragusa on 10/31/17. (TF) (Entered: 11/01/2017) |
| 11/01/2017 | | Copy of 63 order mailed to Collier (TF) (Entered: 11/01/2017) |
| 04/16/2020 | 64 | MOTION to Reduce Sentence PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE) by Rejeanne Collier. (Slawinski, Steven) (Entered: 04/16/2020) |
| 04/17/2020 | 65 | TEXT ORDER as to Rejeanne Collier re 64 MOTION to Reduce Sentence PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE) filed by Rejeanne Collier, ( Responses due by 4/24/2020.) 04/17/2020view779 An application for compassionate release having been made by Defendant, Rejeanne Collier, ECF #64, the Court directs the Government and the United States |

Probation to respond on or before 4/24/2020.The United States Probation Department shall also include in its response to the Court information regarding the status of Covid-19 at Defendants facility, as well as any other relevant information provided the Bureau of Prisons. The Court will thereafter render a formal written decision or text order.SO ORDERED.. Signed by Hon. Charles J. Siragusa on 4/17/20. Copy of this NEF forwarded electronically to Roosevelt Smith, USPO.(KAP) (Entered: 04/17/2020). Signed by Hon. Charles J. Siragusa on 4/17/20.(KAP) (Entered: 04/17/2020)

| | | |
|---|---|---|
| 04/24/2020 | 66 | RESPONSE to Motion by USA as to Rejeanne Collier re 64 MOTION to Reduce Sentence PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE) Letter to Hon. Charles J. Siragusa re Compassionate Release dated April 24, 2020 (Marangola, Robert) (Entered: 04/24/2020) |

Copyright © 2020 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# EXHIBIT D



# Office of the Attorney General
## Washington, D. C. 20530

March 26, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU PRISONS

FROM:          THE ATTORNEY GENERAL

SUBJECT:       Prioritization of Home Confinement As Appropriate in Response to
               COVID-19 Pandemic

Thank you for your tremendous service to our nation during the present crisis.  The current situation is challenging for us all, but I have great confidence in the ability of the Bureau of Prisons (BOP) to perform its critical mission during these difficult times.  We have some of the best-run prisons in the world and I am confident in our ability to keep inmates in our prisons as safe as possible from the pandemic currently sweeping across the globe.  At the same time, there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities.  I am issuing this Memorandum to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody.

## I. TRANSFER OF INMATES TO HOME CONFINEMENT WHERE APPROPRIATE TO DECREASE THE RISKS TO THEIR HEALTH

One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances.  I am hereby directing you to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic.  Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care.  But for some eligible inmates, home confinement might be more effective in protecting their health.

In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

Memorandum from the Attorney General                                    Page 2
Subject: Prioritization of Home Confinement As Appropriate in Response to COVID-19
        Pandemic

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when BOP has determined—based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

## II.   PROTECTING THE PUBLIC

While we have an obligation to protect BOP personnel and the people in BOP custody, we also have an obligation to protect the public. That means we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways. I am therefore directing you to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process should also be subject to location monitoring services and, where a court order is entered, be subject to supervised release.

We must do the best we can to minimize the risk of COVID-19 to those in our custody, while also minimizing the risk to the public. I thank you for your service to the country and assistance in implementing this Memorandum.

# EXHIBIT E



**Office of the Attorney General**
**Washington, D. C. 20530**

April 3, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU OF PRISONS

FROM:         THE ATTORNEY GENERAL

SUBJECT:    <u>Increasing Use of Home Confinement at Institutions Most Affected by</u>
<u>COVID-19</u>

The mission of BOP is to administer the lawful punishments that our justice system imposes. Executing that mission imposes on us a profound obligation to protect the health and safety of all inmates.

Last week, I directed the Bureau of Prisons to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates, while ensuring we successfully discharge our duty to protect the public. I applaud the substantial steps you have already taken on that front with respect to the vulnerable inmates who qualified for home confinement under the pre-CARES Act standards.

As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions. I would like you to give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards. In addition, the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities, consistent with the guidance below.

I.    <u>**IMMEDIATELY MAXIMIZE APPROPRIATE TRANSFERS TO HOME**</u>
<u>**CONFINEMENT OF ALL APPROPRIATE INMATES HELD AT FCI OAKDALE,**</u>
<u>**FCI DANBURY, FCI ELKTON, AND AT OTHER SIMILARLY SITUATED BOP**</u>
<u>**FACILITIES WHERE COVID-19 IS MATERIALLY AFFECTING OPERATIONS**</u>

While BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions. I am therefore directing you to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations. You should begin implementing this directive immediately at the facilities I have specifically identified and any other facilities facing similarly serious problems. And now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer.

