UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANTHE MARTINEZ-BROOKS ET AL<br><br>*Plaintiffs*,<br><br>v.<br><br>D. EASTER & MICHAEL CARVAJAL,<br><br>*Defendants*. | No. 3:20-cv-00569 (MPS) |

**ORDER**

On May 12, I issued a temporary restraining order directing the Respondent to review, on an expedited basis, all medically vulnerable inmates for home confinement eligibility under the Warden's expanded authority under the CARES Act.  ECF No. 30 at 69-73.  The Respondent has taken substantial steps toward complying with this order.  Nonetheless, more than two weeks after the Temporary Restraining Order was entered, it appears that not one inmate has actually been released to home confinement pursuant to the Order (*i.e.*, excluding those who were released as a result of the process that was occurring before the order was issued).  Consequently, with respect to those inmates that the Respondent has already determined to be eligible for home confinement, yesterday I ordered the Respondent, by June 4, either to (a) release each inmate to home confinement or (b) demonstrate that public safety or medical considerations or the absence of any home in which to place the inmate would make it unsafe to move the inmate immediately to home confinement.  ECF No. 68 at 4.  This order was intended to bring the Respondent into

compliance with the Court's May 12 TRO, which required the Warden to eliminate the categorical 14-day quarantine requirement to allow for immediate release where possible. ECF No. 30 at 71. The Petitioners urge the Court to take similar action with respect to those inmates that the Respondent has already determined to be appropriate for placement in a Residential Reentry Center ("RRC"). For the reasons that follow, I grant the Petitioners' request in part—as to those inmates the Warden has deemed appropriate for placement in a RRC who do not have either (a) a violent[1] or sexually related offense of conviction[2] or (b) a PATTERN score of "High." This ruling assumes familiarity with the procedural history of this case as well as the Court's prior rulings.

In *Mapp v. Reno*, the Second Circuit held that district courts have inherent authority to grant bail to habeas petitioners. *Mapp v. Reno*, 241F.3d 221, 226 (2d Cir. 2001) ("Today we reaffirm these cases and hold, once again, that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction."). The standard for bail pending habeas litigation, however, is "a difficult one to meet." *Id.* "The petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id.* During the course of the ongoing COVID-19 pandemic, district courts within this Circuit have relied on the authority of *Mapp* to issue bail or temporary release orders to medically vulnerable Section 2241 petitioners claiming that their continued confinement violates the Constitution. *See, e.g.*, *Basank v. Decker*,

---

[1] For purposes of this order only, I do not consider mere possession of a firearm or ammunition – whether as a convicted felon, in connection with a drug trafficking offense, or based on some other unlawful capacity – to be a violent offense.

[2] By "offense of conviction," I mean the offense for which the inmate is currently incarcerated. An inmate who has a violent or sexually-related past offense is not excluded by this order unless his or her PATTERN score is "High."

2020 WL 1953847, at *13 (S.D.N.Y Apr. 23, 2020) ("Even if [ICE detainees petitioning under Section 2241] had not met the requirements for a preliminary injunction, the Court would release them on bail pending final resolution of their habeas claims under the Second Circuit's decision in *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001)."); *Ferreyra v. Decker*, 2020 WL 1989417, at *12 (same); *Coronel v. Decker*, 2020 WL 1487274, at *8-9 (S.D.N.Y. March 27, 2020) (finding that "Petitioners have raised substantial claims" and that "[r]elease is . . . necessary to make the habeas remedy effective" because "[i]f Petitioners were to remain detained, they would face a significant risk that they would contract COVID-19—the very outcome they seek to avoid.").

Here, I have already found that the Petitioners have shown a likelihood of success on their claim that the Respondent has run afoul of the Eighth Amendment by failing to make meaningful use of her home confinement and compassionate release authority.  *See* ECF No. 30 at 42-56.  For those same reasons, Petitioners have also shown that they have raised "substantial claims" under *Mapp*.

I now further find that, with respect to those medically vulnerable inmates who have already been approved for community placement, who do not have violent or sexually-related offenses of conviction, and who do not have a "High" PATTERN score, there are "extraordinary circumstances . . . that make the grant of bail necessary to make the habeas remedy effective."  It is undisputed that the medically vulnerable inmates face a grave risk of serious illness or death if they were to contract COVID-19.  ECF No. 30 at 6-7.  It is also undisputed that true social distancing—the most effective measure for preventing the spread of COVID-19—simply cannot be implemented at a facility, like FCI Danbury, where inmates live communally and sleep in large dormitory halls that house as many as 140 inmates.  *Id.* at 6-7, 44.  FCI Danbury was specifically identified as one of three federal prisons exhibiting "significant levels of infection"

by the Attorney General. ECF No. 24-2 at 48. Thus far, one inmate at FCI Danbury has died as a result of contracting COVID-19, and multiple inmates have been hospitalized. *Id.* at 7.

