UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANTHE MARTINEZ-BROOKS, REJEANNE COLLIER, and JACKIE MADORE, Individually, and on behalf of all others similarly situated, | : : : : : : |
| Petitioners, | : : |
| v. | :     No. 3:20-cv-569 (MPS) |
| D. EASTER, Warden of Federal Correctional Institute at Danbury, | : : : : |
| Respondent. | :     June 8, 2020 |

**PETITIONERS' MOTION FOR SANCTIONS
AND SUPPORTING MEMORANDUM OF LAW**

One of the basic tenets of litigating fairly is that parties preserve relevant evidence. Violation of this norm is so contrary to our judicial system that it permits district courts -- pursuant to their inherent power to oversee the judicial process -- to employ a variety of sanctions against the violating party when appropriate. That is the case here. Respondent has an ongoing obligation to keep medical records, which include requests for medical care, and she was clearly on notice of her duty to preserve all medical records by the time this action was filed. Despite her ongoing obligation and being on notice of the relevance of all medical records in this case, Respondent's practice *up until last week* was to *destroy* requests for medical care (called "sick call" requests). Petitioners respectfully move this Court for sanctions. Specifically, for the reasons stated below and based on the evidence in this case, Petitioners move for entry of an Order precluding Respondent from disputing that FCI Danbury's system for responding to sick calls requests was inadequate and untimely to provide proper medical care to inmates.

1

I. **Factual and Procedural Background**

Petitioners filed the instant action for habeas corpus relief pursuant to 28 U.S.C. § 2241 on April 27, 2020. ECF No. 1. In their petition, Petitioners expressly allege significant delays and other deficiencies with FCI Danbury's system for responding to prisoners' requests for medical care and, specifically, allege deficiencies in FCI Danbury's system to responding to "sick call requests" from prisoners. *See* ECF No. 1 at ¶ 36.e. (describing sick call system at FSL), ¶ 37.d. (same for Camp), ¶ 38.f. (same for FCI, or men's facility), ¶ 129 (alleging that "[s]ince the lockdown began, sick call triage in the men's facility is conducted by a social worker without medical training, and who is openly contemptuous of the men's need"), ¶ 130 ("At men's and women's facilities, prisoners who present for sick call who do not exhibit fever are denied access to any further medical follow-up"), ¶ 188 ("As a result of the increased attention to the COVID epidemic, non-virus medical needs have gone unattended. The regular prison physicians have been absent or are no longer available to prisoners on the unit, prisoners who do not present with fever during sick call cannot be referred to a physician, and sick call requests for other than virus symptoms go unanswered for prolonged periods of time").

On May 18, 2020, Petitioners served interrogatories and requests for production on Respondent. *See* Exhibit A, attached hereto (Petitioners' Requests for Production); Exhibit B (Petitioners' Interrogatories). Through Request for Production Number 7, Petitioners specifically requested "[a]ll documents concerning sick call requests or other requests made by prisoners for medical care for COVID-19 symptoms since March 1, 2020, and FCI Danbury's responses to these requests, including but not limited to the date(s) of such responses, who examined the prisoner, what (if any) treatment was provided, and the date(s)the treatment was provided." Exh. A at 7. Further, Petitioners' Interrogatory Number 8 asked Respondent to "[s]tate the number of

sick call and other requests for medical care made from prisoners at each of the three facilities (Main Complex, FSL, and Camp) since March 1, 2020 and state, for each facility, for each day since March 1, 2020, the number of prisoners who were seen respectively by a physician, a physician's assistant, or a nurse." Exh. B at 8.

Respondent did not produce sick call requests in response to Petitioners' request for production or provide the specific answers, as requested in the interrogatory, regarding the number of sick call requests *made* since March 1, 2020.[1]  Petitioners' counsel raised these deficiencies with Respondent's counsel, who on or around May 29, 2020 informed Petitioners' counsel via telephone that Respondent had failed to preserve paper sick call requests because the facility's practice was to not retain them. Respondent's counsel indicated that the sick call requests would be retained going forward.

On June 3, 2020, Petitioners' counsel deposed Ms. Angela Dukate, the Health Services Administrator at FCI Danbury, both as a fact witness and as the 30(b)(6) witness on FCI Danbury's medical response to the COVID-19. *See* Exhibit C (Excerpt of 06/03/20 Dukate Transcript) at 21-29. Ms. Dukate testified that FCI Danbury had destroyed all sick call requests submitted prior to May 29, 2020.  When asked why the facility had failed to preserve these records, Ms. Dukate asserted that she considers the sick call requests *not* medical records because they are, in her view, "informal" and "nothing official." *Id.* at 22-23. Ms. Dukate admitted that FCI Danbury continued to destroy sick calls requests after April 27, 2020, the date in which this action was initiated, and up until either June 1st or 2nd, weeks after Petitioners had requested sick call requests from Respondent through discovery. *See id.* at 29.

