**<u>EXHIBIT 1</u>**

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES WHITTED, | : | |
| individually, and on behalf of all others | : | |
| similarly situated, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Case No. 3:20-cv-569 (MPS) |
| | : | |
| | : | |
| D. EASTER, Warden of Federal Correctional | : | |
| Institution at Danbury, in her official capacity | : | |
| | : | |
| Respondent. | : | |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement (the "Agreement") is made and entered into effective July 27, 2020 (the "Effective Date") by Petitioner James Whitted, individually and on behalf of the members of the proposed class defined herein in Section 1 (the "Medically Vulnerable Class"), on the one hand, and the Respondent, Diane Easter, in her official capacity as the Warden ("Respondent" or the "Warden") of the Federal Correctional Institution located in Danbury, Connecticut ("FCI Danbury") and the Bureau of Prisons (the "BOP"), on the other hand.

## RECITALS

Whereas, on April 27, 2020, several FCI Danbury inmates, subsequently joined by Petitioner, brought this action (the "Action") alleging the Respondent was violating the Eighth Amendment rights of FCI Danbury prisoners by (i) failing to make full use of her home confinement and compassionate release authority, and (ii) failing to implement adequate measures to prevent the continued spread of COVID-19 at FCI Danbury;

Whereas Respondent denies and vigorously disputes that any FCI Danbury inmate at issue in the present litigation has been treated with deliberate indifference;

Whereas, on May 12, 2020, United States District Judge Michael P. Shea entered a Temporary Restraining Order in this Action (the "May 12, 2020 TRO" (ECF 30)) provisionally certifying a putative subclass of medically vulnerable to COVID-19 FCI Danbury inmates and setting forth standards for determining their suitability for home confinement release.[1]

Whereas, on May 15, 2020, Respondent filed an initial list identifying 314 inmates who are potential members of the Medically Vulnerable Class (the "Medically Vulnerable Class List One Inmates" or "List One Inmates").  Respondent identified the 314 List One Inmates by searching the BOP's record systems using a list of ICD-9 and ICD-10 codes identified by Petitioner's counsel as representing conditions specifically identified by the CDC as putting a person at higher risk for severe illness from COVID-19;

Whereas Respondent ran a second search of BOP's record systems, again using a list of ICD-9 and ICD-10 codes identified by Petitioner's counsel as representing conditions specifically identified by the CDC as putting a person at higher risk for severe illness from COVID-19, which resulted in a list of 111 additional inmates who are also potential members of the Medically Vulnerable Class; and subsequently, at Petitioner's counsel's request, Respondent agreed to add an additional 14 inmates to be included into the second list of inmates who are

---

[1] In the May 12, 2020 TRO, the medically vulnerable subclass was defined as: "All individuals in custody at FCI Danbury, while the threat of COVID-19 at the facility remains, who are aged 65 or over and/or who have any of the following conditions specifically identified by the United States Centers for Disease Control as putting them at higher risk for severe illness from COVID-19: (a) chronic lung disease including moderate to severe asthma, COPD, emphysema, chronic bronchitis, idiopathic pulmonary fibrosis and/or cystic fibrosis; (b) immunocompromised status, including status as a transplant recipient, on chemotherapy, HIV positive, prolonged use of corticosteroids, using immunosuppressive medication, and/or having an immune deficiency; (c) severe obesity (BMI of 40 or higher); (d) diabetes mellitus Type I or Type II, (e) gestational diabetes mellitus; (f) chronic kidney disease on dialysis; (g) chronic liver diseases, cirrhosis; and/or (h) serious heart conditions, including congestive heart failure, coronary artery disease, congenital heart disease, cardiomyopathy, and/or pulmonary hypertension."  ECF 30 at pp. 65-66 n.32; *see also* ECF No. 26 at p. 2.

potential members of the Medically Vulnerable Class (collectively, these 125 inmates are the "Medically Vulnerable Class List Two Inmates" or "List Two Inmates");

Whereas attached as Exhibit A is a list setting out the List One Inmates and the List Two Inmates, respectively;

Whereas the parties recognize that there may be certain inmates, including future inmates, who are not List One Inmates or List Two Inmates but who nevertheless may already be or may in the future become members of the Medically Vulnerable Class ("Non-List Medically Vulnerable Class Inmates" or "Non-List Inmates");

Whereas the BOP has statutory authority to transfer prisoners to home confinement under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541;

Whereas, on March 26, 2020, Attorney General William Barr issued a memorandum that directed the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," and provided a non-exhaustive list of discretionary factors for evaluating inmates for home confinement;

Whereas, on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which authorized the Director of the BOP to lengthen the amount of time prisoners can be placed on home confinement under Section 3624(c)(2)— previously capped at the shorter of 10% of their sentence or 6 months—provided that the Attorney General makes a finding that "emergency conditions will materially affect the functioning of the Bureau";

Whereas, on April 3, 2020, Attorney General Barr issued a memorandum in which he found that "emergency conditions are materially affecting the functioning of the Bureau" and

3

directed the Bureau to "move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions" while cautioning that the BOP must continue to make "individualized [home confinement] determinations";

