# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES WHITTED, individually, and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| Petitioner, | : | |
| v. | : | No. 3:20-cv-00569 (MPS) |
| | : | |
| DIANE EASTER, Warden of Federal Correctional Institution at Danbury in her official capacity, | : | |
| | : | |
| | : | |
| | : | |
| Respondent. | : | SEPTEMBER 11, 2020 |

# MEMORANDUM IN SUPPORT OF MOTION FOR
# <u>APPROVAL OF SETTLEMENT</u>

David S. Golub, ct00145
Jonathan M. Levine, ct 07584
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Email: dgolub@sgtlaw.com
         jlevine@sgtlaw.com

Sarah French Russell, ct26604
Tessa Bialek, ct30582
Legal Clinic, Quinnipiac University School of Law
275 Mt. Carmel Avenue
Hamden, CT 06518
Telephone: (203) 582-5258
Email: sarah.russell@quinnipiac.edu
         tessa.bialek@quinnipiac.edu

Marisol Orihuela, ct30543
Zal K. Shroff, Cooperating Counsel**
Ariadne Ellsworth, Law Student Intern*
Alexandra Gonzalez, Law Student Intern*
Alexander Nocks, Law Student Intern*
Phoenix Rice-Johnson, Law Student Intern*
Jerome N. Frank, Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
Telephone: (203) 432-4800
Email: marisol.orihuela@ylsclinics.org

Alexandra Harrington
Criminal Justice Advocacy Clinic University at Buffalo School of Law The State University of New York
Telephone: (716) 984-2453
Email: aharr@buffalo.edu

*Counsel for the Petitioner James Whitted*

* Motion for law student appearance forthcoming
** Application for admission forthcoming

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................... iii

INTRODUCTION ............................................................ 1

FACTUAL BACKGROUND .................................................... 4

    A.      Procedural History ................................................. 4

                *Multi-Party Petition* ............................................... 4

                *Temporary Restraining Order and Identification of Medically*
                *Vulnerable Individuals* ............................................. 6

                *TRO-imposed Home Confinement Review Process* ........................ 9

                *Discovery and Settlement Negotiations* ................................ 10

    B.      The Proposed Settlement ........................................... 11

                *Identification of New Class Members* ................................. 12

                *Expedited Home Confinement Review* ................................. 13

                *Reconsideration by HCC of Some Class Members* ....................... 14

                *Reconsideration based on Resolution of Release Plan or*
                *Pending Charges Issues* ............................................ 14

                *Preservation of Future Injunctive Relief and Damages Claims* ............. 15

    C.      Notice to the Class ................................................ 15

LEGAL STANDARD FOR ASSESSING PROPOSED CLASS SETTLEMENTS .......... 16

ARGUMENT ............................................................... 17

I.     The Lengthy Court-Supervised Negotiation that Resulted in the Settlement was
      Procedurally Fair ...................................................... 17

II.    The Settlement Agreement is Substantively Fair, Reasonable, and Adequate ........ 23

A.      The Proposed Settlement Provides Significant Benefits to the Class  . . . . . . . . . 24

        1. Identification of New Class Members  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        2. Expedited Home Confinement Review Pursuant to the TRO Standards  . . . . 25

        3. Re-Review and Error Correction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        4. Reconsideration based on Changed Circumstances  . . . . . . . . . . . . . . . . . . . . 27

B.      The Relief Provided to the Class Is Clearly Adequate in Light
        of the Costs, Risks and Delay of Trial and Appeal  . . . . . . . . . . . . . . . . . . . . . . 27

        1. The Complexity of Continued Litigation and the Benefit of
           Avoiding Delay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        2. The Risks to Obtaining Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

C.      The Settlement Treats Class Members Equitably Relative to Each Other . . . . . . 32

D.      The Objections Raise Understandable Concerns but Do Not Warrant
        Rejection of the Settlement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        1. Objections to Conditions of Confinement During the COVID-19
           Pandemic and Absence of Enforceable Conditions-Related Terms
           in the Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        2. Objections to the Settlement for Not Reaching Non-Class Members  . . . . . . 36

        3. Objections Discussing Individual Cases for Home Confinement Release . . . 37

        4. Objections to the Home Confinement Review Process  . . . . . . . . . . . . . . . . . 38

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Anglim v Xerox Corporation*,
Civ. No. B-83-251 (EBB) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Aramburu v. Healthcare Financial Services, Inc*.,
No. 02-CV-6535, 2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009) . . . . . . . . . . . . . . . . . . 22

*Austin v. Pa. Dep't of Corr*.,
876 F. Supp. 1437 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Banks v. Booth*,
No. 20-849 (CKK), 2020 WL 3303006 (D.D.C. June 18, 2020) . . . . . . . . . . . . . . . . . . 30

*Bardo v. Wright*,
No. 3:17 CV 1430(JBA), 2019 WL 5864820 (D. Conn. Nov. 8, 2019) . . . . . . . . . . . . 19

*Barnes v. Ahlman*,
No. 20A19, ___ S.Ct. ___, 2020 WL 4499350 (Aug. 5, 2020) . . . . . . . . . . . . . . . . . . . 30

*Batalla-Vidal v. Wolf*,
291 F.3d 260 (E.D.N.Y 2018), 18-845 (2d. Cir.), *aff'd in part and rev'd in part
sub. nom. Department of Homeland Security v. Regents of the University of
California*, 140 S.Ct. 1891 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Berni v. Barilla G. e R. Fratelli, S.p.A.,*
332 F.R.D. 14 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

*Brodeur v. Champion*,
No.3:17 CV 1738 (RMS) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Campbell, et al v. Moniz*,
CV 20-10697 PBS (D. Mass) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Carson v. American Brands, Inc*.,
450 U.S. 79 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Chatelain v. Prudential-Bache Sec., Inc*.,
805 F. Supp. 209 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 31

*Christiansen v. Chesebrough Pond's, Inc.*,
  No. 592 CV 727 (AHN) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Chunn v. Edge*,
  No. 20-cv-1590 (RPK) (RLM), 2020 WL 3055669 (E.D.N.Y June 9, 2020) . . . . . . . . . 30

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974),
  *abrogated on other grounds by Goldberger v.*
  *Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

*Clark v. Duke University*,
  2019 WL 2588029 (M.D. N.C. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Collins v. Olin Corp.*,
  No. 3:03–cv–945 (CFD), 2010 WL 1677764 (D. Conn. April 21, 2010) . . . . . . . . . . . . 40

*County of Suffolk v. Long Island Lighting Co.*,
  907 F.2d 1295 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Criswell v. Boudreaux*,
  No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) . . . . . . . . 30

*Decoteau v. Raemisch*,
  No. 13–cv–3399–WJM–KMT, 2016 WL 8416757 (D. Colo. July 6, 2016) . . . . . . . . . . 39

*Diaz v.Cook*,
  No. 3:20 CV 653 KAD (D. Conn) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Diglio v. Nationwide Mutual Insurance Company*,
  No. UWY-CV-00-0161135 (X06) (Conn. Super. CLD at Waterbury) . . . . . . . . . . . . . . 18

*Fernandez-Rodriguez v. Licon-Vitale*,
  No. 20 Civ. 3315 (ER), 2020 WL 3618941 (S.D.N.Y. July 2, 2020) . . . . . . . . . . . . . . . 30

*Ferrerya v. Decker*,
  No. 20 Civ. 3170 (AT), 2020 WL 1989417 (S.D.N.Y. Apr. 27, 2020) . . . . . . . . . . . 30, 31

*Franco-Gonzalez v. Holder*,
  CV 10-02211 DMG (C.D. Cal) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Forde v. Baird*,
  720 F. Supp. 2d 170 (D. Conn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Goode v. Blue*,
  No. 3:10 CV 135 (MRK) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Grant v. Bethlehem Steel Corp.*,
  823 F.2d 20 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Guippone v. BH S&B Holdings LLC*,
  No. 09 Civ. 01029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016) . . . . . . . . . . . . 29

*Heidgerd v. Olin Corporation*,
  Civ. No. N-86-51 (TFGD) (D. Conn.), aff'd, 906 F.2d 903 (2d Cir. 1990) . . . . . . . . . . . 18

*Hurdle v. Cook*,
  No. 3:20 CV 605 (KAD) (D. Conn) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Ilina v. Zickefoose*,
  591 F. Supp. 2d 145 (D. Conn. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000),
  aff'd sub nom. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) . . . . . . . 20, 23, 31

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 20, 28

*In re Luxottica Group S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Merrill Lynch Tyco Research Securities Litigation*,
  249 F.R.D. 124 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22, 31

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
  330 F.R.D. 11 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

v

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,*
    No. 05-MD-1720 (MKB)(JO), 2019 WL 6875422019 (E.D.N.Y. Dec. 16, 2019) . . . . . 32

*In re Remeron Direct Purchaser Antitrust Litig.,*
    No. Civ. 03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) . . . . . . . . . . . . . . . . 31

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.,*
    No. 3:09CV1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) . . . . . . . . . 18, 23

*In re Sumitomo Copper Litig.,*
    189 F.R.D. 274 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Veeco Instruments Inc. Securities Litigation,*
    No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) . . . . . . . . . . . . 29

*Ingles v. Toro,*
    438 F. Supp. 2d 203 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Jane Doe v. Corrections, et. al,*
    No. 3:14 CV 00469 (RNC) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*JSR v. Sessions,*
    No. 3:18 CV 1110 (VAB) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,*
    2016 WL 6542707 (D. Conn. Nov. 3, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.,*
    140 S.Ct. 1589 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Malam v. Adducci,*
    No. 20-10829, 2020 WL 4496597 (E.D. Mich. Aug. 4, 2020) . . . . . . . . . . . . . . . . . . . . 30

*Mapp v. Reno,*
    241 F.3d 221 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Marisol A. v. Giuliani,*
    185 F.R.D. 152 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Martens v. Smith Barney, Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Martinez-Brooks v. Easter*,
No. 3:20 CV 00569 (MPS),
2020 WL 2405350 (D. Conn. May 12, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 31, 36

*Mays v. Dart*,
No. 20-1792, 2020 WL 5361651 (7th Cir. Sept. 8, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 30

*Miles, et al v. Bell*,
Nos. B-79-137 (TFGD) & B-82-626 (TFGD) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Milner v. Black*,
No. 3:16 CV 1621 (SRU) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Milner v. Mulligan*,
No. 3:16 CV 1857 (SRU) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Oshonya Spencer, et al. v. Hartford Financial Services Group, Inc.*,
No. 3:05 CV 1681 (JCH) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Radcliffe v. Hernandez*,
794 Fed. Appx. 605 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Reid v. Donelan*,
CV 13-30125 PBS (D. Mass), 19-787, 19-1900 (1st Cir.) . . . . . . . . . . . . . . . . . . . . . . . 19

*Rodriguez v. Progressive Northwestern Insurance Company*,
No. UWY CV-00-0160554 S (X06) (Conn. Super. CLD at Waterbury) . . . . . . . . . . . . 18

*Romero v. La Revise Assocs., L.L.C.*,
58 F. Supp.3d 411 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Savino v. Souza*,
No. 20-10617-WGY, 2020 WL 1703844 (D. Mass. Apr. 8, 2020) . . . . . . . . . . . . . . . . 30

*Seth v. McDonough*,
No. 8:20-cv-01028-PX, 2020 WL 2571168 (D. Md. May 21, 2020) . . . . . . . . . . . . . . . 30

*State Employees Bargaining Agent Coalition et al. v. Rowland, et al.*,
No. 3:03 CV 221 (AVC) (D. Conn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stinson v. City of New York*,
    256 F. Supp. 3d 283 (S.D.N.Y. 2017) ........................................... 36

*Swain v. Junior*,
    961 F.3d 1276 (11th Cir. 2020) ................................................ 30

*Terwilliger v. Cook*,
    No. 3:20 CV 540 (SRU) (D. Conn) ............................................. 19

*Thiersaint v. DHS*,
    CV 18-12406 DJC (D. Mass) .................................................. 19

*Town of New Hartford et al. v. Connecticut Resources Recovery Authority*,
    291 Conn. 433 (2009) ........................................................ 18

*United States v. Almontes*,
    No. 3:05 CR 58 (SRU), 2020 WL 1812713 (D. Conn. Apr. 9, 2020) ............... 19

