## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES WHITTED, individually, and on behalf of all others similarly situated, | No. 3:20-cv-00569 (MPS) |
| *Petitioner*, | |
| v. | |
| DIANE EASTER, Warden of Federal Correctional Institution at Danbury in her official capacity, | |
| *Respondent*. | January 14, 2020 |

## SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Petitioner-Class, by and through counsel, hereby submits this Second Supplemental Memorandum in Support of Motion to Enforce Settlement Agreement. (*See* Dkt. 296). Class counsel agrees with the Court that all class members currently housed at FCI Danbury will be safer if and when they each receive a COVID vaccine. Class counsel also fully agrees with the Court that the prospect of home confinement under the Settlement Agreement should not serve as an incentive to decline the vaccine. Class counsel submits this supplemental memorandum to apprise the Court of the protections Petitioner-Class asserts are appropriate before a class member is denied specific performance or other relief under the Settlement Agreement for declining the vaccine, and to clarify the limited impact the current availability of the vaccines at FCI Danbury should have on the pending Motion to Enforce.

Specifically, in regard to the Motion to Enforce, dozens of medically vulnerable individuals—who have not been offered a COVID vaccine—have been denied home confinement

1

in violation of the Settlement Agreement. *See* Ex. X, Dkt. 321.[1] The BOP has revealed that only 6 of 44 individuals for whom class counsel seeks re-review under the Settlement Agreement have been offered the COVID vaccine. *Id.* Four of these individuals accepted the vaccine, while two declined. *Id.*

Moreover, hundreds of other class members at FCI Danbury have yet to be offered the vaccine, but will be impacted by any prospective relief this Court may order with respect to how home confinement reviews are to be properly conducted pursuant to the Settlement Agreement. With no COVID vaccine yet available to these medically vulnerable individuals, and no set timeline for providing the vaccine to the remainder of the class,[2] they continue to be at immediate risk of serious injury or death as a result of COVID, and still require an enforcement order compelling the Bureau of Prisons (BOP) to conduct home confinement reviews that comply with the Settlement Agreement.

Like this Court, class counsel is focused on helping to ensure that all at-risk prisoners can take the COVID vaccine as soon as it is offered to them. Class counsel therefore sought to inquire why some class members initially declined the vaccine last week. After consultation with our medical expert and with some individual class members, it appears that initial rejection of the vaccine may be the result of a lack of information, education, individualized guidance from medical staff, and trust on the part of individuals with serious medical conditions who are genuinely afraid of the potential consequences of taking the vaccine. Unfortunately, concerns may

---

[1] Exhibit X provides updated information with respect to the now 44 individuals for whom class counsel continues to seek re-review in their Motion to Enforce, including vaccination information for the 6 individuals offered the vaccine. The Court may refer to Exhibit X to identify all individuals for whom class counsel presently seeks specific performance of the Settlement Agreement.

[2] Government counsel has explained that BOP staff are a priority for receiving the vaccine. The vaccine was offered to prisoners at Danbury during this first round only after it was first offered to staff. The BOP has not provided information about the number of staff members who declined the vaccine.

have been heightened by one class member's extreme allergic reaction to the vaccine. (Such allergic reactions to the vaccine are exceedingly rare).[3] In response to these concerns, class counsel is working to identify a series of best practices that the BOP should adopt—consistent with constitutional healthcare standards—to ensure that all class members are provided with robust informed consent that will maximize their acceptance of the vaccine. The BOP has also agreed to provide class counsel with the full set of written materials provided to individuals at FCI Danbury relating to the vaccine.

Counsel will communicate to class members the Court's view, expressed at the status conference on January 12, that those who decline the vaccine will not benefit from the Court's equitable enforcement of the Settlement Agreement. In the meantime, however, we ask that the Court not alter the remedies available to the subset of class members who recently declined the vaccine until class counsel has reviewed the process that has been put in place to ensure vulnerable individuals are provided the specific information, support, medical clearance, and informed consent process critical to their decisionmaking.