For all inmates whom you deem suitable candidates for home confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred. It is vital that we not inadvertently contribute to the spread of COVID-19 by transferring inmates from our facilities. Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations.

I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.

Given the speed with which this disease has spread through the general public, it is clear that time is of the essence. Please implement this Memorandum as quickly as possible and keep me closely apprised of your progress.

## II.     PROTECTING THE PUBLIC

While we have a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public. That means we cannot simply release prison populations en masse onto the streets. Doing so would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses.

That risk is particularly acute as we combat the current pandemic. Police forces are facing the same daunting challenges in protecting the public that we face in protecting our inmates. It is impossible to engage in social distancing, hand washing, and other recommend steps in the middle of arresting a violent criminal. It is thus no surprise that many of our police officers have fallen ill with COVID-19, with some even dying in the line of duty from the disease. This pandemic has dramatically increased the already substantial risks facing the men and women who keep us safe, at the same time that it has winnowed their ranks while officers recover from getting sick, or self-quarantine to avoid possibly spreading the disease.

The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates. Thus, while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context.

I believe strongly that we should do everything we can to protect the inmates in our care, but that we must do so in a careful and individualized way that remains faithful to our duty to protect the public and the law enforcement officers who protect us all.

# EXHIBIT F

# COVID-19 Motions for Compassionate Release
## CLOSED CASES

| Last Name | First Name | Docket Number | AUSA | BOP Facility | Ruling/Order/Updates | Citation |
|---|---|---|---|---|---|---|
| Abarientos | Crispin | 3:19-cr-171-VLB | Lauren Clark | FMC Devens | Denied without prejudice 4/21/2020 | United States v. Crispin, No. 3:19-CR-171 (VLB), Doc. 56 (D. Conn. Apr. 21, 2020) (denying motion for compassionate release |
| Almontes | Rafael | 3:05-cr-58-SRU | Hal Chen | FCI Danbury | Motion granted on 4/9/2020 | United States v. Almontes, No. 3:05-CR-58 (SRU), 2020 WL 1812713 (D. Conn. Apr. 9, 2020) (granting motion for compassionate release |
| Ardila | Jorge Orlando | 3:03-cr-264-SRU | Peter Markle | Moshannan Valley Correctional Center | Motion GRANTED 5/1/2020 | |
| Bellamy | Takai Quntay | 3:19-cr-123-JAM | Jocelyn Kaoutzanis | Not in BOP custody | Motion DENIED without prejudice | United States v. Rubiera-Herrera et al, No. 3:19-CR-123 (JAM), Doc. 446 (D. Conn. Apr. 22, 2020) (denying motion for compassionate release |
| Brady | Kelly | 3:20-cv-510-MPS | Heather Cherry | FCI Danbury | Denied w/o prejudice 4/20/2020 | Brady v. Warden et al, No. 3:20-CV-510 (MPS), Doc. 7 (D. Conn. Apr. 20, 2020) (denying motion for compassionate release |