The habeas remedy the Petitioners seek is for the Warden to pursue all reasonable measures, including the use of her expanded home confinement authority under the CARES Act, to remove them from FCI Danbury and thereby protect them from contracting COVID-19—a potentially fatal illness. The effectiveness of this remedy depends upon these inmates remaining infection-free. Yet every day that these medically vulnerable inmates spend incarcerated at FCI Danbury increases their chances of contracting COVID-19. This is the very outcome that Petitioners seek to avoid, and one that would render their requested relief entirely ineffective.

The Respondent has designated the inmates in question for placement in an RRC. Many of these placements, however, are not scheduled to occur for several months. *See* ECF No. 66 (listing RRC dates ranging from June 2020 through April 2021). Counsel for the Respondent indicated during the May 28 conference that Respondent is attempting to accelerate some of these placements, but it remains unclear when placement will actually occur. Furthermore, it seems unlikely that social distancing can be adequately observed at a half-way house, where communal living is, again, the norm. As a result, the extent to which RRCs actually present a safer environment for medically vulnerable inmates is unclear. Thus, the inmates' pending placement at an RRC does not render bail unnecessary to make the habeas remedy effective.

Importantly, with respect to the medically vulnerable inmates that are the subject of this order, the Respondent has *already* determined that these inmates—who have generally served the vast majority of their sentences—are appropriate for some form of community placement, *i.e.*, that they are suitable to leave the prison environment in the coming months. The fact that the Respondent has already conducted these individualized determinations in approving these

inmates for community placement, presumably taking into account both public safety and penological objectives, addresses any concern that the need for individualized consideration makes granting bail under *Mapp* on a multi-party basis inappropriate under *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974).  *See generally* ECF No. 30 at 62-66 (discussing the application of *Preiser* to the present action).

The Respondent chiefly argues that release to home confinement is inappropriate because it does not allow for the level of supervision that an inmate would receive at a half-way house.  I address this concern in part by excluding from this order those inmates designated for RRC placement who are the most in need of close supervision to protect the public, *i.e.*, those who are currently incarcerated for violent or sexually-related offenses and those who have PATTERN scores of "High," which reportedly reflects a high likelihood of recidivism.[3]  This order thus only applies to those inmates listed on the spreadsheet filed as ECF No. 66—and any others designated for RRC placement since the spreadsheet was filed on May 27, 2020—who have been designated for RRC placement but do not have violent or sexually-related offenses of conviction and do not have PATTERN scores of "High."

I also note that inmates on home confinement are not without supervision.  They remain in the custody of the BOP and can be supervised by either an RRC or the United States Probation System.  *See, e.g.*, 18 U.S.C. § 3624(c)(2) (classifying home confinement as "prelease custody"); *id.* § 3624(c)(3) (directing Probation to provide assistance to prisoners in "prerelease custody"). Inmates on home confinement can also be placed on electronic monitoring.  *See*

---

[3] Of course, as to those inmates, I encourage the Respondent to continue to make efforts to accelerate their assignments to RRCs—in the hope that the particular RRC to which they might be assigned would present a somewhat lower risk of infection than does the environment of FCI Danbury.

https://www.bop.gov/about/statistics/docs/program_fact_sheet_201907.pdf (last visited on May 29, 2020).  While there is some degree of additional supervision at an RRC, I cannot conclude that this factor outweighs the medical considerations that make release to home confinement necessary to make the habeas remedy effective for those inmates to whom this order applies.

I thus find that, as to the inmates to whom this order applies, extraordinary circumstances, including the substantial risk to the health of these medically vulnerable inmates and the prevalence of COVID-19 at FCI Danbury (described in my earlier ruling, ECF No. 30 at 7, 13), make bail necessary to make the habeas remedy effective.  Accordingly, I order as follows: By **June 9**, with respect to each medically vulnerable inmate who has been approved for community placement at an RRC and who does not have a violent offense of conviction, a sexually-related offense of conviction, or a "High" PATTERN score, the Warden shall either (a) release the inmate to home confinement or (b) demonstrate that public safety or medical considerations or the absence of any home in which to place the inmate would make it unsafe to move the inmate immediately to home confinement.  The fact that a greater degree of supervision will be available at an RRC will not, by itself, be deemed sufficient to demonstrate that it is unsafe to move the inmate to home confinement, as the Court has already addressed this argument.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         May 29, 2020