---

[1] In response to Petitioners' Interrogatory Number 8, Respondent provided the number of prisoners who were treated for sick calls, but did not respond to Petitioners' requests for the number of sick call requests *made*. Without the number of sick call requests made, Petitioners are not able to show how many sick calls were ignored and how many prisoners were not seen in response to such requests.

Respondent has now produced sick call requests submitted in June 2020.[2] Contrary to Ms. Dukate's testimony, the requests are on a medical form, contain medical information from the inmate-patient and the health care provider, and reflect the date the request was submitted and the date that the inmate was subsequently seen. They are plainly records that form a part of each inmate's medical records.[3]

Not only did the pleadings and discovery requests in this case put Respondent on notice of her obligation to preserve sick call requests, the Bureau of Prisons independently has the responsibility to preserve medical records such as requests for medical care. The National Commission on Correctional Health Care (NCCHC), which accredits some BOP facilities, sets forth that "[w]ithout documentation of these steps, it is not possible to evaluate the responsiveness of your sick-call system, and if you are seeking accreditation, to determine if you are in compliance. Request slips are usually filed in the health records and begin the documentation trail. If you do not file the slips in the record, a log may be kept to monitor the stages of the response. The log needs to include the request date, date and result of triage, date of the sick-call visit if required, etc."[4] The NCCHC further recommends that jails and prisons maintain documentation of compliance for three years.[5]

Finally, but importantly, the Bureau of Prisons was put on notice of the relevance of sick call requests to COVID-19 litigation in another case relating to the Metropolitan Detention Center (MDC) in Brooklyn, New York. That suit, alleging deficiencies in the sick call system, was filed on March 27, 2020,[6] and by May 1, 2020 the media had publicized the destruction of

---

[2] Respondent has provided a few sick call requests dated prior to June 2020 that were not, for some unknown reason, destroyed.
[3] Attached, as Exhibit D, is a (redacted) sick call request form (for June 1, 2020) produced by Respondent.
[4] FAQ, Documentation, National Commission on Correctional Health Care, available at: https://www.ncchc.org/documentation.
[5] *Id.*
[6] *See* ECF No. 1, *Chunn v. Edge*, 1:20-cv-01590-RPK-RLM (E.D.N.Y Mar. 27, 2020).

sick call requests.[7] The destruction of the records was the subject of extensive court filings and testimony in the MDC case.[8] In other words, for over one month after it was publicized that a federal jail was improperly destroying requests for medical care, BOP staff continued to destroy sick call requests from prisoners at FCI Danbury.

## II.     Argument

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Thomas v. Butkiewicus*, 3:13-CV-747 (JCH), 2016 WL 1718368, at *7 (D. Conn. Apr. 29, 2016) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). If there is a discovery order, a court may impose sanctions pursuant to Federal Rule of Civil Procedure 37. *Id.* However, traditionally, and absent a court order, a district court can impose sanctions on a spoliating party based on the court's inherent power to control the judicial process and litigation. *Id.* A court has broad discretion to fashion appropriate sanctions when spoliation occurs. *Id.*

Sanctions for spoliation should aim to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. *Id.* "Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation), to declare a mistrial if trial has

---

[7] Nick Pinto, *Medical Expert: Federal Jail Intentionally Destroying Medical Records and Hiding Extent of Coronavirus Behind Bars*, THE INTERCEPT (May 1, 2020), available at: https://theintercept.com/2020/05/01/mdc-brooklyn-jail-coronavirus-medical-records/.
[8] *See, e.g.,* ECF No. 86, *Chunn v. Edge*, 1:20-cv-01590-RPK-RLM (E.D.N.Y May 9, 2020); ECF No 89 (May 10, 2020).

already commenced, or to proceed with a trial and give an adverse inference instruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). An adverse inference instruction is appropriate where: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)). The "culpable state of mind" factor is "satisfied by a showing that the evidence was destroyed "knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).

      Petitioners easily meet all three prongs for the sanction sought through this motion. First, there can be no dispute that Respondent had a duty to preserve paper sick calls. Paper sick calls are an important way in which prisoners at FCI Danbury alert the facility that they have a medical problem as they constitute records of prisoners documenting their medical issues and seeking medical help. For this reason, the NCCHC provides that jails and prisons retain documentation of compliance with sick call requests for three years. Even assuming that FCI Danbury's pre-April 27 practice of destroying sick call requests was permissible (which Petitioners' dispute), Respondent had an obligation to preserve sick call requests once she reasonably anticipated litigation to which the requests were relevant. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents.") As such, Respondent's litigation duty

to preserve the sick call requests arose at the latest on April 27 when the instant action was filed. *See* ECF No. 1.