Whereas the BOP has established a multidisciplinary committee within its Central Office in Washington, D.C. (the "Home Confinement Committee" or "HCC") to make home confinement review determinations for inmates who are not eligible for home confinement under BOP's current guidance but nevertheless could possibly be determined suitable for home confinement as an exception case;

Whereas the parties now desire to resolve the present litigation on the mutually acceptable terms set forth below, which they agree are a fair, reasonable and adequate resolution of this case;

NOW, THEREFORE, in consideration of the promises set forth herein, the parties agree and covenant as follows:

**SETTLEMENT TERMS**

**Settlement Class**

1.      This Settlement Agreement is entered into on behalf of all members of the Medically Vulnerable Class, consisting of any person incarcerated at FCI Danbury anytime from the Effective Date until the termination date of this Agreement, October 31, 2021, unless otherwise modified by the parties pursuant to the terms of this Agreement, who either: (a) is a List One Inmate or List Two Inmate, or (b) possesses one or more underlying medical conditions which, according to current CDC guidance (i.e., the CDC guidance in effect at the time of the individual's home confinement review), either (i) places that inmate at increased risk of severe illness from COVID-19 ("Tier 1 medical conditions"); or (ii) might place that inmate at an

4

increased risk of severe illness from COVID-19 ("Tier 2 medical conditions").

**List One and List Two Inmate Home Confinement Reviews**

2.      Respondent has already reviewed all List One Inmates for home confinement at the institutional level and Respondent asserts that it has conducted these reviews pursuant to Attorney General Barr's March 26 and April 3, 2020 memoranda, the current BOP guidance at the time of each review, and the standards set forth in the May 12, 2020 TRO (see ECF 30). The Respondent has already referred to the Home Confinement Committee all List One Inmates who were not eligible for home confinement under the current BOP guidance at the time of each review but whom the Respondent nevertheless believed could even possibly be eligible for home confinement as an exception case based upon the standards set forth in the May 12, 2020 TRO (see ECF 30). BOP asserts that the Home Confinement Committee has already made home confinement determinations based upon the standards set forth in the May 12, 2020 TRO (see ECF 30) for all List One Inmates referred to it. The parties agree that Section 13 of this Agreement, *infra*, resolves any disputes or disagreements the parties may have, or have ever had, with respect to the adequacy of the home confinement reviews performed under this Section.

3.      To the extent she has not already done so, the Respondent agrees to have all List Two Inmates reviewed for home confinement at the institutional level pursuant to Attorney General Barr's March 26 and April 3, 2020 memoranda, the current BOP guidance at the time of each review, and the standards set forth in the May 12, 2020 TRO (see ECF 30). To the extent that the standards set forth in the May 12, 2020 TRO differ from Attorney General Barr's March 26 and April 3, 2020 memoranda or the current BOP guidance at the time of each review, the provisions of the May 12, 2020 TRO shall control. Petitioner acknowledges that Respondent, at the institutional level, may not be authorized to apply provisions of the May 12, 2020 TRO that

conflict with current BOP guidance.  Respondent agrees to refer all List Two Inmates who are

not approved for home confinement at the institutional level to the Home Confinement

Committee.  BOP agrees to have the Home Confinement Committee make a home confinement

determination for all such inmates based upon the standards set forth in the May 12, 2020 TRO

(see ECF 30).

**Identification of Medically Vulnerable Non-List Inmates**

4.     The parties agree that Non-List Inmates can become recognized as members of

the Medically Vulnerable Class, but only through the following process:

     a.  Petitioner's counsel may propose any Non-List Inmate to become a recognized

member of the Medically Vulnerable Class, but only upon a good faith belief,

substantiated by documentary evidence, that such individual falls within the

definition of the Medically Vulnerable Class.

     b.  Respondent and BOP agree to recognize as a member of the Medically

Vulnerable Class any inmate proposed under Section 4(a), unless within 7 days of

such proposal the Respondent or BOP disagrees that the proposed inmate is a

member of the Medically Vulnerable Class.

     c.  Any disagreements between counsel for Petitioner and Respondent or BOP over

whether a particular Non-List Inmate is a recognized member of the Medically

Vulnerable Class shall be finally resolved by a physician detailed to the BOP

from the United States Public Health Service, Department of Health and Human

Services, (the "PHS Physician") within 7 days of such dispute being referred to

him or her.

     d.  Neither Respondent nor BOP nor the PHS Physician will consider whether an

6

inmate has previously tested positive for COVID-19 in making a determination about whether such individuals falls within the definition of the Medically Vulnerable Class for purposes of this Section.

    e.    Determinations about whether any Non-List Inmate is a recognized member of the Medically Vulnerable Class will be based solely on BOP records, unless (1) the inmate at issue has been in BOP custody for less than the two consecutive years preceding the date of the inmate's proposal under Section 4(a), or (2) Petitioner's counsel makes a good faith representation that extraordinary and compelling circumstances show the Non-List Inmate has a COVID-19 risk factor(s) which warrant consideration of such outside medical records.  In either such instance, the inmate may submit outside medical records to be included in the inmate's BOP records, which—once submitted and made part of the inmate's BOP records—will collectively be reviewed in determining whether an inmate is a member of the Medically Vulnerable Class.