*U. S. ex rel. Sero v. Preiser*,
    506 F.2d 1115 (2d Cir. 1974) ................................................. 28

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020) ................................................. 30

*Valenzuela Arias v. Decker*,
    No. 20 Civ. 2802, 2020 WL 2306565 (S.D.N.Y. May 8, 2020) ................... 30

*W. v. City of New York*,
    2016 WL 4367969 (S.D.N.Y. Aug. 12, 2016) .................................. 35

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................... 16, 18, 23

*Weinberger* v. Kendrick,
    698 F.2d 61 (2d Cir. 1982) ................................................... 19

*Wilson v. Ponce*,
    No. CV 20-4451-MWF (MRWx), 2020 WL 5118066
    (C.D. Cal. July 14, 2020) .................................................... 30

*Wilson v. Williams*,
    961 F.3d 829 (6th Cir. 2020) ................................................. 30

**Federal Statutes and Rules of Civil Procedure**

18 U.S.C. § 3582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Coronavirus Aid, Relief, and Economic Security (CARES) Act,
Pub. L. No. 116-136, § 12003(b)(2) (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16

Fed. R. Civ. P. 23(e)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Fed. R. Civ. P. 23(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 23

Fed. R. Civ. P. 23(e)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

Fed. R. Civ. P. 23(e)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23, 32, 33

**Other Authorities**

Ronald P. Sokol, Federal Habeas Corpus Practice,
20 Am. Jur. Trials 1 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

William H. Rubenstein,
5 Newberg on Class Actions § 13.44 (5th ed. June 2020 Update) . . . . . . . . . . . . . . . . 33

Increasing Use of Home Confinement at Institutions Most Affected
by COVID-19 (Apr. 3, 2020), available at
https://www.justice.gov/file/1266661/download . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5

Centers for Disease Control, Cornavirus Disease 2019, Yourt Health, People with Certain
Medical Conditions https://www.cdc.gov/coronavirus/2019-ncov/
need-extra-precautions/people-with-medical-conditions.html . . . . . . . . . . . . . . . . . . . . 3

Federal Bureau of Prisons Population Statistics" (last updated Sept. 9, 2020),
https://www.bop.gov/about/statistics/population_statistics.jsp . . . . . . . . . . . . . . . . . . . 12

Petitioner James Whitted, through counsel, submits this Memorandum in support of his Motion for Approval of the Settlement Agreement (the "Settlement") submitted on August 3, 2020 in this multi-party habeas action involving individuals who are or may in the future be confined at FCI Danbury. (ECF Nos. 134-1). On August 11, 2020, the Court certified the proposed class identified in the Settlement (the "Class") for purposes of the Settlement, issued an Order of Notice to the Class, and appointed the undersigned as Class Counsel (ECF No. 141).

Applying the principles of Fed. R. Civ. Pro. 23(e) to this case, Class Counsel request that the Court grant approval of the Settlement. The Settlement is the product of a complex and extended set of negotiations and, in Class Counsel's view, represents a unique and important landmark on behalf of incarcerated individuals in the custody of the federal Bureau of Prisons (BOP) in the COVID-19 era. Class Counsel believe that this litigation and the Settlement have succeeded in bringing to the fore and remedying the inadequacies, prior to the commencement of this lawsuit, of the Bureau of Prison's home confinement release procedures. Building on the protections afforded by the Temporary Restraining Order ("TRO") issued by this Court on May 12, 2020, the Settlement provides remedies to enable more individuals to be in safer conditions than before the litigation began. The parties seek this Court's approval of the Settlement.

## INTRODUCTION

On March 27, 2020, with its enactment of the CARES Act, Congress gave the federal Bureau of Prisons ("BOP") the authority to transfer any federal prisoner to home confinement provided that the Attorney General made a finding that "emergency conditions will materially affect the functioning of the Bureau."[1] Attorney General Barr made that finding on April 3, 2020, and singled out FCI Danbury along with two other prisons as the sites of the most severe COVID-19 outbreaks in the federal system.[2] At that time, Attorney General Barr issued a directive to the BOP to "maximize" the use of

---

[1] Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020).
[2] Memorandum from Attorney Gen. to Director of Bureau of Prisons, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

home confinement and "immediately review all inmates who have COVID-19 risk factors" for potential placement in home confinement.

Yet a month later, the BOP had released only twenty-one individuals to home confinement from the three facilities at FCI Danbury, a federal prison complex in Danbury, Connecticut which includes a women's low-security satellite (the "FSL"), a women's minimum security facility (the "camp"), and a men's low security prison (the "men's facility"). FCI Danbury had put in place no system to prioritize consideration of the medically vulnerable for home confinement or to give weight to their COVID-19 risk factors in the decision. Moreover, officials were automatically denying release to individuals based on factors unrelated to public safety.

Petitioners Dianthe Martinez-Brooks, Rejeanne Collier, Jackie Madore and Kenneth Cassidy brought this lawsuit on April 27, 2020 to redress these problems and the lack of safety for those held in FCI Danbury. After the lawsuit began, and as this Court held a hearing on Petitioners' Emergency Motion  for a Temporary Restraining Order and Preliminary Injunction, held status conferences, issued rulings, encouraged the parties to work with the Magistrate Judge, and certified the settlement class, the BOP has identified as eligible for and released approximately 100 Class members from FCI Danbury to home confinement or halfway houses.[3]

The Settlement now before the Court is the result of intense efforts, through both litigation and negotiation, to vindicate the constitutional rights of the Class by ensuring that the BOP implements a meaningful home confinement review process to protect medically vulnerable people from unsafe incarceration due to the risks that COVID-19 poses to them. The Class is comprised of individuals who are incarcerated at any of the three facilities at FCI Danbury who are recognized as medically vulnerable, as well as all those later identified as having a medical condition that places them or may

---

[3] Approximately 45 Class members have been released by other means including through compassionate release orders from their sentencing judges or by reaching the end of their sentences.

place them at increased risk of severe illness from COVID-19 under guidance from the United States Centers for Disease Control and Prevention ("CDC").[4]

This Settlement provides three principal benefits. First, the Settlement requires Respondent to adhere to the procedures and standards established by this Court in its TRO, which changed the method by which the BOP reviews people for home confinement due to the health risk imposed by COVID-19, and sets out a procedure for Class Counsel to identify additional members of the Class, including requiring Respondent to facilitate that process by informing newly incarcerated individuals of the Settlement and their opportunity to have medical records reviewed by Class Counsel.

Second, the Settlement provides for expedited consideration for home confinement in compliance with the standards set forth by this Court in its TRO, which include, *inter alia*, that "substantial weight" be given to an individual's COVID-19 risk factors in the home confinement determination. Those denied home confinement at FCI Danbury will be reviewed by the BOP's Home Confinement Committee ("HCC") in Washington, D.C. Denial decisions must be supported by a written explanation of factors relied upon to deny home confinement despite the danger posed by COVID-19 to the incarcerated individual.

Third, under the Settlement, this Court retains jurisdiction to oversee the process and enforce violations of the Settlement. The Court may, for example, require re-review if the HCC relies on erroneous factual information or fails to apply the proper standards.

Because of this litigation and the significant provisions in the Settlement that benefit the Class, this Settlement is fair, reasonable, and adequate as required by Rule 23. The Settlement affords the Class a meaningful home confinement review process without limiting their ability to pursue other

---

[4] Under its updated guidance, the CDC distinguishes between conditions that are scientifically established to increase risk of severe illness from COVID-19 (designated as "Tier I medical conditions" in the Settlement) and those for which there is still only limited data but which, on the basis of current available science, the CDC believes might put individuals at increased risk of severe illness from COVID-19 (designated as "Tier II medical conditions"). The conditions in each category can be found on the CDC's website: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

forms of relief. For example, Class members may, consistent with this Settlement, pursue individual actions for monetary damages against Respondent or her staff for FCI Danbury's response to COVID-19. Members of the Class are, further, not precluded from pursuing equitable relief in the future, should it be needed to ensure adequate social distancing or other changes to the congregate housing conditions at FCI Danbury.[5] In short, the Settlement substantially benefits the Class and, at the same time, preserves the Class members' future rights to seek relief from unsafe conditions at FCI Danbury. Class Counsel therefore request that this Court conclude that the Settlement is fair, reasonable, and adequate and grant it final approval.

## FACTUAL BACKGROUND

### A.    Procedural History

*Multi-Party Petition*

On April 27, 2020, Dianthe Martinez-Brooks, Rejeanne Collier, Jackie Madore and Kenneth Cassidy[6] brought this multi-party habeas action against Warden Diane Easter on behalf of a proposed class of all individuals held at FCI Danbury. At the time the Petition was filed, there were 728 men at the men's facility, 165 women at the FSL, and 153 women at the camp. (ECF No. 1, ¶ 35).

Petitioners alleged that they were at imminent risk of contracting COVID-19 because of the unsafe, congregate conditions in which prisoners were held. Petitioners also identified a subclass of those who had medical conditions that the CDC said placed people at heightened risk of serious illness or death if they contract COVID-19.

---

[5] Because the Settlement does not resolve the claims of individuals outside of the Class, it does not prevent non-Class members incarcerated at FCI Danbury from bringing any claims they may have against the federal government or its officials.

[6] This action was originally brought by the four above-referenced petitioners. Mr. Cassidy was released on May 13, 2020 after his sentencing judge granted his compassionate release motion. Dianthe Martinez-Brooks and Rejeanne Collier were released in June 2020 on home confinement pursuant to the home confinement process established by this Court's TRO. Class Counsel filed voluntary dismissal of these three petitioners' claims, and filed an Amended Petition pursuant to Rule 21 (ECF No. 111) naming Amanda Cooper and James Whitted (along with original petitioner Jackie Madore) as named class representatives. Since the filing of the Amended Petition, Ms. Madore and Ms. Cooper have been released from FCI Danbury and placed on home confinement (*see* ECF Nos. 130 and 131), leaving Mr. Whitted currently as the named class representative. This memorandum will use the plural term "Petitioners" in reference to allegations made or relief sought in prior pleadings.

Petitioners alleged that because of the unsafe conditions at FCI Danbury and the resulting danger they faced of contracting COVID-19 while incarcerated at FCI Danbury, their confinement was unconstitutional in violation of their Eighth Amendment right against cruel and unusual punishments. At the time the lawsuit was filed, the COVID-19 outbreak was at its height in Fairfield County, where FCI Danbury is located, and in the communities nearby and across the state. The virus was rapidly spreading through FCI Danbury's crowded dorms in March, with the first confirmed cases in the FSL and the men's facility in late March. As of April 15, 2020, at least 44 prisoners and 39 staff members had tested positive for COVID-19, and one person had died. (ECF No. 1, ¶ 40). There was no facility-wide testing done at the facility before May, and thus these numbers likely vastly understated the outbreak. Indeed, of those tested at the facility in March and April, 79% were positive.[7]

As the Petition explained, on March 27, 2020, with the CARES Act, Congress gave the Bureau of Prisons the authority to transfer any federal prisoner to home confinement provided that the Attorney General made a finding that "emergency conditions will materially affect the functioning of the Bureau." CARES Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). Attorney General Barr made that finding on April 3, 2020, naming FCI Danbury along with two other facilities as sites of "significant levels of infection" and urging BOP "to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions."[8] In his April 3 memo, Attorney General Barr noted the BOP's "profound obligation to protect the health and safety of all inmates," and directed it to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC," to "immediately maximize appropriate transfers" to home confinement, and to "begin implementing this directive immediately."[9] However, despite the urgency expressed in the Attorney General's directive and the severity of the outbreak at FCI Danbury, few from FCI Danbury had been

---

[7] The high percentage of positive tests is apparent from the data contained in a May 5, 2020 declaration from Warden Easter. (*See* ECF No. 24-2, Ex. A ¶¶ 83-85).

[8] Memorandum from Attorney Gen. to Director of Bureau of Prisons, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

[9] *Id.* at 1-2.

transferred to home confinement.