I.      **THIS COURT CAN STILL ORDER SPECIFIC PERFORMANCE AND DECLARATORY RELIEF FOR ALL CLASS MEMBERS WHO RECEIVED DEFICIENT HOME CONFINEMENT REVIEWS BUT WHO HAVE NOT DECLINED A VACCINE.**

Fully 38 of the 44 class members who have already been submitted by class counsel for re-

---

[3] *See* Ex. Y, Declaration of Dr. Jaimie Meyer, ¶ 15. Class counsel is in the process of gathering information from other individuals who were offered the vaccine. One individual said that the social worker was fielding questions when a group of men were called to medical for the shot and was not able to answer questions relating to preexisting medical conditions. This man was able to ask a quick question to the PA before the shot was administered. Another individual said he did not receive any written materials but just a consent form. Someone else said that the dental hygienist gave him a handout relating to the Moderna vaccine but told him the Pfizer vaccine was being offered. This man is generally in favor of taking the vaccine but had questions given his medical conditions (two of which were flagged on the Moderna handout) and did not have the opportunity to speak with a nurse or doctor.

review of home confinement under the Settlement Agreement have yet to be offered a vaccine.[4] The BOP through counsel has asserted no clear timeline for if or when additional vaccines will be made available to class members. Meanwhile, there continue to be active COVID cases at FCI Danbury and a real and immediate risk that these individuals will contract the disease if they are not given the appropriate home confinement consideration to which they are entitled under the Settlement Agreement. The fact that two of six individuals declined the vaccine under unknown circumstances should not prejudice the remaining 42 class members who depend on the relief this Court may order to enforce the BOP's commitments to them.[5] *See* William H. Rubenstein, 5 Newberg on Class Actions § 13.44 (5th ed. June 2020 Update) (noting that a settlement is still equitable where "class members should be treated differently because they are situated differently"). Furthermore, the prospective relief sought in the Petitioner-Class' Motion to Enforce will impact not only the individuals for whom re-review has been sought, but also hundreds of additional class members who remain at FCI Danbury without current access to the vaccine. Any declaratory or prospective relief the Court may order to clarify the BOP's home confinement standards and review obligations under the Settlement Agreement will necessarily impact all of these individuals—whose circumstances have not changed since the Petitioner-Class filed the instant motion on December 17, 2020.[6]

---

[4] As noted, the BOP has identified that only 6 individuals for whom class counsel has sought re-review under the Settlement Agreement have been offered the COVID vaccine. Four of these individuals accepted the vaccine, while two declined. *See* Ex. X.

[5] In addition to the 38 class members who have not been offered the vaccine at all, the four individuals who accepted the first dose of the vaccine should likewise not be denied injunctive relief, as they will remain substantially vulnerable to COVID until 2 weeks after they receive a second dose of the vaccine—which is yet 3-4 weeks away, assuming the second dose arrives at the facility on the date that BOP expects. *See* Ex. Y, Declaration of Dr. Jaimie Meyer, ¶ 6. These critical weeks present a real likelihood of continued exposure to COVID at FCI Danbury given the active outbreak.

[6] As previously noted, Exhibit X is an updated list of class members still subject to a re-review request. The BOP has also provided new worksheets for T.G. and T.M. on January 8, 2020, following this Court's hearing. These new worksheets, also included in Exhibit X, continue to show non-compliance with the

II.     **CLASS MEMBERS MUST BE PROVIDED WITH INFORMED CONSENT; ADOPTING ROBUST INFORMED CONSENT AND PUBLIC HEALTH BEST PRACTICES WILL HELP MAXIMIZE COVID VACCINATION AT FCI DANBURY.**

Class counsel is currently collecting information about the process and materials that were used to inform clients at FCI Danbury about the Moderna vaccine before it was offered to them. Class counsel urges the Court to refrain from making a determination that any particular individual is not entitled to enforcement of the Settlement Agreement until information can be gathered regarding the circumstances of purported refusals to take the vaccine.

Following the hearing with the Court on January 12, 2020, class counsel requested from government counsel copies of the written materials provided to individuals at FCI Danbury who were offered the vaccine. To date, government counsel has provided some of these materials and indicated that other materials, including communications sent via Trulincs, will be forthcoming. Government counsel also noted that FCI Danbury's Chief Pharmacist and Assistant Health Services Administrator held town halls throughout the prison on December 31, 2020. Class counsel also requested information about whether individuals were given advance notice that they would be offered the vaccine on a particular date and whether they had the chance to consult individually with appropriately-trained medical staff before making a decision about whether to take the shot. Government counsel indicated that this information would not be provided. The parties have conferred directly and also with the assistance of Judge Farrish.