| Brito | Jonathan | 3:18-cr-81-SRU | Gordon Hall | MDC Brooklyn | Motion Granted | United States v. Filyaw et al., No. 3:18-CR-81 (SRU), Doc. 1029 (D. Conn. Apr. 6, 2020) (granting motion for compassionate release |
| Callan | Michael | 3:19-cr-140-VLB | Lauren Clark | Defendant was sentenced but has not yet reported to BOP | Motion DENIED | United States v. Callan, No. 3:19-CR-140 (VLB), 2020 WL 1969432 (D. Conn. Apr. 24, 2020) |
| Carpenter | Daniel | 3:13-cr-226-RNC | Dave Novick & Neeraj Patel | MDC Brooklyn | Original motion denied on April 2, 2020. Motion to Reconsider filed on 4/7/2020 and DENIED on 4/10/2020 | United States v. Carpenter et al., No. 3:13-CR-226 (RNC), Doc. 525 (D. Conn. Apr. 10, 2020) (denying motion for compassionate release |
| Colvin | Latrice | 3:19-cr-179-JBA | Deborah Slater | FCI Philadelphia | Following telephonic hearing on April 2, 2020, CT granted defendant's motion the same day. | United States v. Colvin, No. 3:19CR179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) |
| Coston | Antrum | 3:16-cr-127-SRU | Jennifer Laraia | FCI Danbury | Motion Granted 4/16/2020 | United States v. Coston, No. 3:16-CR-127 (SRU), Doc. 98 (D. Conn. Apr. 16, 2020) (granting motion for compassionate release |
| Cruz | Mike | 3:20-cr-48-JAM | Margaret Donovan | Wyatt | Motion DENIED 4/18/20 | |
| Delgado | Ernesto Luis | 3:18-CR-17 (VAB) | Dave Vatti | FCI Danbury | Motion GRANTED based on defendant's conditions/risk factors of obesity, obstructed sleep apnea and psoriasis | |
| Echevarria | Christian | 3:17-cr-44-MPS | Dave Vatti | FCI Allenwood | Motion GRANTED 5/4/2020 | |
| Frye | Nancy | 3:17-cr-108-VLB | Peter Jongbloed | FCI Greenville | Motion DENIED 5/2/2020 | United States v. Gagne, No. 3:18-CR-242 (VLB), 2020 WL 1640152 (D. Conn. Apr. 2, 2020) (denying motion for compassionate relief (criminal matter is now back on the Open Cases chart) |
| Gagne | Job Zils | CA2 20-1169 | David Huang | FCI Danbury | Moved to voluntarily withdraw on 5/4/20 | |
| Gileno | Paul | 3:19-cr-161-VAB | Doug Morabito | FCI Schuylkill | Motion GRANTED 4/17/2020 | |
| Gilliam | Derrick | 3:15-cr-63-JCH | Nate Gentile | USP Hazelton | Motion DENIED 4/27/2020 | United States v. Gilliam, No. 3:15-CR-63 (JCH), Doc. 119 (D. Conn. Apr. 27, 2020) (denying motion for compassionate release |
| Gomez | Garret | 3:17-cr-273-JAM | Peter Jongbloed | Halfway House | 4/2 motion DENIED on 4/3; Renewed Motion filed 4/9 was GRANTED on 4/10 after there was a positive COVID-19 test result at the halfway house | |
| Gonzalez | Alberto | 3:18-cr-315-KAD | Brian Leaming | FMC Devens | Judge DENIED it for failure to exhaust. | |
| Gonzalez | Freddie | 3:06-cr-18-AVC-4 | Natasha Freismuth | Philadelphia RRM | Defense filed Reply Memorandum 4/13/20; Government's Supplemental Response to Defendant's Motion filed 4/14/20; Motion GRANTED 4-24-2020 | United States v. Rosado et al., No. 3:06-CR-18 (AVC), Doc. 376 (D. Conn. Apr. 24, 2020) (granting motion for compassionate release |
| Gonzalez | Herson | 3:17-cr-62-JAM | Natasha Freismuth | FCI Allenwood | Motion DENIED without prejudice | United States v. Gonzalez et al., No. 3:17-CR-62 (JAM), Doc. 1011 (D. Conn. Apr. 30, 2020) (denying motion for compassionate release |
| Griffin | Joseph | 3:19-cr-91-MPS | David Huang | Wyatt | Motion DENIED on 5/4/20 by MPS | |