Second, Respondent has acted with the requisite culpable mind. "[O]nce the duty to preserve attaches, any destruction [of relevant evidence] is, at a minimum, negligent." *Slovin v. Target Corp.*, No. 12 CV 863 (HB), 2013 WL 840865, at *4 (S.D.N.Y. Mar. 7, 2013) (quoting *Zubulake*, 220 F.R.D. at 220). Here, however, there is evidence for finding an intentional destruction of sick calls. Respondent destroyed evidence not only contrary to applicable correctional standards and a complaint alleging deficiencies in FCI Danbury's medical care response, it did so also after receiving specific discovery requests from Petitioners seeking the requests and information about them. *Compare* Exhibits A-B (discovery requests propounded on May 18) *with* Exhibit C (Dukate deposition confirming destruction of sick call requests up until June 1 or 2).

Third, the sick call requests go to a critical issue in this case; namely, whether Respondent was deliberately indifferent in providing medical care in response to the COVID-19 pandemic's impact on the facility. Petitioners have alleged and intend to establish that, despite being aware of the importance of medical care during a pandemic that has already killed over 100,000 people in the United States, Respondent's sick call system regularly ignored or delayed in responding to prisoners' requests for medical care. Such a response not only subjects putative class members to an unreasonable risk of serious injury or death, the response during the pandemic is at the very least reckless as to the risk of serious injury or death. Indeed, other courts in this Circuit have held that prison officials' disregard of sick-call requests may be evidence of deliberate indifference. *See e.g., Aikens v. Rao*, 13-CV-1088S, 2015 WL 5919950, at *2 (W.D.N.Y. Oct. 9, 2015) (evidence of ignoring sick call requests sufficient for reasonable jury to

find that defendants acted deliberately in denying plaintiff treatment); *Myers v. Dolac*, No. 09 Civ. 6642, 2013 WL 5175588, *12 (W.D.N.Y. 2013) (ignoring or destroying sick call requests, if proved, sufficient for jury to conclude that defendant knew of plaintiff's medical condition and acted deliberately to deny plaintiff treatment).

The sanction sought here is a reasonable and appropriate one, as Petitioners are prejudiced by Respondent's spoliation. The destruction of the paper sick call requests prevents Petitioners from confirming through contemporaneous documentation the testimony of Danbury inmates of the inordinate delays between their submission of their sick call requests and the dates of response by BOP staff at FCI Danbury. Even worse, Respondent's spoliation prevents Petitioners from proving those requests for medical care that BOP staff at FCI Danbury completely ignored. Both of these forms of prejudice warrant remedial action through a Court order.[9]

Because Petitioners now are prevented from establishing through documentary evidence that requests for sick call were ignored or that there were significant delays in response to the requests for care, an appropriate sanction in this case is to preclude Respondent from disputing that the sick call system at FCI Danbury timely and adequately responds to prisoners' requests for medical care at FCI Danbury. Because the Court is the trier of fact, and this matter is not going to a jury, an adverse inference instruction is not an appropriate sanction. Rather, a sanction in the form of precluding Respondent from disputing this issue would more adequately restore

---

[9] Petitioners anticipate that Respondent will claim that its production of the "Activities Report," a document which lists the dates of clinical encounters with prisoners, cures any potential prejudice. This is incorrect for multiple reasons. First, the Activities Report does not contain the date that a paper sick call request was submitted by the prisoner. Second, after conferring with Ms. Dukate, Respondent's counsel has informed Petitioner's counsel that the date the sick call request was made is not saved in the computer system once a patient is seen. Finally, Ms. Dukate testified at her deposition that not all sick call requests are entered into this system. Accordingly, Petitioners cannot rely on the Activities Report as evidence probative of when prisoners made sick call requests and how long it took to be seen.

Petitioners to the "position [they] would have been in but for [Respondent's] wrongful destruction of evidence." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction"). Such a sanction would also serve the other purposes of sanctions for spoliation, including deterring spoliation in the future and placing the risk of an erroneous judgment on the party who wrongfully created that risk. *Kronish*, 150 F.3d at 126.

For the reasons stated above, the Court should grant Petitioners' motion for sanctions and preclude Respondent from disputing that the sick call system at FCI Danbury failed to adequately and timely respond to prisoners' requests for medical care at FCI Danbury.

Dated June 8, 2020                                Respectfully Submitted,

                                                                              /s/
David S. Golub, ct00145
Jonathan M. Levine, ct 07584
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Email: dgolub@sgtlaw.com
        jlevine@sgtlaw.com

Sarah French Russell, ct26604
Tessa Bialek ct30582
Legal Clinic, Quinnipiac University School of Law
275 Mt. Carmel Avenue
Hamden, CT 06518
Telephone: (203) 582-5258
Email: sarah.russell@quinnipiac.edu
        tessa.bialek@quinnipiac.edu

Marisol Orihuela, ct30543
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
Telephone: (203) 432-4800
Email: marisol.orihuela@ylsclinics.org

Alexandra Harrington, ct30943
127 Wall Street
New Haven, CT 06511
Telephone: 203-436-3532
Email: alexandra.harrington@yale.edu

*Counsel for the Petitioners Dianthe Martinez-Brooks, Rejeanne Collier, Jackie Madore, and*