5.    To help facilitate the identification of medically vulnerable Non-List Inmates, the parties agree to abide by the following timeline:

    a.    Within 1 day of the Effective Date, Petitioner's counsel agrees to provide Respondent medical release forms for certain inmates currently housed at FCI Danbury.

    b.    Within 7 days of the Effective Date, Respondent or BOP will begin producing to Petitioner's counsel the past two years of medical records for each inmate on behalf of whom Petitioner's counsel submits a medical release form pursuant to Section 5(a).  Respondent or BOP will finish producing all such records within 14

days of the Effective Date.

c.  Respondent will continue to undertake efforts to identify medically vulnerable to COVID-19 inmates who have arrived or will arrive at FCI Danbury after June 3, 2020 pursuant to Attorney General Barr's March 26 and April 3, 2020 memoranda.  Respondent will ensure that each inmate admitted to FCI Danbury after June 3, 2020 receives a copy of the attached notice and authorization to release medical records form, attached as Exhibit C to this Agreement (the "Authorization Form").  For those inmates admitted after the Effective Date of this Agreement, Respondent will provide each such inmate a copy of the Authorization Form at the time of their admission.  Inmates will be responsible for submitting signed Authorization Forms to Respondent.  Within 7 days of Respondent's receipt of a signed Authorization Form, Respondent will provide a copy of the signed form and the inmate's past two years of BOP medical records to Petitioner's counsel.

**Medically Vulnerable Non-List Inmate Home Confinement Reviews**

6.  Respondent agrees to have all Non-List Inmates who are recognized as members of the Medically Vulnerable Class pursuant to the process set forth in Section 4 of this Agreement reviewed for home confinement at the institutional level pursuant to Attorney General Barr's March 26 and April 3, 2020 memoranda, the current BOP guidance at the time of each review, and the standards set forth in the May 12, 2020 TRO (see ECF 30).  To the extent that the provisions set forth in the March 12, 2020 TRO differ from Attorney General Barr's March 26 and April 3, 2020 memoranda or the current BOP guidance at the time of each review, the provisions of the May 12, 2020 TRO shall control.  Petitioner acknowledges that

Respondent, at the institutional level, may not be authorized to apply provisions of the May 12, 2020 TRO that conflict with current BOP guidance.  Respondent agrees to refer all such inmates who are not approved for home confinement at the institutional level to the Home Confinement Committee.  BOP agrees to have the Home Confinement Committee make a home confinement determination for all such inmates based upon the standards set forth in the May 12, 2020 TRO (see ECF 30).  After the List Two Inmates are reviewed for home confinement, with respect to anyone else subsequently recognized as a Medically Vulnerable Class member under Section 4 of this Agreement, Respondent and BOP shall complete their home confinement review within a reasonable time from recognition and shall endeavor to do so within fourteen days.

**Principles Governing Home Confinement Assessments**

7.      For each inmate reviewed for home confinement pursuant to Section(s) 3, 6, 13, and/or 14 of this Agreement, a medical clinician employed or appointed by Respondent or BOP will verify that all Tier 1 medical conditions and Tier 2 medical conditions that each such inmate has, based on qualifying medical records as set forth in Section 4(e) herein, are identified and listed for consideration at both the institutional and Home Confinement Committee levels of review.

8.      In making home confinement determinations under this Agreement pursuant to the May 12, 2020 TRO, including in particular the May 12, 2020 TRO's mandate to "assign substantial weight … to the inmate's risk factors for COVID-19 based on CDC guidance," Respondent and the BOP agree not to utilize the "high-average-no" risk methodology employed in ECF 92, or consider the fact that any particular inmate may have previously tested positive for COVID-19.

9.      BOP's National Health Technology Administrator—or a substitute medical

9

clinician in the event the National Health Technology Administrator is unavailable—will remain a member of the Home Confinement Committee to assist the Committee's home confinement reviews.

10.     The Respondent will create Review Worksheets for each person being reviewed that include: (i) a list of the person's CDC tier one and tier two COVID-19 risk factors; (ii) the person's age; (iii) the offense/s of conviction; (iv) the person's projected release date (PRD); (v) the percentage of statutory time served; (vi) a list of pending charges or detainers, if applicable; (vii) the person's security level; (vii) the person's PATTERN risk level; (viii) if the release plan has been deemed unsuitable, the reasons for that conclusion; and (ix) the person's DST, if he or she has one.  The Home Confinement Committee will also use these Review Worksheets in making home confinement determinations.  Respondent agrees that if she determines that a Medically Vulnerable Class member is not eligible for home confinement, she will comply with the May 12, 2020 TRO and provide a written explanation of the factual basis for any factors relied upon for the denial.