The Petition and Petitioners' Emergency Motion for Temporary Restraining Order and Preliminary Injunction, filed on April 30, 2020, sought a two-part response to the COVID dangers facing the class of all prisoners and the subclass of medically vulnerable prisoners at FCI Danbury. (ECF Nos. 14, 15). First, Petitioners alleged that the BOP had failed to abide by the Attorney General's directives and had not made full and sufficient use of its authority to transfer medically vulnerable individuals to home confinement to protect them against COVID-19 at FCI Danbury. To cure these failures, Petitioners sought orders requiring FCI Danbury to undertake the immediate transfer of medically vulnerable individuals to home confinement or other appropriate settings.

Second, Petitioners alleged that FCI Danbury had failed to implement the measures necessary to protect the entire prison population from COVID-19 infection. Petitioners further contended that FCI Danbury's failure to respond to the COVID-19 pandemic had put Petitioners and putative class members at unacceptably heightened risk of injury and illness unrelated to COVID-19; breakdowns in the healthcare system at FCI Danbury resulted in prisoners with urgent health needs going without necessary treatment. With respect to these failures, Petitioners sought immediate implementation of the social distancing and hygiene measures essential to lowering the risk of disease and death. Petitioners also requested measures be taken to bring the system of healthcare delivery at Danbury up to the constitutional minima.

*Temporary Restraining Order and Identification of Medically Vulnerable Individuals*

On May 12, 2020, after a hearing on petitioners' Motion on May 6, 2020, this Court issued a TRO granting in part Petitioners' request for provisional remedies.[10] (ECF No. 30). This Court found that the facts regarding the BOP's use of its home confinement authority were largely undisputed. As of May 5, only 21 people had been released on home confinement out of approximately 159 reviewed.[11]

---

[10] The Court also denied Respondent's Motion to Dismiss, which had been filed on May 5, 2020.
[11] During the discovery process, FCI Danbury officials were unable to say how many of the 159 people reviewed were medically vulnerable, or to account for the identities of everyone reviewed prior to the issuance of the TRO. Discovery

This Court held that those facts established that officials at FCI Danbury had made only limited use of their home confinement authority and other tools at their disposal to protect incarcerated people during the outbreak.

Accordingly, this Court entered an Order provisionally certifying the following class of individuals who are medically vulnerable to COVID-19 in accordance with CDC guidelines:

> All individuals in custody at FCI Danbury, while the threat of COVID-19 at the facility remains, who are aged 65 or over and/or who have any of the following conditions specifically identified by the United States Centers for Disease Control as putting them at higher risk for severe illness from COVID-19: (a) chronic lung disease including moderate to severe asthma, COPD, emphysema, chronic bronchitis, idiopathic pulmonary fibrosis and/or cystic fibrosis; (b) immunocompromised status, including status as a transplant recipient, on chemotherapy, HIV positive, prolonged use of corticosteroids, using immunosuppressive medication, and/or having an immune deficiency; (c) severe obesity (BMI of 40 or higher); (d) diabetes mellitus Type I or Type II, (e) gestational diabetes mellitus; (f) chronic kidney disease on dialysis; (g) chronic liver diseases, cirrhosis; and/or (h) serious heart conditions, including congestive heart failure, coronary artery disease, congenital heart disease, cardiomyopathy, and/or pulmonary hypertension.

(ECF No. 30 at 65-66 n.32).

The Court ordered expedited consideration of home confinement for all such medically vulnerable class members and set forth standards for determining their suitability for home confinement release. In its May 12 Order, the Court noted the main factual disputes between the parties regarding what measures Respondent had undertaken and the efficacy of those measures in protecting incarcerated individuals from a COVID-19 outbreak. The Court declined to issue a temporary restraining order compelling FCI Danbury to implement other safety protocols. (ECF No. 30 at 60-62). The Court scheduled an evidentiary hearing on Petitioners' Motion for Preliminary Injunction for June 11 and 12, 2020. (*Id.* at 74).

---

revealed that on April 1, 2020 FCI Danbury received a list from BOP of 238 individuals with COVID-19 risk factors. However, it appears that the facility took no action with respect to this list until after the lawsuit was filed. Even then, there was no process put in place to ensure that everyone on the April 1, 2020 list was reviewed for home confinement.

As a result of the TRO, the parties engaged in discussion on how to identify individuals imprisoned at FCI Danbury who were part of the Medically Vulnerable Class. Petitioners' counsel, using the expert assistance of Dr. Jaimie Meyer, an Assistant Professor of Medicine at Yale School of Medicine board-certified in internal medicine and infectious diseases and addiction medicine, identified a set of ICD-9 and ICD-10 codes that represented medical conditions identified by the CDC as high-risk factors for severe illness from COVID-19.

Respondent conducted a search of BOP medical records using those codes, and on May 15, 2020, as required by the TRO, Respondent filed an initial list identifying 314 inmates who were potential members of the Medically Vulnerable Class. ("List One Inmates"; *see* ECF No. 41). Subsequent to this initial search, Petitioners' counsel, with the assistance of Dr. Meyer, met and conferred with Respondent's counsel regarding conditions rendering individuals medically vulnerable that had been missed in the initial search and identified additional codes that more accurately captured the conditions that render someone medically vulnerable to COVID-19 in light of BOP's method of medical coding. Respondent agreed to run a second search of BOP's record systems, using a new set of ICD-9 and ICD-10 codes identified by Petitioners' counsel with the assistance of Dr. Meyer. Counsel's request resulted in BOP adding 111 individuals who were also potential members of the Medically Vulnerable Class.[12] Subsequently, and again at Petitioners' counsel's request, Respondent agreed to add an additional 14 inmates in the second list of inmates whom it agreed to treat as members of the Medically Vulnerable Class. ("List Two Inmates"; *see* ECF No. 134-1, at 27-29).

---

[12] Although Petitioners' counsel and Respondent agreed on the codes Respondent would search, Petitioners' counsel maintained that such a search, and any search reliant solely on ICD codes, would not identify all individuals who the CDC defines as medically vulnerable to COVID-19. With guidance from the Court, the parties put in place a system for Petitioners' counsel to review medical records to identify additional class members. Notice was provided to all prisoners of the lawsuit, and prisoners were given the opportunity to sign authorization forms giving Petitioners' counsel access to the records. (ECF No. 72).

_TRO-imposed Home Confinement Review Process_

Once individuals were identified, the TRO required Respondent to review the Medically Vulnerable Class for home confinement. On May 25, 2020, Respondent filed with the Court the results of its review of the List One Inmates. (ECF No. 59). After identifying errors, on May 28, 2020, this Court ordered re-review with input from a medical clinician of List One Inmates who had been denied, and specified that individuals meeting certain criteria be reviewed by the BOP's Home Confinement Committee in Washington, D.C. (_See_ ECF No. 68). The Court also directed the parties to try to reach an agreement about a process for generating a random sample of the materials reviewed by the Warden in making home confinement decisions to address "the Court's need to better understand the home confinement review process undertaken by the Warden in response to the temporary restraining order." (_Id._) Finally, the Court observed that many who had been approved for home confinement had still not been released, and ordered release of those approved by June 4, 2020 unless the Respondent demonstrated "that public safety or medical considerations or the absence of any home in which to place the inmate would make it unsafe to move the inmate immediately to home confinement." (_Id._).

On May 29, 2020, the Court ordered that individuals approved for RRC (halfway house) placements who did not have a "High" PATTERN score or a violent or sexually-related offense of conviction be placed on home confinement unless the Respondent demonstrated "that public safety or medical considerations or the absence of any home in which to place the inmate would make it unsafe to move the inmate immediately to home confinement." The Court stressed that "[t]he fact that a greater degree of supervision will be available at an RRC will not, by itself, be deemed sufficient to demonstrate that it is unsafe to move the inmate to home confinement." (ECF No. 70).

On June 9, 2020, Respondent filed declarations with the Court regarding the re-reviews and actions it had taken following the May 28 and May 29 Orders. (ECF No. 90-96). However, Respondent did not file with the Court the worksheets, or documentation, that accompanied these re-reviews. During the course of settlement discussions, on June 25 and 26, Petitioners received the review

worksheets for individuals who had been re-reviewed by the HCC following these Orders.[13] Respondent did not complete its home confinement review of the List Two Inmates prior to the parties' executing the Settlement currently before the Court.

*Discovery and Settlement Negotiations*

After the TRO issued, the parties entered into discovery. Petitioners' counsel reviewed approximately 20,000 pages of documents provided by Respondent in discovery, and responded to Respondent's discovery requests. (*See* Declaration of Attorney Sarah Russell, attached as Exhibit A, ¶ 8). Counsel retained expert witnesses and developed expert evidence in support of Petitioners' claims, conducted an inspection of the facility, reviewed competing expert reports regarding conditions at FCI Danbury and the BOP's response to those conditions, took and defended multiple depositions, and undertook substantial preparation for the preliminary injunction hearing scheduled by the Court. (*Id.* ¶¶ 9-10, 13).

As the case progressed, Petitioners' counsel spent countless hours communicating via email and telephone with men and women incarcerated in the three facilities at FCI Danbury, as well as with prisoners' family members and lawyers. (*Id.* ¶¶ 3-4, 6). Counsel gathered information about the challenges prisoners faced in accessing health care at FCI Danbury, the experiences of those in isolation and quarantine, and the inability of prisoners to socially distance in their housing units. (*Id.* ¶ 6). Counsel have communicated with at least 400 prisoners at FCI Danbury—including in the FSL, the Camp, and the men's prison—and with more than 150 lawyers and dozens of family members. (*Id.* ¶ 4). Counsel also reviewed home confinement worksheets, PATTERN scores, and medical records,

---

[13] Following the Court's May 28, 2020 order and between June 2 and June 9, the BOP conducted a review of *some* List One Inmates, but not all, with the input of a medical clinician. (ECF No. 90-1). Respondent then indicated that 30 were suitable for home confinement. (ECF No. 90-1, ¶ 8). However, this number included eight individuals who had already been approved for home confinement. The parties met and conferred over whether this re-review violated the May 28, 2020 order during the course of settlement proceedings, and Respondent agreed to undertake a re-review at FCI Danbury of those List One Inmates who had not been re-reviewed. Petitioners have not received documentation of these reviews but understand that none were granted home confinement upon re-review.

   Following the May 29, 2020 bail order, Respondent reported, *inter alia*, that 4 individuals approved for halfway houses were denied home confinement "due to public safety considerations." (ECF No. 95-1, ¶ 11).

identifying, where possible, errors in home confinement reviews. (*Id.* ¶ 11).   Counsel consulted with other lawyers litigating COVID-19 relating cases around the country, as well as leading prisoner rights and class action lawyers.  (*Id.* ¶ 13).

Shortly before the preliminary injunction hearing was scheduled to begin, the parties entered into settlement discussions. These discussions commenced on June 10, 2020, on the eve of the scheduled preliminary injunction hearing. (ECF No. 87). During the course of the four weeks that followed, the parties met with Magistrate Judge Farrish on nine separate occasions to attempt to reach settlement; in addition, the parties had direct interactions, as they worked to find common ground. With the guidance and supervision of Judge Farrish, the parties' counsel spent more than forty hours as they discussed, disputed, and deliberated over every detail of the Settlement. (ECF Nos. 99, 102, 109, 112, 115, 119, 120, 121, 123). During this time, counsel continued to prepare for a two-day preliminary injunction hearing, as it was not clear whether the discussions would result in a settlement. (*See* Ex. A, ¶ 13; ECF Nos. 87, 116). On July 27, 2020—six weeks after negotiations began—Petitioners and Respondent reached this Settlement. (ECF No. 128).

### B.   The Proposed Settlement

This Settlement builds on the benefits obtained as a result of the Court's Orders in this litigation on behalf of those imprisoned at FCI Danbury who are medically vulnerable as defined by the CDC. After this Court's TRO, 439 individuals were identified as medically vulnerable and included on List One and List Two. (*See* ECF No. 134-1, at 21-29). Since then, 145 of these medically vulnerable individuals have been released by BOP to home confinement or halfway house placements, or through other means including compassionate release orders by sentencing judges or by reaching the end of their sentence.[14] Despite new admissions at all three facilities, the overall population is down in each facility since when the lawsuit was filed: the FSL has dropped from 165 women to 123; the Camp from

---

[14] From List One, 85 people have been released by BOP to home confinement or halfway house placements, with 35 released through other means. From List Two, 14 have been released to home confinement or halfway house placements, and 11 have been released through other means.