As the attached declaration from Dr. Jaimie Meyer describes, despite the apparent safety and efficacy of the COVID-19 vaccines, there may be justifiable confusion, fear, and mistrust among the incarcerated population—and certain procedures should be implemented to ensure

---

Settlement Agreement. In particular, they reveal that individuals continue to be denied based on vague assertions of "public safety concerns," Low PATTERN, and amount of time remaining on the sentence.

informed consent and encourage vaccination. Ex. Y, Meyer Decl., ¶ 9 ("After a long and terrible history of medical experimentation on prisoners, people in prison are often very concerned about being "guinea pigs", particularly for novel medical technologies, like the COVID-19 vaccines"). In particular, Dr. Meyer recommends transparency about vaccine administration and processes (*id.* ¶ 10), and distribution of written informational materials that are specifically drafted with incarcerated populations in mind that are easily understandable, readable, and available in English and Spanish. *Id.* ¶¶ 11-12 (also including one such example from the Rhode Island Department of Corrections). Dr. Meyer also advises that, in order to make an informed decision, people should have the opportunity to speak with medical providers that have appropriate training and are able to answer relevant questions; this might be accomplished in large part through town-hall style meetings, but appropriately trained medical staff should also be available to obtain final consent for vaccination directly from the patient so that the patient can ask any personal questions in a one-on-one setting. *Id.* ¶ 13. Finally, Dr. Meyer recommends that people with concerns about possible serious allergic reactions should have the opportunity to receive information—including about the extreme rarity of such reactions—and that those with a history of anaphylaxis ought to be allowed to wait under observation for at least 30 minutes after receiving the vaccine.  *Id.* ¶¶ 15-16.

The written materials provided thus far by government counsel help demonstrate how the materials themselves may have deterred people from taking the vaccine. They include Moderna's Emergency Use Authorization ("EUA") fact sheet, four posters put up at the facility, and a sample consent form. *See* Ex. Z. As Dr. Meyer observes in her attached declaration, Moderna's EUA fact sheet receives a readability grade D and is written at a Flesch-Kincaid 10th grade reading level. Ex. Y, ¶ 11. This form therefore fails to meet readability expectations and falls short of the now commonplace informational campaigns that jurisdictions are using to educate prisoners about the

vaccine. *Id.* ¶ 12. The sheet advises individuals to "[t]ell your vaccination provider about all your medical conditions" including, *inter alia*, if you "have any allergies," are "immunocompromised or on a medicine that affects your immune system," or "have a bleeding disorder or are on a blood thinner." The sheet also indicates that the "Moderna COVID-19 Vaccine is an unapproved vaccine" and that there "is no U.S. Food and Drug Administration (FDA) approved vaccine to prevent COVID-19."[7] Dr. Meyer notes that this may dissuade individuals from taking the vaccine without more education. *Id.* ¶ 17. The sheet lists possible side effects, but notes that "[t]hese may not be all the possible side effects of the Moderna COVID-19 Vaccine" and "[s]erious and unexpected side effects may occur." Meanwhile, the posters put up at the facility contain very limited information. *See* Ex. Z.

As Dr. Meyer notes, the Moderna vaccine is highly effective and serious side effects (in the form of allergic reactions to the vaccine) are exceedingly rare. Ex. Y, ¶ 15. Yet individuals reading the Moderna EUA fact sheet—particularly those without access to other more reassuring information—may well have questions that they want to ask to a qualified medical professional. Class counsel thoroughly agrees with Dr. Meyer that "[i]f we are to end the COVID-19 epidemic, it means encouraging as many people as possible to receive the vaccine and supporting them through that choice." *Id.* ¶ 18; *see id.* ("Declination of a vaccine does not mean someone is being manipulative or 'difficult'—they may just require additional support and resources to make an informed choice"). Counsel is in the process of reaching out to individuals who declined the vaccine to help ensure they have access to information that will help them make a properly informed decision. Class counsel urges the BOP to offer these individuals the opportunity to talk