# COVID-19 Motions for Compassionate Release
## CLOSED CASES

| Last Name | First Name | Docket Number | AUSA | BOP Facility | Ruling/Order/Updates | Citation |
|---|---|---|---|---|---|---|
| Harris | Anthony | 3:04-cr-360-RNC | Tony Kaplan | FCI Yazoo | reduced to 260 months and his term of supervised release is reduced to six years. An amended judgment | |
| Jepsen | Anton | 3:19-cr-73-VLB | Deborah Slater | Wyatt | CT granted motion on April 1, 2020 (amended order on April 2, 2020) | United States v. Anton Jepsen, 3:19-cr-73, Dkt. 41 (D.Conn. Apr. 1) |
| Johnson | Aaron J. | 3:16-cr-24-JAM | Susan Wines | Wyatt | Judge Meyer DENIED Aaron Johnson's motion for compassionate release (without prejudice) based on the 30-day exhaustion requirement. The restitution issue was to correct the order regarding one victim. | |
| Lyon | Daniel | 3:19-cr-138-JCH | Ray Miller | Devens FMC | Motion DENIED without prejudice for failure to exhaust administrative remedies | |
| McCarthy | John J. | 3:92-cr-70-JCH (92-cr-70 case is a | | MDC Brooklyn | Granted, 4/8/2020 | United States v. McCarthy, No. 3:17-CR-0230 (JCH), 2020 WL 1698732 (D. Conn. Apr. 8, 2020) |
| Morales | Anthony | 3:19-cr-121-KAD | John Durham | Wyatt | Motion DENIED 5/1/2020 | |
| Norris | Darryck | 3:17-cr-106 (SRU) 3:18-cr-243 (SRU) | Doug Morabito | Ray Brook FCI | Granted 4/16/2020 | United States v. Norris, No. 17-cr-106 (SRU), 3:18-cr-243 (SRU) (Apr. 16, 2020) |
| Paile, III | John J. | 3:18-cr-133-SRU | Hank Kopel | Coolidge House Half-Way House | Motion Granted with Government consent 4/15/2020 | |
| Perez | Elliot | 3:12-cr-251-AWT | Rahul Kale | MDC Brooklyn | Granted 4/16/2020 | |
| Peters | Norman | 3:18-cr-188-VAB | Elena Coronado and Tony Kaplan | FCI Schuylkill | Motion GRATED 5/1/2020 | |
| Ressler | Peter | 3:17-cr-123-AVC | Kit Schmiesser | FCI Otisville | BOP is releasing Ressler to home confinement for the remainder of his sentence | |
| Rivera | Omar | 3:17-cr-159, 160 and 232-VLB | Gordon Hall | FCI Lewisburg Camp | Motion DENIED | |
| Roman | Milton | 3:06-cr-268-JBA | Hank Kopel | FCI Talladega, Alabama | Motion GRANTED 4/20/2020 | United States v. Roman, No. 3:06CR268 (JBA), 2020 WL 1915239 (D. Conn. Apr. 20, 2020) |
| Sacco | Andrew | 3:16-cr-132-MPS | David Huang | FCI Otisville | Withdrawn because BOP furloughed the defendant | |
| Sakelarakis | Christopher J. | 3:18-cr-248-JCH | Mike McGarry | FCI Danbury | Motion DENIED 4/22/2020 | United States v. Sakelarakis, No. 3:18-CR-248 (JCH), Doc. 76 (D. Conn. Apr. 22, 2020) (denying motion for compassionate release |
| Salvagno | Alexander | 5:02-cr-00051-LEK | John Larson (NDNY) | FCI Danbury | Motion GRANTED 4/23/2020 | United States v. Salvagno et al., No. 5:02-CR-51 (LEK), Doc. 1166 (N.D.N.Y. Apr. 23, 2020) (granting motion for compassionate release |
| Sandrq | Ramon | 3:18-cr-140-VLB | Brian Leaming | MDC Brooklyn | Motion GRANTED 4/22/2020 | |
| Serfass | Crystal | 3:20-cr-513-MPS | Patricia Stolfi Collins | FCI Danbury | Motion DENIED without prejudice | Serfass v. Warden, No. 3:20-CV-513 (MPS), Doc. 5 (D. Conn. Apr. 20, 2020) (denying motion for compassionate relief |
| Sherman | Christopher Lamont | 3:08-cr-4-JCH | Brendan Keefe | Wyatt | Motion DENIED without prejudice 4/30/2020 | |

Page 2

## COVID-19 Motions for Compassionate Release
### CLOSED CASES

| Last Name | First Name | Docket Number | AUSA | BOP Facility | Ruling/Order/Updates | Citation |
|---|---|---|---|---|---|---|
| Smith | Nathaniel | 3:16-cr-48-MPS | Nancy Gifford | USP Marion | Motion DENIED 4/17/2020 | United States v. Smith, No. 3:16-CR-48 (MPS), 2020 WL 1903160 (D. Conn. Apr. 17, 2020) |
| Soto | Miguel | 3:15-cr-120-VAB | Gordon Hall | Home arrest | Soto was in a half-way house awaiting disposition of a violation of supervised release, but got furloughed from there into home arrest and, when he was to go back, there were COVID positives there, so he asked the court to change his conditions to leave him on home arrest rather than return to the halfway house. The judge agreed. There is no written decision. | |
| Suarez | William Claudio | 3:19-cr-123-JAM | Jocelyn Kaoutzanis | Cheshire C.I. (State) | Motion DENIED 5/4/2020 | |
| Tyson | Marcus | 3:16-cr-174-AWT | Brian Leaming | | Motion GRANTED | |
| Vence-Small | Vanessa | 3:18-cr-31-JAM | Hal Chen | FCI Hazelton (SFF – secure female facility) | Motion DENIED 4/20/2020 | |
| Williams | Devon | 3:18-cr-321-JCH | Jennifer Laraia | FCI Talladega | Motion DENIED without prejudice | |
| Williams | Edward | 3:17-cr-121-VAB | Sarala Nagala | Fort Dix | Motion GRANTED 4/24/2020 | United States v. Williams, No. 3:17-CR-121-(VAB)-1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) |
| Williams | Paul Fitzgerald | 3:19-cr-117-JCH | Deborah Slater | Wyatt | JCH GRANTED the defendant's compassionate release motion following the April 28 telephonic hearing. Williams had an ICE detainer, which they elected not to execute on April 30. The Court held an emergency conf call that afternoon and amended the terms of supervised release, without objection, to hold the def at Wyatt until a suitable placement is determined and agreed to by the parties. | |