11.     The BOP agrees that if the Home Confinement Committee denies home confinement to a Medically Vulnerable Class member, it will comply with the May 12, 2020 TRO regarding a written explanation of the factual basis for any factors relied upon for the denial.  Respondent and BOP agree to provide Petitioner's counsel copies of the documents generated in the process of conducting home confinement reviews under this Agreement, including the Review Worksheets, the PATTERN Worksheets (i.e., worksheets containing the PATTERN score calculations) and the reason for denial (if the person is denied).  The parties agree that the form of the documents produced under this Section will be consistent with the worksheets that have been disclosed in this litigation (see, e.g., ECF 59).  BOP will endeavor to

10

release individuals approved for home confinement to home confinement within 14 days of the approval decision unless public safety or the absence of any home in which to place the inmate would make it unsafe to move the inmate to home confinement within that 14 day period.

**Home Confinement Reconsiderations**

12.      Petitioner's counsel may, based on a good faith belief, submit to Respondent and BOP for the Home Confinement Committee's reconsideration any inmate who was denied home confinement but whose Review Worksheets or PATTERN Worksheets produced to Petitioner's counsel under Section 11 contain an error or mistake of fact, including but not limited to a mistake in the description of an inmate's PATTERN score or percentage of time served, or if the incorrect underlying medical condition(s) is listed on the worksheets for a particular inmate. Respondent and BOP may refuse to submit for reconsideration any such inmate to the extent they disagree on a good faith basis with Petitioner's counsel's determination that an error or mistake of fact exists or that the error or mistake of fact is material, in which case the parties' dispute will be subject to the Dispute Resolution Procedures in Section 23.

13.      Respondent and BOP agree to submit the 54 List One Inmates set out in the list attached to this Agreement as Exhibit B ("Exhibit B Inmates") to the Home Confinement Committee for it to reconsider their denials of home confinement.  The Home Confinement Committee's re-review for home confinement of the Exhibit B Inmates will comply with Sections 7 through 11 of this Agreement, and is subject to enforcement under this Agreement.

14.      The BOP agrees that, if an inmate's lack of a release plan is, or is among, the reason(s) for denial of home confinement, and a suitable release plan is subsequently presented, each such inmate will have the right to apply, on their own initiative, for a home confinement re-review.  Such inmates shall be re-reviewed first by the institution, and, if denied again by the institution, then by the Home Confinement Committee.  Where a pending charge, detainer, or

11

warrant is, or is among, the reason(s) for denial of home confinement, and that pending charge, detainer, or warrant has been resolved, each such inmate will have the right to apply, on their own initiative, for a home confinement review.  Such inmates shall be re-reviewed first by the institution, and, if denied again by the institution, then by the Home Confinement Committee. All such home confinement re-reviews under this Section will comply with Sections 7 through 11 of this Agreement, and are subject to enforcement under this Agreement.  This Section applies to all List Two Inmates and Non-List Inmates, as well as to List One Inmates previously denied home confinement by the Home Confinement Committee.

**Resolution and Release of Claims**

15.    The parties agree that this Agreement resolves all claims in the above-captioned case.

16.    The named Petitioner and all members of the Medically Vulnerable Class, as defined in Section 1, individually and behalf of all their respective heirs, beneficiaries, successors and assigns, in consideration of the benefits of this Agreement, release and forever discharge the Respondent and BOP, and all their respective present and former officers, employees, agents, heirs, successors and assigns, from all actions, causes of action, suits, claims, or controversies, for any and all forms of non-monetary relief arising from or based on either: (i) any denial of home confinement or exercise of the BOP's statutory authority to transfer prisoners to home confinement which may be brought during the time this Agreement is in effect, except as otherwise provided under this Agreement, or (ii) any acts or omissions alleged or that could have been alleged in the Action relating to the COVID-19 pandemic occurring prior to the Effective Date.  For the avoidance of doubt, this release applies to any and all Medically Vulnerable Class members' habeas corpus cases pursuant to 28 U.S.C. § 2241 seeking any relief

due to the COVID-19 pandemic for acts or omissions occurring prior to the Effective Date.  The aforementioned releases do not apply to sentence reduction/compassionate release motions filed pursuant to 18 U.S.C. § 3582.

### Duration and Termination of Settlement

17.     The parties intend that this Agreement will remain in place until October 31, 2021, but upon the mutual consent of the parties, this date of termination may be modified, shortened or extended.  Additionally, the parties may make a motion to extend or motion to terminate this Agreement based on any substantial change in circumstances related to the COVID-19 pandemic's effect on FCI Danbury or other good faith basis.

18.     Upon termination, without the need for any further order of any state or federal court, all jurisdiction of any court to enforce this Agreement shall end.

### Certification of the Settlement Class and Conditional Dismissal

19.     This Agreement is not a consent decree and shall not be incorporated into any judgment of the Court.  To the contrary, this is a settlement agreement which the parties agree is a fair, reasonable and adequate resolution of this case.

20.     The Petitioner shall file a consent motion for certification of the Medically Vulnerable Class within 5 days of the Effective Date.  The Medically Vulnerable Subclass shall be defined, as in Section 1, as "any person incarcerated at FCI Danbury anytime from the Effective Date until the termination date of this Agreement, October 31, 2021, unless otherwise modified by the parties pursuant to the terms of this Agreement, who either: (a) is a List One Inmate or List Two Inmate, or (b) possesses one or more underlying medical conditions which, according to current CDC guidance (i.e., the CDC guidance in effect at the time of the individual's home confinement review), either (i) places that inmate at increased risk of severe

13

illness from COVID-19; or (ii) might place that inmate at an increased risk of severe illness from COVID-19." Within three days of the consent motion for class certification being granted, Petitioner and Respondent shall jointly move for an Order to Give Notice, and for a fairness hearing, analogous to Fed. R. Civ. P. 23(e).