153 women to 54, and the men's facility from 728 men to 648.[15]

The Class now certified for purposes of settlement (ECF No. 141) is comprised of individuals incarcerated at FCI Danbury who have already been identified as medically vulnerable as well as all those who are later identified as having a medical condition that places them or may place them at increased risk of severe illness from COVID-19 under CDC guidance. The Settlement provides a process for identification of new Class members, expedited home confinement review pursuant to standards set forth in the TRO, reconsideration for some Class members, and preservation of certain claims for the Class.[16]

_Identification of New Class Members_

The Settlement sets out a procedure for Class Counsel to identify additional members of the Class and requires Respondent to facilitate that process by informing newly incarcerated individuals of the Settlement and of their opportunity to have medical records reviewed by Class Counsel. (ECF No. 134-1, ¶¶ 4-5). Specifically, Class Counsel, with the appropriate authorization, will review medical records of those incarcerated at FCI Danbury and identify those individuals believed to be part of the Class to Respondent. (_Id._) Except in extraordinary circumstances, individuals who have been in BOP custody for two years or longer will be evaluated for qualifying conditions based exclusively on their BOP medical records, while individuals who have been incarcerated for fewer than two years may submit outside medical records. (ECF No. 134-1, ¶ 4(e)). Any disputes over whether a particular individual possesses the requisite medical conditions for membership in the Class is to be resolved by a physician detailed to BOP from the United States Public Health Service, Department of Health and Human Services. (_Id._ ¶ 4(c)).

---

[15] _Compare_ ECF No. 1, ¶ 35, _with_ BOP, "Population Statistics" (last updated Sept. 9, 2020), https://www.bop.gov/about/statistics/population_statistics.jsp.

[16] Along with the Settlement, though not enforceable as such, Respondent also sent Class Counsel a letter dated July 24, 2020 providing assurances and commitments to improve processes for testing and screening individuals for COVID-19 symptoms at the facility and healthcare delivery at FCI Danbury. (ECF No. 138-1).

*Expedited Home Confinement Review*

The Settlement then sets forth a home confinement review process based on the standards and criteria ordered by the Court in its TRO. The Settlement provides that all members of the Class identified in the future and all Class members on List Two are entitled to the Settlement's home confinement review process.[17] Each of these individuals is entitled to expedited home confinement review pursuant to the standards set forth in the Court's TRO. (*See* ECF No. 134-1, ¶¶ 2,3,6, *citing* ECF No. 30). Specifically, each individual is entitled to a home confinement review that, *inter alia*: (1) assign(s) substantial weight . . . to the inmate's risk factors for COVID-19; (2) sets forth in a Review Worksheet the factors considered in reaching a home confinement determination; (3) does not treat any particular consideration as an automatic disqualifier to home confinement; and (4) provides a written explanation of any factors relied upon in a determination to deny home confinement despite the danger to the incarcerated individual posed by the COVID-19 pandemic. (*See* ECF No. 30, at 33-34). A medical clinician must identify and list the individual's COVID-19 risk factors for consideration in the home confinement review.

If the individual is denied home confinement by the Respondent, the Settlement provides that the decision will be reviewed by the BOP's Home Confinement Committee (HCC) in Washington D.C. (ECF No. 134-1, ¶¶ 3, 6). A medical clinician must be a member of the HCC during each HCC review. (*Id.* ¶ 9). The HCC must assign substantial weight to each individual's COVID-19 risk factors and must provide a written explanation for every denial that details the reasons why home confinement was denied in accordance with the standards set out in the Court's TRO. (*Id.* ¶¶ 3, 6). The BOP will complete

---

[17] Reviews of List Two inmates were underway during settlement negotiations. On August 26, 2020, the results of the reviews were produced to Petitioners' counsel. Of the 125 individuals on List Two, 25 are no longer at FCI Danbury. Among those released, the review worksheets indicate that 6 were approved for home confinement, and 4 were approved for RRC placement. The remainder were released through means outside of this lawsuit including compassionate release orders from sentencing judges or by reaching the end of their sentence. Two people approved for home confinement and three approved for RRC placement have not yet been released.

the home confinement review process within a reasonable time from the individual's identification as medically vulnerable and shall endeavor to do so within 14 days. (*Id.* ¶ 6.)

If the home confinement decision relies on erroneous factual information or fails to apply the proper standards, the individual is entitled to re-review of the decision using the correct information and proper standards. Class Counsel will initiate and oversee the re-review process and, where necessary following meet and confer obligations, will present individualized home confinement reviews to this Court to enforce the terms of the Settlement. (*See* ¶¶ 12, 23).

### *Reconsideration by HCC of Some Class Members*

The Settlement also provides for reconsideration for home confinement by the HCC of a subset of Class members on List One who were previously reviewed for home confinement through this litigation and denied. (*See id.* ¶ 13; *see also id.* Ex. B). Class counsel identified 54 individuals from List One who were similarly situated to individuals who had been granted home confinement, and who had significant and material errors in the previous review. The Settlement provides for reconsideration by the HCC of these 54 individuals under the standards of the TRO and the terms of the Settlement. (*Id.* ¶ 13; Ex. B). [18]

### *Reconsideration based on Resolution of Release Plan or Pending Charges Issues*

Furthermore, Class members who are denied home confinement by the HCC based on unsuitable release plans or pending warrants, charges, or detainers are entitled to reconsideration for home confinement by FCI Danbury if those issues are resolved. (*Id.* ¶ 14).[19] If subsequently denied by

---

[18] Respondent agreed to have the HCC reconsider these reviews under the Settlement without conceding any error in the previous reviews. The remaining individuals on List One who were denied home confinement are not entitled to automatic reconsideration for home confinement pursuant to the Settlement. However, to the extent that the information on any individual's original home confinement review worksheet has changed based on a material change in circumstances or new information, the Settlement allows the person to submit documentation to be included in the his or her Central File and to seek re-review of the home confinement decision. Respondent has agreed that this provision applies to the entire Class.

[19] Paragraph 14 of the Settlement applies by its terms to all future members of the Class, all Class members on List Two, and all List One Class members who were denied home confinement by the Home Confinement Committee. The remaining List One Class members can seek reconsideration pursuant to the Settlement's allowance for a request for re-review in the event of a material change in circumstance or new information.

the institution, these individuals are entitled to another review by the HCC. These reviews too are governed by the standards of the TRO and the terms of the Settlement.

*Preservation of Future Injunctive Relief and Damages Claims*

In addition to the benefits the Settlement provides to Class members, it also preserves their ability to pursue other claims they may have against Respondent or BOP. Under the Settlement, Class members retain the right to pursue damages relief for Respondent's responses to the COVID-19 pandemic and retain the right to pursue injunctive relief against Respondent to provide adequate social distancing and other changes to the congregate housing conditions at FCI Danbury, for events and circumstances arising after July 27, 2020. (*Id.* ¶ 16). Class members also have the ability to continue pursuing sentence reduction/compassionate release motions filed pursuant to 18 U.S.C. § 3582. (*Id.*). Thus, the Settlement requires the Class to release Respondent only from any equitable relief claims arising out of the home confinement review process or Respondent's handling of the COVID-19 pandemic prior to July 27, 2020. (*Id.*). As such, the Settlement leaves intact any claim for recompense for prior constitutional harms and ensures that Class members (as well as all other individuals confined at FCI Danbury who are not Class members) are empowered to vindicate their right to constitutional conditions of confinement in the here and now as the pandemic crisis continues.

**C.    Notice to the Class.**

Pursuant to this Court's order of August 11, 2020 (ECF No. 141), Counsel worked with Respondent to distribute notice within FCI Danbury as directed by the Court.[20] Respondent has certified its compliance with distribution of notice throughout the facility (ECF No. 142). Class counsel also communicated with more than 300 individuals at FCI Danbury with whom counsel has a connection via the Corrlinks/Trulincs system. (Ex. A, ¶ 15). Counsel responded to questions, mailed

---

[20] The Court ordered Class Counsel to disseminate the Notice to the Class Members via Corrlinks/Trulincs. (ECF No. 141 at ¶ 10). Because Class Counsel cannot on their own disseminate a document to all individuals incarcerated at FCI Danbury (the potential Class members), Class Counsel caused the Notice to be disseminated via Corrlinks/Trulincs and paper posting via Respondent and BOP staff at FCI Danbury.

copies of the Settlement to those who requested it, and provided reminders about the deadline and manner of filing objections. (*Id.*). Overall, there have been more than 540 contacts to Class Counsel through the Corrlinks/Trulincs prison email system since the notice was published (*id.*), and additional contacts to Class Counsel by telephone or by emails from attorneys or family members of prisoners.

## LEGAL STANDARD FOR ASSESSING PROPOSED CLASS SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action may not be settled without the approval of the Court. The determination whether to approve a settlement is committed to the Court's discretion. *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000); *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008). As a matter of public policy, federal courts favor the settlement of disputed claims, particularly in complex class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources. Accordingly, this Court will take into consideration such public policy concerns in exercising its discretion") (citations omitted). When reviewing a proposed settlement of a class action, the Court must determine whether the proposed settlement is "fair, reasonable and adequate." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006). The Court must examine both the negotiating process leading to the settlement (procedural fairness) and the settlement's substantive terms (substantive fairness). *See* Fed. R. Civ. P. 23(e); *Wal-Mart*, 396 F.3d at 116; *In re Merrill Lynch Tyco*, 249 F.R.D. at 133.

Rule 23 was amended in 2018 to provide additional guidance and make uniform the criteria to consider when class action settlements are proposed. *See* Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The four key factors to consider are whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief

provided to the class is adequate; and (D) the proposal treats class members equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(A)-(D).

Prior to the 2018 amendments, courts in this Circuit determining the fairness of a proposed class action settlement applied the *Grinnell* factors drawn from the Second Circuit's 1974 opinion in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 463. The 2018 amendments elaborate upon, rather than displace, the *Grinnell* factors. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019), *citing* Fed. R. Civ. P. 23, 2018 Advisory Committee Notes ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Accordingly, the court considers both sets of factors in its analysis of whether the proposed settlement is fair, reasonable, and adequate, and whether to grant final approval. *In re Payment Card Interchange Fee*, 330 F.R.D. at 29; *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 33 (E.D.N.Y. 2019) ("Rule 23(e)(2)(C), however, requires the Court to consider specifically formulated subfactors that vary, albeit minimally, from the *Grinnell* factors").

## ARGUMENT

### I.   THE LENGTHY COURT-SUPERVISED NEGOTIATION THAT RESULTED IN THE SETTLEMENT WAS PROCEDURALLY FAIR.

The first two factors set forth in the 2018 amendments— whether: (A) the class representative and class counsel have adequately represented the class; and (B) the proposal was negotiated at arm's-

length—correspond to the traditional *Grinnell* factors focused on the procedural fairness of the settlement. "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 (VLB), 2012 WL 3589610, at *3 (D. Conn. Aug. 20, 2012) (citation omitted). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal–Mart*, 396 F.3d at 116; *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (noting that the presumption of procedural fairness under these conditions is "strong").