---

[7] Preliminary approval of a vaccine also has legal consequences in a variety of different healthcare contexts. *See*, *e.g.*, *Rempfer v. U.S. Dept. of Air Force Bd. for Correction of Military Records*, 538 F.Supp.2d 200, 205 (D.D.C. 2008) (noting that military personnel had their rights under federal statute violated when they were ordered to take an anthrax vaccine course that included provisional use, "investigational drugs").

with a nurse or doctor at the facility who can provide individualized counseling at some point prior to vaccination.[8] Counsel will also communicate to class members the Court's view that those who decline the vaccine will not benefit from the Court's equitable enforcement of the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, the Class respectfully requests that this Court grant its Motion to Enforce and issue any declaratory relief and/or specific performance order the Court may be inclined to issue as to the appropriate home confinement standards, considerations, and reasons for denial under the Settlement Agreement—which standards shall be applied to all future home confinement reviews and re-reviews for all class members remaining at FCI Danbury who have not declined the vaccine including those individuals for whom class counsel have specifically sought re-review in their Motion to Enforce. In addition, the Class requests that this Court:

(1)     Require that the BOP present and implement a robust informed consent regime to include, at least, comprehensible advance written notice of the opportunity to be vaccinated to each individual class member, the opportunity for class members to speak to an appropriately-trained medical professional prior to vaccination, and requiring the BOP to submit documented proof

---

[8] It is also important to note that—absent a mandatory vaccination regime imposed by the government— prisoners have a constitutional right to informed consent prior to submitting to a procedure that they have the right to refuse. The right to informed consent therefore takes on a constitutional dimension in the case of the emergency COVID vaccine. *See, e.g.*, *Pabon v. Wright*, 459 F.3d 241, 249–50 (2d Cir. 2006) (noting that where treatment is not mandatory, patients have a right to "sufficient knowledge of what the treatment entails" prior to accepting it); *see also Knight v. Grossman* (7th Cir. 2019) ("We now join all other circuits to have considered the question in holding that prisoners have a Fourteenth Amendment right to informed consent"). Under these circumstances, any pressure from FCI Danbury to waive the right to informed consent becomes problematic. *See Alliance for Open Society Intern., Inc. v. U.S. Agency for Intern. Development*, 651 F.3d 218, 231 (2d Cir. 2011) ("Pursuant to this 'unconstitutional conditions' doctrine, as it has come to be known, the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance"). As noted by Dr. Meyer, informed consent is also a basic precept of appropriate medical care. Ex. Y, ¶ 7.

thereof—before this Court will limit such class member's equitable remedies under the Settlement Agreement; and

(2)     Convene a status conference, to the extent the Court believes such a conference might be helpful, at which the parties can present information about how the vaccine has been offered at FCI Danbury, and Dr. Meyer can discuss the components of an appropriate informed consent regime and a successful vaccination program in a prison setting.

Dated: January 14, 2020                         Respectfully submitted,

*Counsel for the Respondent*

*/s/  Sarah F. Russell*_____
Sarah French Russell, ct26604
Tessa Bialek, ct30582
Alexis Farkash, *Law Student Intern*
Samantha Pernal, *Law Student Intern*
Hannah Snow, *Law Student Intern*
Kylee Verrill, *Law Student Intern*
Legal Clinic, Quinnipiac University School of Law
275 Mt. Carmel Avenue
Hamden, CT 06518
Telephone: (203) 582-5258
Email: sarah.russell@quinnipiac.edu
          tessa.bialek@quinnpiac.edu

Marisol Orihuela, ct30543
Zal K. Shroff, phv10872
Ariadne Ellsworth, *Law Student Intern*
Alexandra Gonzalez, *Law Student Intern*
Alexander Nocks, *Law Student Intern*
Phoenix Rice-Johnson, *Law Student Intern*
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
Telephone: (203) 432-4800
Email: marisol.orihuela@ylsclinics.org

Alexandra Harrington, ct 30943
Criminal Justice Advocacy Clinic
University at Buffalo School of Law

507 O'Brian Hall, North Campus
Buffalo, NY 14260
Telephone: (716) 984-2453
Email: aharr@buffalo.edu

David S. Golub, ct00145
Jonathan M. Levine, ct 07584
Silver Golub & Teitell LLP
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Email: dgolub@sgtlaw.com
          jlevine@sgtlaw.com

*Counsel for the Petitioner-Class*