21.     Subsequent to the fairness hearing referenced above, Petitioner and Respondent shall jointly move pursuant to Fed. R. Civ. P. 41(a)(2) to approve this Agreement and to dismiss the Petition subject to the parties' compliance with the terms of the Agreement. The dismissal shall be with prejudice and without costs as to all claims asserted in the Action by the Medically Vulnerable Class pertaining to home confinement review and all other claims released under Section 16. This dismissal will be without prejudice and without costs to all other claims brought in the Action. The parties agree that the Court shall retain jurisdiction over the parties and this case to the full extent necessary to enforce the terms of the Agreement.

22.     Throughout the duration of the Agreement, the parties agree to enforce the Agreement and resolve any dispute, controversy or claim arising out of or relating to this Agreement, only pursuant to the procedures outlined in Section 23 of this Agreement (the "Dispute Resolution Procedures"). The parties understand and agree that, if approved, and the Court consents, the Court will maintain jurisdiction of this action throughout the duration of the Agreement to resolve any disputes which cannot be amicably resolved between the parties pursuant to the Dispute Resolution Procedures set forth in Section 23. If the parties are unable to resolve any such disputes with the assistance of the Settlement Judge, the Court shall retain jurisdiction to enforce the provisions of the Agreement and the Petitioner may seek specific performance of the Agreement.

**Dispute Resolution Procedures**

23.     The following Dispute Resolution Procedures will govern any dispute, controversy or claim arising out of or relating to this Agreement, or any breach or enforcement of this Agreement:

      a.   In the event of any dispute, controversy or claim arising out of or relating to this Agreement, or any breach or enforcement of this Agreement, counsel for the parties shall meet and confer with each other before seeking intervention from the Court.  The parties agree to meet and confer within 5 days of notice of a dispute.

      b.   Either Party may request that the Honorable Thomas O. Farrish, United States Magistrate Judge or, if Judge Farrish is not available, another D. Conn. United States Magistrate Judge (the "Settlement Judge"), participate in a meet and confer, or in a meeting subsequent to a meet and confer, in order to facilitate informal resolution of the issue.

      c.   If the parties are unable to resolve their dispute informally, they may seek intervention from the Court.

      d.   Petitioner agrees he shall not file a motion for contempt in connection with this Agreement.  The Court may not entertain a motion for contempt and the Court may not grant any remedial relief in the nature of a contempt of court finding against Respondent or BOP.  If Petitioner prevails on any claim alleging Respondent's or BOP's non-compliance with this Agreement, the sole remedy shall be specific performance of this Agreement.

      e.   The Petitioner agrees not to seek any attorneys' fees and/or costs for any time spent in any portion of dispute resolution.

f.  The Home Confinement Committee's substantive determination of whether to place any particular member of the Medically Vulnerable Class on home confinement shall not be subject to judicial review, except that the Court may order the BOP to have the Home Confinement Committee reconsider a home confinement denial that is based upon erroneous factual underpinnings pursuant to Section 12 of this Agreement or a failure to comply with the terms of the Agreement, and may compel specific performance of this Agreement.

**Other Provisions**

24.  This Agreement may be modified only by the mutual written agreement of all parties.

25.  This Agreement will not be interpreted against any party as the drafter, and it shall only ever be interpreted as if the organizational headings within the Settlement Terms do not exist.

26.  The parties agree that this Agreement may be made public, and Petitioner expressly consents to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

27.  This Agreement shall in no way be deemed an admission by any party of liability, fault, misconduct, or a violation of any policies, procedures, or federal, state, or local laws or regulations.  Neither this Agreement nor the fact of this settlement shall be construed to be, nor shall it be, admissible in any proceeding as evidence of an admission by any party of a violation of any policies, procedures, or federal, state, or local laws or regulations; nor shall this Agreement or the fact of settlement constitute evidence of any admission by any party as to any issue of law or fact.  This Agreement is entered into by all parties for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.  This

Agreement shall only ever be admissible in a proceeding to enforce its terms.

28.     It is understood between the parties that certain presently unforeseeable events or conditions, including but not limited to changes in the established treatment practices or standard of care for treatment of COVID-19 infection or the prevalence or effect of COVID-19 in the state of Connecticut, may prevent or obviate the need for compliance with this Agreement.  If so, the parties agree to enter into good-faith discussions to attempt to resolve such issues or modify or terminate this Agreement as appropriate.  In the event the parties are unable to reach agreement, the Dispute Resolution Procedures in Section 23 shall apply.