The Class in this case was represented by a highly experienced team of lawyers with blended expertise in class actions and civil rights litigation, including, in particular, conditions litigation on behalf of incarcerated individuals, and who are well acquainted with the factual and legal challenges and considerations in prosecuting such cases. Silver Golub & Teitell LLP has extensive experience in class action litigation and in assessing the reasonableness of class action settlements, having served as lead class counsel in a number of federal and state court class actions.[21] The firm also has prior involvement in class action litigation involving prison conditions at FCI Danbury. *See Miles, et al v. Bell*, Nos. B-79-137 (TFGD) & B-82-626 (TFGD) (D. Conn.) (resulting, mid-trial, in "voluntary"

---

[21] *See State Employees Bargaining Agent Coalition et al. v. Rowland, et al.,* 3:03-cv-221 (AVC) (D. Conn.) (class action against former Governor of State of Connecticut on behalf of unionized State workforce challenging decision to target union members for lay-off in retaliation for their and their unions' exercise of their First Amendment rights of speech and association, resulting in back pay and other relief to approximately 2,800 workers who suffered adverse employment action and compensatory damages to an additional 45,000 state workers for the chilling of their First Amendment rights); *Oshonya Spencer, et al. v. Hartford Financial Services Group, Inc.*, 3:05-cv-1681 (JCH) (D. Conn.) (class action against national insurance company and its property and casualty subsidiaries on behalf of almost 22,000 nationwide class members challenging structured settlements entered into by defendant with personal injury claimants resulting in the creation of a $72.5 million common fund); *Anglim v Xerox Corporation*, Civ. No. B-83-251 ( EBB)  (D. Conn.) (class action resulting in increased benefits to a class of approximately 40,000 members of Xerox's pension plan); *Christiansen v. Chesebrough Pond's, Inc.,* No. 592 CV 727 (AHN) (D. Conn.) (class action resulting in severance awards to a class of 45 former employees of Chesebrough Pond's); *Town of New Hartford et al. v. Connecticut Resources Recovery Authority,* 291 Conn. 433 (2009) (class action on behalf of 70 Connecticut municipalities resulting in judgment in excess of $35 million); *see also Heidgerd v. Olin Corporation,* Civ. No. N-86-51 (TFGD) (D. Conn.), *aff'd,* 906 F.2d 903 (2d Cir. 1990) (action on behalf of 178 former employees of Olin Corp resulting in award of severance benefits to all plaintiffs); *Rodriguez v. Progressive Northwestern Insurance Company*, No. UWY CV-00-0160554 S (X06) (Conn. Super. CLD at Waterbury); and *Diglio v. Nationwide Mutual Insurance Company*, No. UWY-CV-00-0161135 (X06) (Conn. Super. CLD at Waterbury) (class actions pursuant to the Connecticut Unfair Trade Practices Act and Unfair Insurance Practices Act on behalf of 814 and 129 personal injury claimants respectively whose personal injury claims were  improperly settled by the defendant insurance companies in violation of Conn. Gen. Stats. § 52-572a).

changes by the BOP in the conditions for pre-trial detainees at Danbury). Complementarily, the

Quinnipiac, Yale Law School, and University of Buffalo legal clinics have extensive experience in

litigation, including habeas class action litigation, on behalf of prisoners and other detained persons

both in Connecticut and nationwide.[22]

In determining whether a class action settlement is fair, reasonable and adequate, courts

consider the stage of the proceedings and the amount of discovery completed to ensure that class

counsel had access to sufficient information to evaluate their case properly and to assess the adequacy

of any settlement proposal. *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Chatelain v.*

*Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 213-14 (S.D.N.Y. 1992); *In re Global Crossing*, 225

---

[22] Professor Marisol Orihuela has, individually or through the clinic she directs, been lead counsel in multiple actions on behalf of immigration detainees, including *Reid v. Donelan*, CV 13-30125 PBS (D. Mass), 19-787, 19-1900 (1st Cir.) (habeas class action challenging prolonged no-bond detention), *Franco-Gonzalez v.Holder*, CV 10-02211 DMG (C.D. Cal) (class action successfully establishing right to counsel on behalf of immigration detainees who are not competent to represent themselves in removal proceedings); *JSR v. Sessions*, 3:18 CV 1110 (VAB) (D. Conn.) (habeas action on behalf of detained children challenging Immigration and Customs Enforcement (ICE)'s family separation and detention practice); *Campbell, et al v. Moniz*, CV 20-10697 PBS (D. Mass) (multi-petitioner COVID-19 habeas on behalf of immigration detainees); *Terwilliger v. Cook*, No. 3:20 CV 540 (SRU) (D. Conn) (COVID-19 habeas on behalf of state prisoner); *Hurdle v. Cook*, 3:20 CV 605 (KAD) (D. Conn) (same); *Diaz v.Cook*, 3:20 CV 653 (KAD) (D. Conn) (same); *Thiersaint v. DHS*, CV 18-12406 DJC (D. Mass) (Federal Tort Claims Act action seeking damages for torts committed while plaintiff was in ICE custody). Attorney Orihuela is also counsel in *Batalla-Vidal v. Wolf*, 291 F.3d 260 (E.D.N.Y 2018), 18-845 (2d. Cir.), *aff'd in part and rev'd in part sub. nom. Department of Homeland Security v. Regents of the University of California*, 140 S.Ct. 1891 (2020) which successfully challenged the Trump Administration's 2017 attempted termination of the DACA program.

Professor Sarah Russell, Director of the Legal Clinic at Quinnipiac, and Tessa Bialek, Senior Clinical Fellow and Staff Attorney in Quinnipiac's Legal Clinic, have extensive experience representing prisoners. At Quinnipiac as well as in her capacity as Director of the Liman Public Interest Program and clinical co-supervisor at Yale Law School, Russell has litigated numerous cases involving prisoners in the U.S. District Court for the District of Connecticut. *See, e.g.*, *United States v. Almontes*, No. 3:05 CR 58 (SRU), 2020 WL 1812713 (D. Conn. Apr. 9, 2020) (compassionate release motion granted on behalf of man at FCI Danbury based, *inter alia*, on BOP's failure to provide adequate medical care for his spinal cord injury); *Bardo v. Wright*, No. 3:17 CV 1430(JBA), 2019 WL 5864820 (D. Conn. Nov. 8, 2019) (court denied summary judgment in case alleging deliberate indifference to client's serious medical needs); *Brodeur v. Champion*, No.3:17 CV 1738 (RMS) (D. Conn.) (litigated through trial prisoner excessive force case); *Milner v. Black*, 3:16-cv-1621 (SRU) (D. Conn.) & *Milner v. Mulligan*, 3:16-cv-1857 (D. Conn.) (appointed pro bono counsel to incarcerated client asserting claims of excessive force and deliberate indifference to his medical needs); *Jane Doe v. Corrections, et. al*, No. 3:14 CV 00469-RNC (D. Conn.) (appointed guardian ad litem in case challenging transfer by the Department of Children and Families of 16-year-old transgender girl to adult prison absent charges or conviction in adult court); *Goode v. Blue*, No. 3:10 CV 135MRK (D. Conn.) (appointed pro bono counsel for client alleging assault by a correctional officer at Connecticut's supermax prison); *Forde v. Baird*, 720 F. Supp. 2d 170 (D. Conn. 2010) (successfully challenged on religious freedom grounds the BOP's policy of subjecting a Muslim woman to non-emergency pat searches by male correctional officers at FCI Danbury); *Ilina v. Zickefoose*, 591 F. Supp. 2d 145, 145 (D. Conn. 2008) (habeas petition filed under 28 U.S.C. § 2241 on behalf of woman incarcerated at FCI Danbury alleging denial of adequate medical care).

Professor Alexandra Harrington is the Director of the Criminal Justice Advocacy Clinic at the University of Buffalo. She was a Deputy Assistant Public Defender in the Connecticut Division of Public Defender Services from 2014-2018, and has represented clients in habeas corpus proceedings in state court, in appeals in the state appellate and supreme court, in motions to correct an illegal sentence, and in parole hearings before the Connecticut Board of Pardons and Paroles.

F.R.D. at 458 (this requirement "is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them'") (citation omitted). When weighing this factor, the Court "need not find that the parties have engaged in extensive discovery. . . Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d at 176 (internal quotations and citations omitted).

Throughout the litigation, and for weeks prior to bringing suit, counsel spent hundreds of hours in communication with the named class representatives and countless other prisoners at FCI Danbury and became thoroughly acquainted with the conditions at the prison, the problems with medical care delivery at the facility and the specific medical vulnerabilities of Class members, including the experiences of those in isolation and quarantine, and the inability of prisoners to socially distance in their housing units. (Ex. A ¶ 6). The level of detail of counsel's understanding of both the conditions in the facility and the unique medical needs of the members of the Class is fully evidenced in the 19 prisoner declarations submitted as exhibits to the original Petition and Petitioners' Motion for Temporary Restraining Order—the vast majority of which were prepared as a result of ongoing back and forth Corrlinks communications with Class members while the prison was closed to visitors during the pandemic. (*Id.* ¶ 5). Counsel also pursued extensive additional contacts on behalf of Class members with their families and legal representatives including obtaining voluminous medical records and other relevant documentation about the circumstances of their convictions and incarceration. (*Id.* ¶ 6). All told, throughout the period of preparing and litigating this case, counsel has had ongoing communications with at least 400 prisoners at FCI Danbury—including in the FSL, the Camp, and the men's prison—and at least 150 lawyers and dozens of family members. (*Id.* ¶ 4).

In addition to these investigations prior to and outside of the litigation process, as this Court is aware from its active involvement in the management of this case, counsel has also been involved in

significant information-gathering through intensive litigation and discovery. Between April 27, 2020

and June 8, 2020, Class Counsel:

- Engaged in formal written discovery including propounding and responding to an extensive series of requests for admission, requests for production, and interrogatories, as well as conducting informal discovery;

- Reviewed approximately 20,000 pages of documents produced by Respondent in discovery including class medical records, BOP policies, staff emails, and documents recounting Respondent's actions following onset of the COVID-19 pandemic;

- Retained two experts, Dr. Jaimie Meyer and Dr. Homer Venters, who prepared expert reports in this matter. Dr. Venters conducted a physical inspection at FCI Danbury prior to issuing his report along with a member of the Class Counsel team;

- Conducted six depositions, including a 30(b)(6) deposition of Respondent's representative regarding healthcare delivery and conditions at FCI Danbury and depositions of Respondent's two expert witnesses, Mr. Beard and Ms. Tekbali;

- Defended depositions of Petitioners' two expert witnesses and defended the deposition of a named petitioner in the action;

- Filed a motion for sanctions against Respondent for spoliation seeking to ensure that in the future crucial medical records would not be destroyed prior to Class Counsel's ability to review them; and

- Prepared to present testimony and evidence at a preliminary injunction hearing before this Court.

(Ex. A, ¶¶ 8-10, 12-14).

Counsel has also fully investigated the considerations relevant to the home confinement

determinations that are at the heart of the relief sought for the medically vulnerable Class members.

Counsel have scrutinized home confinement worksheets and PATTERN scores, comparing them,

where possible, to information available from other sources including medical records, dockets of

underlying criminal cases and presentence reports. (*Id.* ¶ 11). Counsel have been aggressive in

identifying errors in information utilized in the BOP's home confinement reviews and have brought

those errors to the attention of Respondent's counsel and, where appropriate, in filings to this Court.

(*Id.*; *see also* ECF No. 67).

There is no question that this intensive information-gathering and discovery process—which included motion practice and every form of discovery available to the parties—was "sufficiently adversarial that [it was] not designed to justify a settlement . . . [,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998). Class Counsel therefore had ample information to evaluate the strengths and weaknesses of the claims and defenses asserted and the propriety of settlement. *See Chatelain*, 805 F. Supp. at 213-14 ("Given that document discovery and extensive discussions have already been conducted and resulted in the Stipulation of Settlement, all counsel are undoubtedly acting with a firm grasp of the strengths and weaknesses of the case."); *Ingles v. Toro*, 438 F. Supp. 2d 203, 213 (S.D.N.Y. 2006) (settlement negotiated after extensive discovery supports a finding of procedural fairness).

In short, Class Counsel had a "clear view of the strengths and weaknesses of their cases and of the adequacy of the settlement." *In re Sturm*, 2012 WL 3589610, at *5 (internal citation omitted). Thus, Class Counsel have clearly satisfied the first inquiry under the 2018 amendments (whether counsel have adequately represented the class) and their considered judgment that the Settlement meets the requirements of Rule 23(e) is entitled to "great weight." *In re NASDAQ*, 187 F.R.D. at 474; *see also Aramburu v. Healthcare Financial Services, Inc.*, No. 02-CV-6535, 2009 WL 1086938, at *2 (E.D.N.Y. Apr. 22, 2009) ("[I]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is entitled to a great weight") (quotations omitted).

The procedural fairness of the Settlement is also supported by the fact that it was the product of arms-length negotiations that involved long sessions over complex issues. The parties spent more than six weeks in negotiations. During that period, they often corresponded several times a day to discuss every textual and practical nuance of the resulting agreement while continuing to prepare for a preliminary injunction hearing.