29.     The provisions of this Agreement may be temporarily suspended or modified in part or in their entirety if the Respondent or her designees determine that a "genuine emergency" exists at FCI Danbury.  Genuine emergency means any special circumstances under which it is reasonable to conclude that there is any actual or potential threat to the security of FCI Danbury, or to the safety of the staff, prisoners or other persons within any one of the institution's facilities.  If a "genuine emergency" lasts longer than forty-eight hours, or occurs more than once in a one-week period, Respondent shall report to Petitioner's counsel, within forty-eight hours except for good cause, the date of the emergency, the nature of the emergency, and which provisions of this Agreement have been temporarily suspended.  For the avoidance of doubt, this Section is subject to the Dispute Resolution Procedures in Section 23.

30.     Petitioner's counsel agrees not to seek any attorneys' fees, costs or expenses of any kind for their past or future work on this case.

Petitioner and Class Representative James Whitted:
By His Counsel

July 21, 2020
_____
Date

_____
David S. Golub
Jonathan M. Levine
Sarah F. Russell
Tessa Bialek
Marisol Orihuela
Alexandra Harrington

18

Respondent, Diane Easter, Warden of Federal
Correctional Institution at Danbury, in her official
capacity and through her attorneys:

John H. Durham
United States Attorney

July 24, 2020

Date

John B. Hughes
Michelle L. McConaghy
David C. Nelson
Jillian R. Orticelli
Nathaniel M. Putnam
Assistant U.S. Attorneys

Federal Bureau of Prisons

24 July 2020

Date

Darrin Howard
Northeast Regional Counsel
Federal Bureau of Prisons

19

# EXHIBIT A

| | |
|---|---|
| **LIST ONE INMATES** | |
| **First Three Digits of Register Number** | **Initials (first name, last name)** |
| 792 | SA |
| 098 | JA |
| 674 | AA |
| 326 | LA |
| 046 | DA |
| 750 | MA |
| 652 | KA |
| 591 | RA |
| 806 | MA |
| 333 | CA |
| 154 | JA |
| 092 | JA |
| 684 | RA |
| 062 | CA |
| 719 | GA |
| 244 | DB |
| 530 | DB |
| 226 | CB |
| 008 | AB |
| 644 | AB |
| 133 | SB |
| 063 | LB |
| 624 | SB |
| 856 | AB |
| 122 | DB |
| 116 | JB |
| 117 | HB |
| 161 | KB |
| 795 | VB |
| 045 | DB |
| 866 | JB |
| 860 | MB |
| 824 | KB |
| 249 | AB |
| 516 | AB |
| 757 | KB |
| 071 | JB |
| 923 | LB |
| 127 | LB |
| 156 | BB |
| 679 | KB |
| 134 | KB |
| 008 | GB |
| 657 | JB |
| 722 | CC |
| 087 | SC |
| 159 | JC |

# EXHIBIT A

| | |
|---|---|
| 093 | AC |
| 652 | EC |
| 766 | IC |
| 161 | DC |
| 260 | NC |
| 724 | BC |
| 728 | JC |
| 916 | WC |
| 212 | RC |
| 635 | KC |
| 763 | AC |
| 614 | JC |
| 608 | IC |
| 363 | CC |
| 291 | SC |
| 477 | CC |
| 706 | AC |
| 959 | JC |
| 658 | MD |
| 261 | KD |
| 857 | ED |
| 674 | OD |
| 798 | RD |
| 070 | AD |
| 212 | SD |
| 262 | MD |
| 636 | ED |
| 054 | RD |
| 695 | JD |
| 251 | CD |
| 200 | DD |
| 041 | DD |
| 141 | TD |
| 133 | HD |
| 120 | CD |
| 969 | ED |
| 516 | MD |
| 511 | AE |
| 892 | LE |
| 857 | AE |
| 699 | CE |
| 065 | FE |
| 353 | TE |
| 136 | CF |
| 619 | RF |
| 796 | JF |
| 115 | SF |
| 218 | CF |
| 284 | JF |
| 125 | JF |
| 136 | CF |
| 746 | DF |
| 499 | CG |

**EXHIBIT A**

| | |
|---|---|
| 168 | OG |
| 129 | MG |
| 505 | RG |
| 067 | DG |
| 776 | RG |
| 632 | KG |
| 017 | CG |
| 302 | TG |
| 760 | CG |
| 773 | JG |
| 182 | AG |
| 765 | MG |
| 554 | KG |
| 415 | JG |
| 157 | BG |
| 339 | JG |
| 088 | SG |
| 972 | DG |
| 257 | CH |
| 706 | TH |
| 057 | RH |
| 463 | DH |
| 967 | LH |
| 543 | MH |
| 668 | VH |
| 216 | FH |
| 303 | WH |
| 121 | TH |
| 965 | NH |
| 716 | LH |
| 255 | JH |
| 051 | BH |
| 197 | AI |
| 582 | RI |
| 146 | JI |
| 231 | MI |
| 620 | CJ |
| 085 | BJ |
| 134 | CJ |
| 002 | WJ |
| 205 | BJ |
| 449 | RJ |
| 671 | LJ |
| 665 | SJ |
| 253 | DJ |
| 271 | EJ |
| 156 | FJ |
| 131 | TJ |
| 686 | VK |
| 394 | RK |
| 049 | DK |
| 218 | GK |
| 134 | LL |