Furthermore, the parties were fortunate to have this Court's assistance. Negotiations proceeded under the thoughtful guidance of Judge Farrish, who convened nine settlement conferences over the

course of four weeks. (ECF Nos. 99, 102, 109, 112, 115, 119, 120, 121, 123). In total, the parties

participated in more than forty hours of Court-supervised negotiation before a settlement was finally

reached and in the face of a looming hearing on Petitioners' Motion for Preliminary Injunction.

Together, these circumstances reflect a negotiating posture that was not only arms-length but often

contentious. Thus, the Settlement also satisfies the Rule 23(e)(2)(B) prong. *See Ingles v. Toro*, 438 F.

Supp. 2d 203, 213 (S.D.N.Y. 2006) (approving injunctive class settlement in prisoner lawsuit where

"the litigation was hard-fought and the settlement negotiations . . . were extended and involved the

Court"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000),

*aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (approving class settlement as

the product of arms-length negotiations, where "at points the negotiations were extremely

contentious"); *see also Wal–Mart*, 396 F.3d at 117 (noting that district court held that "there could not

be any better evidence of procedural integrity than the aggressive litigation . . . and the impassioned

settlement negotiations that produced an agreement on the brink of trial").

The arms-length nature of negotiations, the extensive discovery conducted under the press of

an upcoming preliminary injunction hearing, and the experience of Class Counsel each amply support

a finding that the negotiations that ultimately resulted in this Settlement were procedurally fair. *See In

re Sturm*, 2012 WL 3589610, at *4.

## II. THE SETTLEMENT AGREEMENT IS SUBSTANTIVELY FAIR, REASONABLE, AND ADEQUATE.

The last two prongs of the new Rule 23(e)(2)—whether: (C) the relief provided to the class is

adequate; and (D) the proposal treats class members equitably relative to one another—are concerned

with whether the Settlement is substantively fair, reasonable, and adequate, and, in this Circuit, are

evaluated with reference to the traditional *Grinnell* factors. *In re Payment Card Interchange Fee*, 330

F.R.D. at 29; *Berni*, 332 F.R.D. at 33.[23]  "For a settlement to be substantively fair, not every factor must

---

[23] Where, as here, a class action seeks declaratory and injunctive relief, a reviewing court need only consider the first six *Grinnell* factors. *See Marisol A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani*, 218

weigh in favor of settlement, rather, the court should consider the totality of these factors in light of the particular circumstances." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *7 (D. Conn. Nov. 3, 2016) (internal citations and quotation marks omitted).

### A.  <u>The Proposed Settlement Provides Significant Benefits to the Class</u>

As set forth in detail above, the Settlement builds on the benefits obtained in this litigation on behalf of those imprisoned at FCI Danbury who are medically vulnerable as defined by the CDC. The BOP has committed that it will conduct its home confinement determinations as to all individuals identified as medically vulnerable in this litigation pursuant to the standards and criteria set forth by the Court in the TRO entered in this action.

In addition to the guaranteed implementation of the criteria set forth in the TRO, the Settlement provides four discrete benefits to the Class—each of which applies without regard to the current extent of COVID-19 in the facility and none of which would have been available absent this Settlement: (1) a procedure for identification of new medically vulnerable Class members with oversight by Class Counsel; (2) expedited home confinement review pursuant to standards set forth in the TRO with oversight by Class Counsel; (3) reconsideration of home confinement denials for some Class members; and (4) reconsideration in the event of certain changed circumstances.

In addition, the Settlement leaves intact Class members' right to pursue monetary relief for any constitutional violations occasioned by the conditions of their confinement and permits pursuit of any claims for injunctive relief arising after the effective date of the Settlement. Finally, although not enforceable as such, as part of the Settlement, Respondent also sent Class Counsel a letter dated July 24, 2020 providing assurances and commitments to improve processes for testing and screening individuals for COVID-19 symptoms at the facility and to improve healthcare delivery at FCI Danbury.

---

F.3d 132 (2d Cir. 2000), and, with respect to the fifth, the court evaluates the risks of establishing remedies instead of the risks of establishing damages. *Id.*

1. Identification of New Class Members

First, the Settlement creates an entirely new procedure for the identification of all prisoners currently at or newly transferred into FCI Danbury who are medically vulnerable to COVID-19 which applies for the entire duration of the agreement—without regard to whether COVID-19 is prevalent (or even present) at the facility at the time such medically vulnerable individuals are identified. The Settlement assures that newly incarcerated individuals will be informed of the Settlement and of their opportunity to have medical records reviewed by Class Counsel and, upon a showing of a qualifying medical condition, to receive the expedited home confinement review guaranteed to Class members under the Settlement. (ECF No. 134-1, ¶¶ 4-5). Where there are disputes as to an individual's eligibility for Class membership, the Settlement provides a mechanism for third party review by a physician detailed to the BOP from the United States Public Health Service—a significant derogation from the BOP's otherwise exclusive discretion. (*Id.* ¶ 4(c)). The inclusion of prospective class members, and a guaranteed mechanism to review their medical records for eligibility for class membership with Class Counsel oversight is a unique benefit of the Settlement that would not otherwise be available to future FCI Danbury prisoners.

2. Expedited Home Confinement Review Pursuant to the TRO Standards

The Settlement sets forth a home confinement review process that applies to all members of the Class who are identified as medically vulnerable in the future and all Class members on List Two. The Settlement provides these individuals with the right to *expedited* home confinement review and requires such determinations to be undertaken in accordance with standards and criteria ordered by the Court in its TRO, in effect constraining to some degree the BOP's discretion with respect to those determinations. Specifically, each individual is entitled to a home confinement review that, *inter alia*: (1) assign(s) substantial weight . . . to the inmate's risk factors for COVID-19; (2) sets forth in a Review Worksheet the factors considered in reaching a home confinement determination; (3) does not treat any particular consideration as an automatic disqualifier to home confinement; and (4) provides a written

explanation of any factors relied upon in a determination to deny home confinement despite the danger to the incarcerated individual posed by the COVID-19 pandemic. (*See* ECF No. 30, at 33-34). Moreover, the Settlement provides an additional procedural protection by requiring that a medical clinician must identify and list the individual's COVID-19 risk factors for consideration in the home confinement review. And, any individual denied home confinement after review by the Warden at Danbury is entitled to review by the BOP's Home Confinement Committee (HCC) in Washington D.C. (ECF No. 134-1, ¶¶ 3, 6).

The Settlement, thus, both implements standards which circumscribe to some degree the BOP's discretion to make home confinement determinations *and* creates a paper record that permits oversight of those determinations for factual and/or procedural errors by class counsel and, where appropriate, by the Court. BOP's commitments under the Settlement to both tailor its exercise of discretion in accordance with the standards set forth in the TRO (which would otherwise lapse absent further litigation) and to permit oversight over the process (which would be wholly unavailable absent continued litigation)—is a significant material benefit to the Settlement Class.

3. Re-Review and Error Correction

Because the Settlement requires preparation of the Review Worksheet and written explanation of the reasons for denial, with oversight by Class Counsel, the Settlement also affords Class members the unique benefit of obtaining re-review where a home confinement decision is shown to rest on erroneous factual information or fails to apply the proper standards and, where appropriate, allows for judicial review of any such improper determinations.[24] (*Id.* ¶¶ 12, 23).

---

[24] In this regard, Class Counsel identified 54 individuals from List One who were similarly situated to individuals who had been approved for home confinement and had significant and material errors in their previous review. The Settlement provides for reconsideration by the HCC of these 54 individuals under the standards of the TRO and the terms of the Settlement.

4.   Reconsideration based on Changed Circumstances

Finally, the Settlement specifically guarantees all future Class members, all Class members on List Two, and a significant number of Class members on List One who were or are in the future denied home confinement by the HCC based on unsuitable release plans or pending warrants, charges, or detainers the right to   reconsideration for home confinement by FCI Danbury if those issues are resolved and, if denied at the level of the institution, further entitles them to review by the HCC. (*Id.* ¶ 14).[25] These reviews—again, not specifically available in the absence of the Settlement —are governed by the standards of the TRO.

Moreover, the Settlement provides these benefits while leaving intact class members' individual rights to pursue damages relief for Respondent's responses to the COVID-19 pandemic and to pursue injunctive relief against Respondent to provide adequate social distancing and other changes to the congregate housing conditions at FCI Danbury, for events and circumstances arising after July 27, 2020. (*Id.* ¶ 16). Class members also have the ability to continue pursuing sentence reduction/compassionate release motions filed pursuant to 18 U.S.C. § 3582. (*Id.*).

Indeed, there is a concrete measure of the benefits of the terms of this Settlement. Since the commencement of this litigation—and due to the continued implementation of the requirements of the TRO during the pendency of the settlement negotiations and as a result of the Settlement—145 Danbury prisoners identified as medically vulnerable to COVID-19 have been  released to home confinement or halfway house placements.

**B.**   **The Relief Provided to the Class Is Clearly Adequate in Light of the Costs, Risks and Delay of Trial and Appeal.**

1.   The Complexity of Continued Litigation and the Benefit of Avoiding Delay

---

[25]   The remaining List One Class Members who were reviewed for and denied home confinement prior to the Settlement may seek reconsideration pursuant to the Settlement's allowance for a request for re-review in the event of a material change in circumstance or new information.

This multi-party habeas corpus action is complex *per se*. *See U. S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974) (noting that district courts must craft procedures for multi-party habeas litigation based on the nature of the specific claims raised); *see also* Ronald P. Sokol, *Federal Habeas Corpus Practice*, 20 Am. Jur. Trials 1 (2020) ("Habeas corpus proceedings in federal courts present many complex problems"); *In re Global Crossing Sec.*, 225 F.R.D. at 455 (S.D.N.Y. 2004) (noting that federal courts favor settlement in "especially complex and large-scale disputes").

Petitioners' habeas petition sought preliminary relief in the form of admission to bail for many individuals. *See Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *14-*15 (D. Conn. May 12, 2020) (this Court noting that bail may be an appropriate interim remedy at habeas even in a multi-party proceeding). Bail determinations in the context of a petition for habeas corpus require individualized assessments before a court can determine whether to grant bail to a particular petitioner. *See Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (individuals must demonstrate that "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective").

Rather than what could be a more protracted process, the Settlement establishes an expedited procedure to have hundreds of medically vulnerable individuals reviewed for home confinement and released from FCI Danbury if appropriate, and the Settlement provides for Court involvement only when necessary. (ECF No. 134-1, ¶ 23). Given the requisite time and effort for individual bail determinations, the Settlement provides an immediately useful remedy relatively quickly for members of the Class. *See Romero v. La Revise Assocs., L.L.C.*, 58 F.Supp.3d 411, 420-21 (S.D.N.Y. 2014) (noting that "the large number of class members [486] and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive").

Under the rubric of this litigation, multiple members of the Class have already secured release to home confinement pursuant to pre-compliance with the terms of this Settlement. Were the parties to instead proceed to an evidentiary hearing in this matter, the risks to medically vulnerable individuals

at FCI Danbury could escalate, especially if another COVID-19 outbreak takes place. In contrast, upon Court approval of this Settlement, the benefits of the Settlement can be immediately provided. This agreement will help move as many vulnerable individuals as possible out of FCI Danbury—which was a principal goal of this litigation. The Settlement, moreover, incorporates this Court's expectation that any such releases occur within 14 days after approval. (ECF No. 134-1, ¶ 11). *See In re Veeco Instruments Inc. Securities Litigation*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *1, *6 (S.D.N.Y. Nov. 7, 2007) (noting the virtues of "guaranteed immediate relief for the Class" as opposed to "delays associated with the continued litigation"); *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029 (CM), 2016 WL 5811888, at *5 (S.D.N.Y. Sept. 23, 2016) (prompt relief by settlement weighed favorably under the first *Grinnell* factor).

### 2. The Risks to Obtaining Relief

Petitioners' underlying Eighth Amendment claims rest on a shifting factual and legal landscape. Facts are changing daily at FCI Danbury and around the country as the virus spreads—and while some states are experiencing an increase in their infection rate, others are experiencing a temporary hiatus. Moreover, Respondent has made active use of home confinement as a result of this litigation and has also updated policies and practices purportedly to improve access to healthcare at Danbury. (*See* ECF No. 57-1, ¶ 21; Ex. B). It is unclear how this Court would view these adjustments if litigation proceeded. *See Martinez-Brooks*, 2020 WL 2405350, at *29 (noting at the outset that the Warden's implementation of safety protocols in response to COVID-19 and whether it violated Eighth Amendment standards would be a detailed factual question for evidentiary hearing). Instead of pressing for judicial resolution in these uncharted waters, Class Counsel have secured a settlement that ensures Counsel will remain an integral part of the home confinement review process under the supervision of this Court—insulating protections for medically vulnerable individuals from further alteration or appeal.