# EXHIBIT A

| | |
|---|---|
| 899 | SL |
| 298 | BL |
| 134 | LL |
| 758 | JL |
| 285 | JL |
| 103 | FL |
| 036 | CL |
| 722 | AM |
| 561 | EM |
| 624 | JM |
| 196 | DM |
| 126 | MM |
| 250 | DM |
| 094 | EM |
| 114 | RM |
| 713 | DM |
| 757 | YM |
| 698 | AM |
| 255 | SM |
| 244 | JM |
| 864 | HM |
| 058 | JM |
| 134 | KM |
| 010 | CM |
| 993 | MM |
| 479 | BM |
| 177 | DM |
| 001 | MM |
| 691 | CM |
| 076 | MM |
| 132 | TM |
| 718 | GM |
| 218 | LM |
| 219 | DM |
| 559 | TM |
| 722 | JM |
| 592 | AM |
| 778 | RM |
| 356 | LM |
| 175 | DM |
| 602 | JM |
| 252 | RM |
| 145 | FM |
| 527 | NM |
| 470 | BM |
| 809 | DM |
| 228 | MM |
| 010 | DM |
| 789 | JN |
| 257 | MN |
| 108 | NN |
| 122 | KN |
| 920 | CO |
| 224 | NO |

**EXHIBIT A**

| | |
|---|---|
| 583 | AP |
| 059 | TP |
| 652 | SP |
| 179 | WP |
| 967 | SP |
| 619 | GP |
| 892 | MP |
| 103 | IP |
| 137 | RP |
| 427 | RP |
| 633 | MP |
| 135 | MP |
| 626 | AP |
| 004 | CP |
| 766 | BP |
| 286 | TP |
| 915 | KP |
| 560 | MQ |
| 892 | JR |
| 522 | MR |
| 696 | RR |
| 241 | DR |
| 082 | WR |
| 049 | KR |
| 344 | LR |
| 634 | ER |
| 399 | GR |
| 123 | CR |
| 468 | DR |
| 773 | WR |
| 826 | CR |
| 554 | CR |
| 116 | NR |
| 632 | AR |
| 675 | JR |
| 494 | AR |
| 945 | IR |
| 298 | BR |
| 715 | KR |
| 261 | TR |
| 660 | AR |
| 668 | RR |
| 116 | RR |
| 711 | JR |
| 827 | KR |
| 249 | MS |
| 261 | TS |
| 588 | SS |
| 507 | RS |
| 454 | WS |
| 788 | DS |
| 867 | LS |
| 907 | TS |

**EXHIBIT A**

| | |
|---|---|
| 278 | DS |
| 274 | LS |
| 911 | SS |
| 086 | RS |
| 180 | LS |
| 691 | MS |
| 994 | JS |
| 219 | MS |
| 583 | ES |
| 337 | TS |
| 252 | IS |
| 221 | MS |
| 913 | MS |
| 791 | DS |
| 261 | JS |
| 059 | MT |
| 718 | MT |
| 038 | PT |
| 161 | JT |
| 256 | RT |
| 231 | DT |
| 737 | CT |
| 207 | LT |
| 776 | NT |
| 329 | FT |
| 486 | AT |
| 011 | MT |
| 140 | ET |
| 655 | NT |
| 129 | EU |
| 761 | MV |
| 170 | JV |
| 670 | JV |
| 536 | AV |
| 496 | JV |
| 663 | AW |
| 830 | DW |
| 838 | JW |
| 108 | TW |
| 210 | JW |
| 248 | BW |
| 799 | MW |
| 275 | KW |
| 306 | JW |
| 759 | DW |
| 284 | MW |
| 223 | AW |
| 162 | JY |
| 694 | CY |
| 040 | JY |
| 998 | AY |
| 162 | MY |
| 260 | JZ |

# EXHIBIT A

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

## LIST TWO INMATES

| First Three Digits of Register Number | Initials (first name, last name) |
|---|---|
| 617 | AA |
| 247 | SA |
| 325 | JA |
| 203 | FA |
| 762 | EA |
| 717 | CA |
| 907 | DA |
| 114 | RB |
| 230 | LB |
| 465 | SB |
| 728 | MB |
| 927 | TB |
| 273 | SB |
| 735 | RB |
| 352 | AB |
| 153 | RB |
| 169 | AC |
| 158 | JC |
| 244 | EC |
| 117 | JC |
| 020 | FC |
| 831 | AC |
| 060 | AC |
| 612 | JC |
| 963 | SC |
| 183 | JC |
| 522 | JC |
| 127 | EC |
| 374 | FC |
| 714 | MD |
| 539 | MD |
| 776 | JD |
| 256 | GD |
| 773 | YD |
| 818 | SD |
| 273 | KD |
| 714 | AD |
| 159 | VD |
| 892 | ME |