Whether the BOP's response to the COVID-19 pandemic and to the Attorney General's memorandum suffices as a matter of constitutional law is also hotly debated. There have been many

cases brought across the country related to people in detention who— whether held as immigrants, pre-trial detainees, or post-conviction—are exposed to a substantial risk of contracting COVID-19. The resultant judicial orders have varied over time and place. In some instances, judges have ordered release on bail, called for facilities inspections, or mandated testing, sanitation, and other distancing protocols. *See*, *e.g.*, *Mays v. Dart*, No. 20-1792, 2020 WL 5361651, at *9 (7th Cir. Sept. 8, 2020); *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 4496597, at *1 (E.D. Mich. Aug. 4, 2020); *Wilson v. Ponce*, No. CV 20-4451-MWF (MRWx), 2020 WL 5118066 (C.D. Cal. July 14, 2020); *Banks v. Booth*, No. 20-849 (CKK), 2020 WL 3303006, at *12 (D.D.C. June 18, 2020); *Seth v. McDonough*, No. 8:20-cv-01028-PX, 2020 WL 2571168, at *14 (D. Md. May 21, 2020); *Savino v. Souza*, No. NO. 20-10617-WGY, 2020 WL 1703844, at *9 (D. Mass. Apr. 8, 2020).

In several other cases, appellate courts have remanded or reversed preliminary orders or district courts have denied emergency relief altogether. *See*, *e.g.*, *Barnes v. Ahlman*, No. 20A19, ___ S.Ct. ___, 2020 WL 4499350 (Aug. 5, 2020); *Swain v. Junior*, 961 F.3d 1276, 1294 (11th Cir. 2020); *Wilson v. Williams*, 961 F.3d 829, 845 (6th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020); *Fernandez-Rodriguez v. Licon-Vitale*, No. 20 Civ. 3315 (ER), 2020 WL 3618941, at *33 (S.D.N.Y. July 2, 2020); *Chunn v. Edge*, No. 20-cv-1590 (RPK) (RLM), 2020 WL 3055669, at *28 (E.D.N.Y June 9, 2020). This legal uncertainty makes protracted litigation likely in the absence of settlement, as in many other cases litigants have sought and continue to seek appellate review.

Moreover, in addition to questions of liability and remedy are issues of procedure. Many courts have approved multi-party proceedings for COVID-19 detention cases. *See*, *e.g.*, *Wilson*, 961 F.3d at 838 (petitioners alleging danger from COVID-19 in confinement could seek class habeas relief "[t]o the extent [they] argue the alleged unconstitutional conditions of their confinement can be remedied only by release"); *Valenzuela Arias v. Decker*, No. 20 Civ. 2802, 2020 WL 2306565, at *2 (S.D.N.Y. May 8, 2020); *Ferrerya v. Decker*, No. 20 Civ. 3170 (AT), 2020 WL 1989417, at *3 (S.D.N.Y. Apr.

27, 2020) ("The extraordinary circumstance of the COVID-19 crisis warrants a multi-party habeas petition permitting expeditious resolution of the claims before the Court"). Yet, as this Court noted, the issue has not been definitively settled. *See Martinez-Brooks*, 2020 WL 2405350, at *30 (considering "on a provisional basis, whether multi-party treatment is likely appropriate *as to this claim* and the associated relief" and identifying that "the scope of [] inquiry as to multi-party treatment need not extend beyond the scope of the claim addressed by this ruling") (emphasis added).

Here, as in many other cases, Class Counsel believes that this action was properly brought as a multi-party/class action proceeding. However, litigation about this case status is yet another reason to come to a settlement. *See Chatelain,* 805 F.Supp. at 214 ("Even if certified, the class would face the risk of decertification"); *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 284 (S.D.N.Y. 1999) (the risk of the class being decertified, in which case the class members would recover nothing, favored approval of the proposed settlement); *In re NASDAQ*, 187 F.R.D. at 476-477 (risk of class being decertified at trial or risk of class certification being reversed on appeal supported approval of settlement); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *8 (D.N.J. Nov. 9, 2005) (noting that "the risks faced by Plaintiffs with regard to class certification weigh in favor of approving the Settlement").[26]

In short, this factual and legal landscape weighs in favor of approving the Settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) ("the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (identifying the risk of appeal as weighing in favor of settlement despite potentially favorable treatment at the district court level); *see also Carson v. American Brands, Inc.*, 450 U.S. 79, 88 (1981) (noting that the court need not "decide the merits of the case or resolve unsettled legal questions" to approve settlement).

---

[26] Approval of the Settlement also obviates the need for Class Counsel to continually identify new class representatives when old class representatives are released to home confinement—which has already presented problems for the parties during the course of this litigation. *See supra* note 2.

### C.  The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to assess whether the Settlement "treats class members equitably relative to each other." As set forth in the Advisory Note to the 2018 amendments, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims. Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. Thus, "equitable" treatment does not require identical treatment. *See, e.g., Radcliffe v. Hernandez*, 794 Fed. Appx. 605, 607 (9th Cir. 2019) ("Rule 23's flexible standard allows for the unequal distribution of settlement funds so long as the distribution formula takes account of legitimate considerations and the settlement remains 'fair, reasonable, and adequate'"); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (MKB)(JO), 2019 WL 6875422019 at * 27 (E.D.N.Y. Dec. 16, 2019) (approving settlement as "equitable" notwithstanding that merchants who were in the class for only a portion of the class period would have to release claims for the full class period without much compensation, while others might receive proportionally more compensation with the same release).

The Settlement in this case creates a process for home confinement review. The question posed by Rule 23(e)(2)(D) is whether that process applies equitably to all members of the class. Since every member of the Class possesses unique circumstances relevant to a home confinement assessment, the *results* of that process will necessarily be different among the members of the Class. The relevant question is, thus, not whether the process results in the same relief for every member of the Class but whether all Class members had or have the same opportunity to avail themselves of the home confinement process set forth in the settlement. The Settlement is still fair and treats Class members equitably notwithstanding that the process results in different determinations by the Respondent based on legally permissible considerations.

The home confinement review provided in the Settlement affords a review that, *inter alia*: (1) assign(s) substantial weight . . . to the inmate's risk factors for COVID-19; (2) sets forth in a Review

Worksheet the factors considered in reaching a home confinement determination; (3) does not treat any particular consideration as an automatic disqualifier to home confinement; and (4) provides a written explanation of any factors relied upon in a determination to deny home confinement despite the danger to the incarcerated individual posed by the COVID-19 pandemic. The only distinction in treatment among the Class members is that certain List One members who received their home confinement review pursuant to the standards set forth in the Court's TRO, but before those terms of the TRO were incorporated into the Settlement, *see* n.19, *supra*, are not entitled to automatic reconsideration whereas List One members who were identified in Exhibit B to the Settlement are entitled to such reconsideration. The individuals on Exhibit B who received such reconsideration had significant and material errors in their previous review and were, on the face of the worksheets, similarly situated to individuals who had been granted home confinement—a consideration on which the Court had specifically relied in issuing its own Orders requiring HCC review during earlier proceedings in this matter. (*See,* e.g.*,* ECF No. 68). Moreover, the List One members excluded from the benefits of automatic reconsideration may nevertheless seek reconsideration along with other Class members pursuant to the Settlement's allowance for a request for re-review in the event of a material change in circumstance or new information. Thus, to the extent that any difference between automatic  re-review and "material change of circumstance" re-review may inform the ultimate outcome of such re-review, the differential treatment with respect to this process among members of the Class was both principled and equitable—and premised on factors which both the BOP and the Court had previously treated as legally relevant. *See* Fed. R. Civ. P. 23(e)(2)(D) (settlements must treat "class members equitably relative to each other"); William H. Rubenstein, 5 Newberg on Class Actions § 13.44 (5th ed. June 2020 Update) (noting that a settlement is still equitable where "class members should be treated differently because they are situated differently"); *see also Clark v. Duke University*, 2019 WL 2588029, at *5–6 (M.D. N.C. 2019) (noting that "different circumstances" justified different treatment of class members and that settlement was both fair and equitable).

**D. The Objections Raise Understandable Concerns but Do Not Warrant Rejection of the Settlement**

Counsel have filed this lawsuit on behalf of incarcerated people at FCI Danbury and have learned from many of them that they approve of this Settlement, while others have registered to Counsel and to this Court their concerns and opposition. Below, Counsel explain the kinds of objections received and our views on how to weigh them. Moreover, because it remains unclear who may become a member of the Class in the future, Counsel urge the Court to consider all objections, whether the individual has been recognized already as a member of the Class or not. Although non-class members lack standing to object to the Settlement under Rule 23, *see Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989), at this juncture it is not possible to know whether any individual imprisoned at FCI Danbury who is not already identified as a Class member nevertheless has standing to object—as individuals may be identified as Class members in the course of execution of the Settlement. (ECF No. 134-1 ¶¶ 4-5) (provisions for identifying medically vulnerable). Class Counsel also urge the Court to consider objections received by the Court after the September 4, 2020 deadline. As noted in Counsel's September 4 filing (ECF No. 173), multiple objectors mailed objections to the Court in advance of that deadline but the objections were not yet docketed by September 4. Prisoners at FCI Danbury are unable to control when the mail leaves the facility and there are often delays. Class Counsel have docketed all responses received by Counsel to date that were not already docketed. (ECF No. 173-1).

Class Counsel have reviewed every filing and have identified four major objection categories, which we summarize for the Court below. As explained, the substance of the objections and other comments by Class (and non-Class) members weighs in favor of this Court's approval of the Settlement.

1. <u>Objections to Conditions of Confinement During the COVID-19 Pandemic and Absence of Enforceable Conditions-Related Terms in the Agreement</u>.

The vast majority of the objections detail class members' difficult and traumatic experiences in prison during the COVID-19 pandemic. The comments reflect the enormous anxiety experienced by

people detained in congregate housing, where they are unable to control their surroundings and have difficulty accessing health care. Many wrote about the conditions of their confinement at FCI Danbury and about Respondent's inability to maintain social distancing, properly sanitize or ventilate the facility, or ensure adequate access to healthcare, including prompt and non-punitive care for those with COVID-19 and related exposure. (*See*, *e.g*, ECF Nos. 140, 143, 145, 147, 151, 152, 156, 162, 163, 164, 166, 168, 169, 171, 172, 173, 177, 185, 187, 188, 191, 196, 197, 198, 199, 200, 202, 206, 209, 212, 214, 216). Many people—including several who expressed support for the Settlement insofar as it provides for home confinement review for medically vulnerable individuals—objected to the fact that the Settlement does not address these conditions-related issues. (*See*, *e.g*, ECF Nos. 161, 173, 179, 180, 182, 190, 192, 194).

These objectors express understandable frustration that the Settlement does not encompass an agreement concerning the conditions at FCI Danbury. As reflected in the Petition, Class Counsel viewed the conditions at FCI Danbury as deeply troubling, but also recognized limitations in the law affecting whether petitioners could prevail on constitutional challenges to such conditions. While Class Counsel were unable to reach an enforceable agreement on conditions of confinement, the Settlement preserves the right of all Class members (and non-Class members) incarcerated at FCI Danbury to pursue injunctive relief against Respondent to challenge these conditions again in the future. (ECF No. 134-1, ¶ 16). With respect to past-looking claims, the Settlement does prevent members of the Class from seeking injunctive relief for any acts or omissions relating to the BOP's response to the COVID-19 pandemic *prior* to July 27, 2020. (ECF No. 134-1, ¶ 16). But this limited preclusion of retrospective actions for injunctive relief will be of no significance to any member of the Class seeking to litigate present conditions in the prison. That litigation could be brought today. *Cf. W. v. City of New York*, 2016 WL 4367969, at *10 (S.D.N.Y. Aug. 12, 2016) (finding injunctive consent decree unfair and unreasonable based, in part, on "the extraordinary length of time for which the parties propose to bar further systemic litigation"). Furthermore, the Settlement does not affect the right of non-Class

members to challenge the conditions in the facility at any time.