# EXHIBIT A

| | |
|---|---|
| 390 | WF |
| 133 | OF |
| 158 | DF |
| 501 | GG |
| 011 | WG |
| 129 | MG |
| 264 | AG |
| 791 | MG |
| 138 | JH |
| 117 | KH |
| 859 | BI |
| 012 | KK |
| 027 | DK |
| 722 | KK |
| 860 | VL |
| 859 | KL |
| 637 | EL |
| 985 | TL |
| 858 | BL |
| 183 | AL |
| 434 | JL |
| 252 | AM |
| 280 | AM |
| 161 | JM |
| 087 | JM |
| 266 | RM |
| 854 | KM |
| 265 | NM |
| 046 | MM |
| 646 | OM |
| 340 | HM |
| 248 | BM |
| 248 | GM |
| 286 | AM |
| 682 | SM |
| 115 | KM |
| 288 | BM |
| 089 | JM |
| 251 | RM |
| 584 | TM |
| 922 | SM |
| 011 | DO |
| 554 | TO |
| 214 | CP |
| 462 | LP |
| 740 | GP |
| 116 | JP |

# EXHIBIT A

| | |
|---|---|
| 761 | EP |
| 860 | KP |
| 160 | DP |
| 377 | FP |
| 084 | RP |
| 855 | AP |
| 497 | JP |
| 037 | HQ |
| 119 | KR |
| 203 | JR |
| 880 | MR |
| 102 | CR |
| 135 | TR |
| 158 | NR |
| 966 | NR |
| 762 | JR |
| 260 | CS |
| 219 | MS |
| 102 | CS |
| 675 | DS |
| 725 | CS |
| 308 | DS |
| 197 | JS |
| 710 | SS |
| 245 | TS |
| 501 | JT |
| 004 | DU |
| 301 | TV |
| 069 | TW |
| 762 | SW |
| 710 | JW |
| 926 | BW |
| 082 | BW |
| 732 | MW |
| 057 | TW |
| 519 | JW |
| 689 | DW |
| 051 | PY |
| 496 | CY |

**EXHIBIT B**

| First Three Digits of Register Number | Initials (first name, last name) |
|---|---|
| 792 | SA |
| 046 | DA |
| 652 | KA |
| 719 | GA |
| 116 | JB |
| 795 | VB |
| 159 | JC |
| 916 | WC |
| 635 | KC |
| 291 | SC |
| 706 | AC |
| 969 | ED |
| 516 | MD |
| 619 | RF |
| 125 | JF |
| 136 | CF |
| 773 | JG |
| 182 | AG |
| 765 | MG |
| 554 | KG |
| 415 | JG |
| 339 | JG |
| 967 | LH |
| 668 | VH |
| 303 | WH |
| 049 | DK |
| 036 | CL |
| 722 | AM |
| 196 | DM |
| 864 | HM |
| 244 | JM |
| 010 | CM |
| 076 | MM |
| 718 | GM |
| 602 | JM |
| 228 | MM |
| 257 | MN |
| 920 | CO |
| 633 | MP |
| 286 | TP |
| 261 | TS |
| 907 | TS |
| 691 | MS |
| 252 | IS |

**EXHIBIT B**

| 791 | DS |
|-----|-----|
| 261 | JS |
| 256 | RT |
| 017 | DT |
| 486 | AT |
| 011 | MT |
| 670 | JV |
| 838 | JW |
| 108 | TW |
| 193 | JW |

# Exhibit C

# MARTINEZ-BROOKS V. EASTER NOTICE

If you are medically vulnerable to COVID-19, as defined by the CDC, you have the right to expedited consideration for home confinement. This notice informs you of your potential rights if you have **documentation (medical records) of the following conditions**:

- **Obesity** (BMI of 30 or higher)
- **Diabetes**
- **Serious heart conditions** (such as heart failure, coronary artery disease, cardiomyopathies, pulmonary hypertension)
- **Cardiovascular or cerebrovascular disease** (such as hypertension, high blood pressure, or stroke)
- **Chronic Kidney Disease**
- **Liver Disease**
- **Chronic Lung Disease** (such as COPD, emphysema and chronic bronchitis, idiopathic pulmonary fibrosis, or cystic fibrosis)
- **Asthma** (moderate-to-severe)
- **Cancer**
- **Immunocompromised state** (from blood, bone marrow, or organ transplant; immune deficiencies; HIV; use of corticosteroids; or use of other immune weakening medicines)
- **Hemoglobin Disorders** (such sickle cell disease and thalassemia)
- **Neurologic conditions** (such as dementia)
- **Pregnancy**
- **Smoking**

If you believe you are medically vulnerable to COVID-19 based on the above criteria, please contact or have your attorney contact Attorney Jonathan Levine at jlevine@danburylawsuit.com or at 184 Atlantic Street, Stamford, CT 06902.

Please provide the following information:

Your name, register number, medical condition(s), medications you are taking, and any other information you think is important.

**In order to be considered for home confinement pursuant to the *Martinez-Brooks* lawsuit, you must sign the attached records release form and return it to your case manager so that the *Martinez-Brooks* lawyers can access your BOP medical records.**

(Once you have submitted the release, you should also contact the lawyers to let them know to expect your release form.)

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. **Requests will not be processed if this information is not furnished.** False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC  20503.

Full Name of Requester [1] _____

Citizenship Status [2] _____ Social Security Number [3] _____

Current Address _____

Date of Birth _____ Place of Birth _____

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____

## Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]** _____ **Date** _____

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.