In addition, Class Counsel secured a letter of assurance regarding necessary improvements the BOP has committed to undertaking at Danbury (ECF No. 138-1).[27] Class Counsel's negotiations on the provisions in this letter were informed by communications with hundreds of persons incarcerated at FCI Danbury about their experiences and issues; Class Counsel endeavored to reflect and resolve as many of their concerns as possible in the letter. To the extent Respondent fails to live up to these assurances and conditions at FCI Danbury fall below constitutional requirements, members of the Class can re-institute their challenge against Respondent.

Finally, the Class remains entitled to bring their own lawsuits for money damages based on the same circumstances raised in this lawsuit or any other COVID-19-related circumstances past or present. *See Stinson v. City of New York*, 256 F. Supp. 3d 283, 292–93 (S.D.N.Y. 2017) (approving a settlement where it did not release any class members' individual damage claims arising from the same allegations). The Settlement therefore permits, as it should, vindication of the interests identified by many of these objectors while securing an expedited home confinement review process that will help medically vulnerable individuals leave prison. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S.Ct. 1589, 1596 (2020) (noting that "preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint") (internal quotations and citations omitted).

## 2.   Objections to the Settlement for Not Reaching Non-Class Members.

At least two objections express concern that the Settlement does not cover everyone at FCI Danbury. One objection prepared on behalf of sixty-four individuals opposes the Settlement because it

---

[27] As discussed elsewhere, the benefits of securing immediate relief for members of the Class—many of whom will be released pursuant to the procedure set forth in the Settlement—far outweighed the lengthy delay and significant risks of litigation to secure a remedy for prison conditions and added safety measures at FCI Danbury that could not be secured during settlement negotiations. *See Martinez-Brooks*, 2020 WL 2405350, at *29 (noting that the Warden's implementation of safety protocols in response to COVID-19 and whether it violated Eighth Amendment standards would be a detailed factual question for evidentiary hearing). The constantly changing conditions on the ground at the prison with respect to the COVID response added to the uncertainty of litigation. This balance reached by the Settlement is particularly sensible because conditions can be the subject of future litigation.

does not provide relief for individuals at FCI Danbury who are not medically vulnerable to COVID-19 (ECF No. 147), and another proposes that the Settlement should extend to those who have already tested positive for COVID-19 and to those without medical conditions. (ECF No. 143).[28]

Again, Class Counsel understand the frustration that some at FCI Danbury will feel from not being included in the Class or Settlement. Yet, the Settlement does not alter the legal rights of individuals who are not part of the settlement class. These individuals retain their right to pursue all causes of action against Respondent without restriction. (*See* ECF No. 134-1, ¶ 16 (noting that voluntary dismissal of claims is *without prejudice* as to all individuals not part of the "Medically Vulnerable Class")); *see also* Fed. R. Civ. P. 23(1)(A) (court approval for voluntary dismissal of a class action complaint only required for a certified class). In any case, those individuals have been placed in the position they were in prior to the filing of this instant lawsuit, and therefore their concerns—that they do not benefit from the Settlement—while understandable, do not implicate Rule 23(e) concerns.

Finally, to the extent that home confinement releases de-densify the institution, the Settlement may make it easier for everyone at Danbury to practice social distancing—Counsel acknowledges that to achieve that benefit, however, release rates would have to increase significantly; moreover, transfers into the facility, which, according to several objections, have increased in recent weeks (e.g., ECF Nos. 147, 158, 177, 199), would need to be slowed or stopped.

### 3.   Objections Discussing Individual Cases for Home Confinement Release.

Many objectors have already been reviewed for home confinement and denied release—they challenge the underlying substantive determination, urging the Court to intervene. (*See*, *e.g.*, ECF Nos. 188, 190, 202). A number of these objectors described their health conditions and care by Respondent and argued that these should have weighed in favor of their being released to home confinement (*See*, *e.g.*, ECF Nos. 158, 173, 195, 212). Others, citing similar health and care concerns, assert that they

---

[28] Notably, the Settlement covers individuals with qualifying medical conditions who have already tested positive for COVID-19 and prohibits BOP from using prior infection as a reason for denying them home confinement.  (ECF No. 134-1, ¶ 8).

should have been already identified as medically vulnerable.  (*See*, *e.g.*, ECF Nos. 162, 170, 183, 196, 204). Those challenging the home confinement reviews also include several people who seek to ensure that people convicted of sex or violent crimes are not precluded from home confinement relief. (ECF Nos. 143, 144, 156, 173, 181).

Class Counsel acknowledge the seriousness of these objections that echo their hundreds of conversations with Class members over the course of the litigation. However, the issue before the Court is not a particular individual's treatment, but whether the relief obtained by the Settlement—here, a process for home confinement review—is fair, adequate, and reasonable. *See Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1459 n.12 (E.D. Pa. 1995) (in a case regarding medical care, "an individual inmate's objections regarding his own care are not directly relevant to the Court's inquiry into the fairness of the Settlement Agreement"). Here, the Settlement provides as many Class members as possible the ability to challenge a home confinement review to the extent that it does not comply with the TRO, including, *inter alia*, if it: (1) fails to assign adequate weight to an individual's COVID-19 risk factors; (2) relies on erroneous or outdated information; or (3) uses automatic disqualifiers prohibited by the TRO. (ECF No. 134-1, ¶¶ 12, 14, 23). The Settlement will therefore allay the concerns that some objectors have with Respondent's home confinement reviews. *Decoteau v. Raemisch*, No. 13–cv–3399–WJM–KMT, 2016 WL 8416757, at *7 (D. Colo. July 6, 2016) (approving settlement for injunctive relief in prison suit where "Settlement Agreement contains a dispute resolution mechanism that Class Counsel can invoke if serious complaints continue to arise regarding these matters").

For those home confinement reviews that resulted in denials but for which there is no error, the Settlement is still fair as the relief ordered by the Court was procedural in nature rather than substantive release. Some objections also requested sentencing reduction or compassionate release relief beyond the scope of this litigation. (*See*, *e.g.*, ECF No. 169). However, the Settlement explicitly carves out a right for members of the Class to pursue this relief on an individualized basis. (ECF No. 134-1, ¶ 16).

4. <u>Objections to the Home Confinement Review Process</u>

A small minority of the objectors raise concerns that are specific to the Settlement and its terms—that is, the Settlement applies to them, and they object to aspects of the home confinement review *process* set out in the agreement.

Some of these objectors are individuals on List One who note factual errors in their initial review that they believe should entitle them to reconsideration along with the others identified in Exhibit B to the Settlement (ECF Nos. 173, 174, 207, 212),[29] including that they or others suffer from additional medical conditions that, at the time of HCC review, the CDC did not recognize as rendering them especially vulnerable to COVID-19, but that it has since recognized (*See*, *e.g.*, ECF No. 156).[30] It is true that although the individuals on List One have already been given a home confinement review pursuant to the terms of this Court's TRO (*see* ECF No. 57-1), only the subset set forth in Exhibit B are receiving automatic reconsideration before the HCC. Respondent agreed in the Settlement to have the HCC reconsider these individuals, and any errors in these HCC reviews will be subject to the Settlement's enforcement mechanism. Respondent did not agree to reconsideration of the remainder of List One individuals, however these individuals may seek re-review pursuant to the Settlement's allowance for a request for re-review in the event of a material change in circumstance or new information.[31]

Two of the objections expressed concern about delays in the home confinement review process for people not identified as medically vulnerable under the Settlement—that is, that the institution's

---

[29] Note that some objectors who raise issues of error in the initial review *are* listed in Exhibit B and entitled to re-review under the Settlement in the event of material error or mistake of fact in the initial review.  (ECF Nos. 185, 186, 202).

[30] Several objectors not on List One also cite this latter concern in their objections and request that the Settlement provide for re-review anytime the relevant CDC Guidance changes. (E.g., ECF Nos. 179, 198, 216).

[31] Counsel are cognizant of the objections raised by Mr. Lenchick (ECF Nos. 173 and 174) and believe those objections raise legitimate concerns arising out of the incomplete implementation of the Court's May 29, 2020 Order (ECF No. 70) while the parties were negotiating the present Settlement. Counsel are prepared to discuss Mr. Lenchick's individual circumstances at the fairness hearing. Objectors Falls (ECF No. 207) and Gioieli (ECF No. 212) assert that their reviews were based on mistaken information about existing detainers or the circumstances of conviction which, Counsel believe, would permit them to correct their Central File and request re-review based on a material change in circumstance or new information.

usual home confinement review process has slowed significantly or stalled. (ECF Nos. 167, 171). Counsel note that these reviews should be continuing apace notwithstanding the Settlement.

Finally, many objectors wrote that they and others are not able to assess the validity of the home confinement review process if they do not have access to the worksheets and materials underlying those decisions, as well as the written decision itself. (ECF Nos. 156, 173, 179, 182, 184, 191, 216). For Class members denied home confinement under the Settlement, Class Counsel will be providing individuals with the information on which their home confinement decisions were based and endeavoring to access materials underlying the decisions, where possible. Class Counsel understands that not all List One individuals have yet had access to this information and underlying materials.[32]

We note that the views of Class members in a settlement are to be taken into account but are not dispositive. *See, e.g.*, *Grant v. Bethlehem Steep Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (district courts have a fiduciary obligation to the "silent majority" of class members and weighing this factor in favor of settlement even where a large minority of class members voice objection); *Collins v. Olin Corp.*, No. 3:03–cv–945 (CFD), 2010 WL 1677764, at *4 (D. Conn. April 21, 2010) (citing *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990)). While the views of the objectors to the settlement are understandable and reflective of real frustrations with the conditions at the prison and with the home confinement review process, the significant provisions of the settlement will continue to benefit the Class and help send many medically vulnerable prisoners home safely as quickly as possible.  This Settlement is plainly fair, reasonable, and adequate as required by Rule 23.

## CONCLUSION

For the reasons set forth above, Counsel requests that this Court grant final approval of the Settlement and authorize Class Counsel to begin enforcing its terms on behalf of the Class.

---

[32] Several people objected in part because the Settlement does not provide for monetary compensation. (*See*, *e.g.*, ECF Nos. 143, 190, 194.). Again, however, the Settlement does not preclude any individual claim for monetary relief.  Moreover, this multi-party habeas petition was never an action for damages.

September 11, 2020

/s/  David S. Golub
David S. Golub, ct00145
Jonathan M. Levine, ct 07584
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Email: dgolub@sgtlaw.com
        jlevine@sgtlaw.com

Sarah French Russell, ct26604
Tessa Bialek, ct30582
Alexis Farkash, *Law Student Intern*\*
Abigail Mason, *Law Student Intern*\*
George Morgan, *Law Student Intern*\*
Krista Notarfrancesco, *Law Student Intern*\*
Samantha Pernal, *Law Student Intern*\*
Grace Ronayne, *Law Student Intern*\*
Hannah Snow, *Law Student Intern*\*
Kathryn Ulicny, *Law Student Intern*\*
Kylee Verrill, *Law Student Intern*\*
Legal Clinic, Quinnipiac University School of Law 275
Mt. Carmel Avenue
Hamden, CT 06518
Telephone: (203) 582-5258
Email: sarah.russell@quinnipiac.edu
        tessa.bialek@quinnpiac.edu

Marisol Orihuela, ct30543
Zal K. Shroff, *Cooperating Counsel*\*\*
Ariadne Ellsworth, *Law Student Intern*\*
Alexandra Gonzalez, *Law Student Intern*\*
Alexander Nocks, *Law Student Intern*\*
Phoenix Rice-Johnson, *Law Student Intern*\*
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
Telephone: (203) 432-4800
Email: marisol.orihuela@ylsclinics.org

Alexandra Harrington, ct 30943
Criminal Justice Advocacy Clinic University
at Buffalo School of Law
507 O'Brian Hall, North Campus
Buffalo, NY 14260
Telephone: (716) 984-2453
Email: aharr@buffalo.edu

*Counsel for the Petitioner James Whitted*

\* Motion for law student appearance forthcoming

\*\* Application for admission forthcoming